**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HILARY REMIJAS, on behalf of herself and all others similarly situated, | ) ) ) | 1:14-cv-01735 |
| Plaintiff, | ) ) ) | Judge James B. Zagel |
| v. | ) ) ) | |
| THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT NEIMAN MARCUS GROUP'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

                                                                                                                                             **Page**

I.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING ............................................... 3

        A.     Plaintiff Fails to Allege a Concrete, Present Injury .................................................. 4

        B.     Plaintiff Fails to Allege a "Certainly Impending" Future Injury ............................. 6

II.    THE COMPLAINT ALSO SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM ....................................................... 10

        A.     Plaintiff Fails to State a Claim for Breach of an Implied Contract ......................... 11

        B.     Plaintiff Fails to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act ............................................................................ 13

Defendant The Neiman Marcus Group LLC ("Neiman Marcus") submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

In this action, plaintiff seeks to assert claims arising from the recent criminal data security incursion on Neiman Marcus's computer systems, but fails to allege that she suffered any cognizable injury, much less any such injury plausibly caused by Neiman Marcus. Plaintiff alleges only that she made purchases at a Neiman Marcus store in Oak Brook on August 7 and December 21, 2013, with a "Neiman Marcus card," Complaint ¶ 13—i.e., a card that can be used only to make purchases at Neiman Marcus. She alleges in conclusory fashion that she "had her sensitive financial information exposed," but does not allege that any of her sensitive financial information was stolen and thereafter used in an identity theft or in any other way that concretely harmed her. Because the only information potentially exposed in the data incursion was her name and Neiman Marcus card number, the only conceivable risk that plaintiff faced was that such information would be used in a future fraudulent purchase attempt at a Neiman Marcus store. Plaintiff does not allege that any such purchase was ever attempted or even that she regarded such a remote risk to be serious enough to lead her to replace her card.

Since she fails to allege that she suffered a cognizable injury, or that Neiman Marcus plausibly caused it, plaintiff simply cannot satisfy the standing requirements of Article III. Moreover, even if plaintiff could establish standing, the absence of plausible allegations of injury and causation would compel dismissal under Rule 12(b)(6) of both of her asserted claims (breach of contract and violation of the Illinois Consumer Fraud Act). Because these defects are both dispositive and irremediable, the Complaint should be dismissed with prejudice.

1

**STATEMENT OF FACTS**

As the Complaint concedes (Compl. ¶¶ 3-5), Neiman Marcus has described the data incursion in detail in communications to customers, postings to its website, and other public statements.[1] As those documents report, in mid-December 2013, Neiman Marcus received information about potentially fraudulent charges on a relatively small number of cards that had been previously used at Neiman Marcus. Declaration of Ginger Reeder,[2] Exhibit A, at 1; Exhibit C, at 2, 4-5 (also available at http://www.judiciary.senate.gov/imo/media/doc/02-04-14KingstonTestimony.pdf). Neiman Marcus began an investigation and hired a forensic investigator, who first found evidence of potential malicious software ("malware") in the system on January 1, 2014. Reeder Declaration, Exhibit C, at 2-3. In the next several days, Neiman Marcus took steps to discover, identify, analyze, and contain the problem, which included disabling the malware that appeared capable of collecting or "scraping" information on payment cards used at certain Neiman Marcus stores. *Id.* at 2-5. On January 10, the company made several public announcements regarding the incursion and gave individual notification to customers who had received fraudulent charges after the incursion. *Id.* at 3, 7.

In postings to its website on January 16, January 22, and February 21, Neiman Marcus provided a detailed public update regarding its forensic investigation. Neiman Marcus confirmed that while some "payment cards" had been compromised, "social security numbers and birth dates were not" and "PINs were never at risk because we do not use PIN pads in our

---

[1] The Complaint specifically identifies two of Neiman Marcus's website postings (see Compl. footnotes 2 and 3) and relies on them as the source of certain allegations. The website postings identified in the Complaint are attached to this Memorandum as exhibits to the Declaration of Ginger Reeder, dated April 2, 2014 ("Reeder Declaration"), Exhibits A and B. Also attached to the Reeder Declaration, as Exhibit C, is testimony before a U.S. Senate committee, which may be considered under Rule 12(b)(1) on the question of standing even though the Complaint does not cite it. *Sapperstein v. Hager,* 188 F. 3d 852, 855 (7th Cir.1999).

[2] The Declaration of Ginger Reeder and the exhibits thereto are attached as Group Exhibit 1.

2

stores." *See* website reproduced in Reeder Declaration Exhibit A, cited in Complaint ¶ 4 and footnote 2. Neiman Marcus also identified the period during which the malware appeared to have been active—from July 16 to October 30, 2013. *Id.* The company explained that, out of an abundance of caution, it was "notifying ALL customers for whom [it has] addresses or email who shopped with [the company] between January 2013 and January 2014, and offering one free year of credit monitoring and identity-theft protection." *Id.* Neiman Marcus also reminded customers who were concerned about fraudulent activity that "[t]he policies of the payment card brands such as Visa, MasterCard, American Express, Discover and the Neiman Marcus card provide that you have zero liability for any unauthorized charges if you report them in a timely manner." *Id.*[3]

On March 12, plaintiff filed her Complaint. Neiman Marcus now moves to dismiss.

## ARGUMENT

**I.  THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING**

Plaintiff lacks Article III standing to bring her claims in federal court. To have standing to sue under Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000).

When judging a motion to dismiss for lack of standing under Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint. *See Reid L. v. Ill. St. Bd. Of*

---

[3] The company also reported that no fraudulent uses had yet been reported with respect to any Neiman Marcus cards.

3

*Educ.,* 358 F.3d 511, 515 (7th Cir. 2004); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting that standing is subject to the same degree-of-proof requirement that applies to other contested facts at a particular phase of the proceedings). The plaintiff's standing may not, however, "be inferred argumentatively from averments in the pleadings," *Spencer v. Kemna*, 523 U.S. 1, 10 (1998) (internal quotation marks omitted), and the court may look beyond the jurisdictional allegations and consider material outside of the complaint when ruling on a motion under Rule 12(b)(1), *Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir. 1999). "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Spencer*, 523 U.S. at 11 (internal quotation marks omitted). Plaintiff has not carried that burden here because her allegations do not establish any present or "certainly impending" future injury.

  A.  **Plaintiff Fails to Allege a Concrete, Present Injury**

Plaintiff alleges no facts to support her generalized assertion that she "and the Class" suffered "injury in fact and actual damages . . . arising from unauthorized bank account withdrawals and/or related bank fees charged to their accounts." Complaint ¶ 38. Plaintiff does not allege that she herself experienced any unauthorized withdrawals "and/or" bank fees, and she cannot rely for standing on allegations about putative class members. "That a suit may be a class action. . . adds nothing to the question of standing, for even named plaintiffs who represent a class `must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon* v. *Eastern Ky. Welfare Rights Organization,* 426 U. S. 26, 40, n. 20 (1976) (quoting *Warth* v. *Seldin,* 422 U. S. 490, 502 (1975). In the absence of any "'particularized example' of economic injury," her generic assertions are insufficient to support

4

federal standing. *In re iPhone Application Litig.*, No. 11–MD–02250, 2011 WL 4403963, at *5-6 (N.D. Cal. Sept. 20, 2011) (quoting and discussing *Genevive La Court v. Specific Media*, No. SACV–10–1256, 2011 WL 2473399, at *7-8 (C.D. Cal. Apr. 28, 2011)).[4]

Moreover, even if plaintiff had alleged receiving unauthorized charges on her Neiman Marcus card, such charges would not be sufficient to constitute an actual, concrete injury in fact, unless she also could plausibly allege that she is being held financially responsible for such charges—allegations that could not be made here in light of the zero-fraud-liability policy of the Neiman Marcus card. *See* Reeder Declaration, Exhibits A & B. Courts—including this one— have made it clear, in the context of data breaches, that allegations of actual financial loss from unreimbursed fraudulent charges are required to meet the Article III standing test. *See, e.g.*, *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013) ("In order to have suffered an actual injury, [plaintiff] must have had an unreimbursed charge on her credit card . . . ."); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060, 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010) (holding that an unauthorized credit card charge for which a plaintiff is not held financially responsible is not an "injury" under Article III).

Plaintiff's alternative "diminished value" theory of damages—that she implicitly paid for privacy protections when she made purchases at Neiman Marcus and that the alleged failure of such protections meant she "incurred monetary damages in that [she and the putative class] overpaid for the products purchased," Complaint ¶ 37—has already been rejected as a basis for standing in this District. *See In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *5. As Judge Darrah recently held in dismissing data breach claims:

> Plaintiffs assert they overpaid for the products and services purchased from Barnes & Noble, because they were paying for the security measures Barnes &

---

[4] Copies of unpublished cases are attached as Group Exhibit 2.

5

> Noble was supposed to employ to protect credit and debit transactions….
> Plaintiffs' argument is not persuasive, particularly as Plaintiffs have not pled that Barnes & Noble charged a higher price for goods whether a customer pays with credit, and therefore, that additional value is expected in the use of a credit card.

*Id.* See also *Sterk v. Best Buy Stores, L.P.*, 11 C 1894, 2012 WL 5197901, at *7 (N.D. Ill. Oct. 17, 2012) ("[B]ecause Defendants charge the same price whether or not it obtains personal information, the 'value' of that information cannot be found to be plausibly factored into the sale price."). Plaintiff's allegations suffer from precisely the same infirmity. Not only is the allegation inherently implausible, but she too does not allege that Neiman Marcus charge card-using customers a higher price than cash-using customers, much less that Neiman Marcus charged a higher price in exchange for card security.

### B. Plaintiff Fails to Allege a "Certainly Impending" Future Injury

Plaintiff also purports to base standing on "costs associated with identity theft and the increased risk of identity theft" and on "the opportunity cost and value of time that Plaintiff and the Class" are expending to monitor their "financial and bank accounts." Complaint ¶¶ 39, 40. None of these allegations is specific to plaintiff or plausible in her own case. She does not allege that she has experienced an identity theft or that she has "financial and bank accounts" that could plausibly be affected by the potential exposure of her Neiman Marcus card information.[5]

The Supreme Court recently held that allegations of future harm—and costs undertaken to mitigate such future harm—fail to satisfy the injury-in-fact requirement unless the plaintiff pleads facts showing that the anticipated harm is "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (emphasis in original). Furthermore, "allegations of

---

[5] Similarly, plaintiff does not allege that she herself—as opposed to hypothetical class members—incurred a cost for "obtaining replacement credit and debit cards." Complaint ¶ 40. Her Neiman Marcus card is not a debit card and permits a purchase on credit only at Neiman Marcus Group stores. She does not allege that she has sought or obtained a replacement Neiman Marcus card, or that any cost is associated with obtaining a replacement Neiman Marcus card.

6

*possible* future injury are not sufficient" to establish an injury in fact. *Id.* (alterations and internal quotation marks omitted). *Clapper* sets a clear standard that plaintiff's complaint does not come close to meeting.

Applying *Clapper* to data incursion cases, numerous courts have held that the imagined threat of future fraud or identity theft simply does not give a plaintiff Article III standing. For instance, six months ago, Judge Darrah applied *Clapper* in a case involving a data breach at Barnes & Noble to conclude that "[t]he Plaintiffs' claim of actual injury in the form of increased risk of identity theft is insufficient to establish standing" because "speculation of future harm does not constitute actual injury." *In re Barnes & Noble Pin Pad Litig*. 2013 WL 4759588, at *5. One month ago, a district court in a case involving a data breach at Nationwide Mutual Insurance Company reached the same conclusion, holding that "an increased risk of identity theft, identity fraud, medical fraud or phishing is not itself an injury-in-fact because Named Plaintiffs did not allege—or offer facts to make a plausible—an allegation that such harm is 'certainly impending.'" *Galaria v. Nationwide Mut. Ins. Co.*, ___ F. Supp. 2d ___, 2014 WL 689703, at *5 (S.D. Ohio Feb. 10, 2014). And two weeks ago, Judge Tharp held that the plaintiff in a case involving a data breach at the South Carolina Department of Revenue lacked standing because "she has not alleged facts that would plausibly establish an 'imminent' or 'certainly impending' risk that she will be victimized" by identity theft or fraud. *Strautins v. Trustwave Holdings, Inc.,* 12 C 9115, 2014 WL 960816, at *4 (N.D. Ill. Mar. 12, 2014).

Plaintiff's alleged injuries here are just like the alleged injuries in *Barnes & Noble*, *Galaria*, and *Strautins*. And as the *Galaria* court explained, the conclusion that these alleged injuries do not confer standing in a data incursion case like this one "is supported by many other courts which have considered the arguments [the] Plaintiffs make here." *Galaria,* 2014 WL

7

689703, at *6 (collecting cases). *See also Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (plaintiffs lacked standing due to remoteness of possibility of future identity theft); *Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *2 ("Plaintiffs here do not have Article III standing . . . because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information."); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689 (S.D. Ohio 2006) (collecting cases) ("In the identity theft context, courts have embraced the general rule that an alleged increase in risk of future injury is not an 'actual or imminent' injury.").

Plaintiff's remaining theory of injury—the "opportunity cost and value of time" that she and the putative class spent monitoring their financial and bank accounts and obtaining replacement cards—is merely derivative of her speculative "future identity theft" allegation and thus must also fail. The Supreme Court made clear in *Clapper* that costs "incurred . . . as a reasonable reaction to a risk of harm" cannot establish a plaintiff's standing unless "the harm [she] seek[s] to avoid is . . . certainly impending." 133 S. Ct. at 1151. "In other words, [plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.*

In *Clapper*, for example, the plaintiffs believed their confidential communications with foreign citizens were being intercepted by U.S. intelligence officials. *Id.* at 1142. To avoid such surveillance, they took "costly and burdensome measures to protect the confidentiality of their communications," such as "avoid[ing] certain e-mail and phone conversations" and "travel[ing] so that they c[ould] have in-person conversations." *Id.* at 1151. Because the particular injury plaintiff seeks to avoid or mitigate here—future fraud or identity theft—is not "certainly impending," she fails the injury test of Article III. *See In re Barnes & Noble Pin Pad Litig.*,

2013 WL 4759588, at *4 (applying *Clapper* to conclude that "expenses incurred to mitigate an increased risk of identity theft or fraud [are] also insufficient to establish standing"); *Willingham v. Global Payments, Inc.*, No. 1:12–CV–01157, 2013 WL 440702, at *6-7 (N.D. Ga. Feb 5, 2013) (finding that an increased risk of identity theft depends on "entirely speculative" future actions of unknown third-parties and therefore does not constitute injury for standing).

Although a few courts had previously concluded that the possibility of future identity theft after a plaintiff's personal information is stolen may suffice for standing, *see, e.g.*, *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007), these decisions predate the Supreme Court's 2013 decision in *Clapper*, which confirmed that harm must be imminent or "certainly impending" to confer standing. *See* 133 S. Ct. at 1151. In his recent ruling in *Strautins*, Judge Tharp made it clear that after *Clapper*, cases like *Pisciotta* do not stand in the way of dismissing under Rule 12(b)(1) complaints that allege merely that the risk of identity theft has increased: "*Clapper* seems rather plainly to reject the premise, implicit in *Pisciotta* . . . , that any marginal increase in risk is sufficient to confer standing." *Strautins,* 2014 WL 960816, at *5 (quoting *Clapper*, 133 S.Ct. at 1147-48 (internal quotation omitted)).[6]

*Krottner* and *Pisciotta* are also clearly distinguishable for two additional reasons. First, the breaches in those cases involved the plaintiffs' highly sensitive information, including government-issued forms of identification like Social Security numbers, that could be used to impersonate a person and open a new account in her name—a risk not presented by the possible exposure of a Neiman Marcus card number. Second, they involved the actual theft of such

---

[6] *See also Reilly*, 664 F.3d at 44 ("[T]he *Pisciotta* court did not mention—let alone discuss—the requirement that a threatened injury must be 'imminent' and 'certainly impending' to confer standing.").

sensitive personal data. In contrast, plaintiff has not alleged facts that would support a "reasonable inference" of theft. *See In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *4.

In *Strautins*, Judge Tharp applied *Clapper* and dismissed a complaint arising from a data breach that exposed millions of Social Security numbers.[7] The court held that "[l]ike the plaintiffs in *Clapper,* the harm that [plaintiff] fears is contingent on a chain of attenuated hypothetical events and actions by third parties independent of the defendant," and therefore it is not "certainly impending" that "she will be victimized" by identity theft. 2014 WL 960816 at *3. The same analysis compels the dismissal of the Complaint here.

## II.  THE COMPLAINT ALSO SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss should be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a motion to dismiss, while a court may assume the truth of all well-pleaded facts alleged within the four corners of the complaint, a complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555. "Nor does a

---

[7] The alleged injuries in *Strautins* were "(1) untimely and/or inadequate notification of the Data Breach; (2) improper disclosure of PII; (3) loss of privacy; (4) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (5) the value of time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/ or identity fraud; (6) deprivation of the value of PII; and (7) violations of rights under the Fair Credit Reporting Act. . . . These claims of injury, however, are too speculative to permit the complaint to go forward." 2014 WL 960816 at *3.

10

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

A plaintiff's factual allegations must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," it stops short of crossing the line from possibility to plausibility of entitlement to relief, *Iqbal,* 556 U.S. at 679, in which case "the inference of liability is merely speculative." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

Both of plaintiff's causes of action fail to meet this standard.

### A.      Plaintiff Fails to State a Claim for Breach of an Implied Contract

Under Illinois law, a plaintiff cannot recover under a theory of implied contract where it "has failed to prove that it has been damaged in any way . . . ." *Wesley-Jessen Inc. v. Reynolds*, No. 72 C 1677, 1974 WL 20197, at *14 (N.D. Ill. May 23, 1974). Courts have held that plaintiffs alleging breach of implied contract by allegedly improper handling of consumer information must show loss to state a claim. *See, e.g.*, *Smith v. Trusted Universal Standards in Electronic Transactions, Inc.*, Civil No. 09-4567, 2010 WL 2144139, (D.N.J. May 4, 2010) ("[E]ven assuming that a contract did exist between Comcast and Plaintiff that incorporated the above terms, and even assuming that Comcast violated those terms, Plaintiff must still plead loss flowing from the breach to sustain a claim."); *see also In re JetBlue Airways Corp. Privacy Litig.*, 379 F.Supp.2d 299, 327 (E.D.N.Y. 2005)(holding that even if plaintiffs demonstrated a contract based on privacy policy, their breach claim failed because they could not allege loss). Plaintiff here does not allege any facts supporting her conclusory allegations that she has been damaged by Neiman Marcus, and she has therefore failed to state a claim for breach of an implied contract.

11

As explained above, plaintiff has not alleged any actual damages from the data incursion at Neiman Marcus. Her generalized allegations regarding "unauthorized bank account withdrawals and/or related bank fees" do not plausibly apply to plaintiff or support any claim of injury. *See supra* pp. 4–10. Moreover, plaintiff has not alleged any facts that would support a plausible claim that her data was stolen, much less that she has suffered damages from a theft. *See In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *4 ("The inference that their data was stolen, based merely on the security breach, is too tenuous to support a reasonable inference that can be made in Plaintiffs' favor."); *Strautins v. Trustwave Holdings Inc.*, 2014 WL 060816, at *7 (plaintiff's failure to allege that her data was stolen "would result in the dismissal of the plaintiff's . . . breach of contract claims" even if plaintiff could establish standing).

Nor are the costs of future-oriented identity-theft prevention services (such as credit monitoring) recoverable as damages. Even *Pisciotta*, which found standing under pre-*Clapper* law, affirmed the dismissal under Rule 12(b)(6) of a suit seeking compensation for past and future credit monitoring services that plaintiffs obtained in response to the compromise of their personal data. 499 F.3d at 639-40. And, unlike the plaintiff in *Pisciotta*, plaintiff here has not even alleged that she has actually purchased credit monitoring services, underscoring that she has not incurred damages.

As such, the Complaint merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" that plaintiff has suffered damage as a result of defendant's alleged breach of an implied contract, which, as *Iqbal* explained, "does [not] suffice" to state a claim, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

12

B.  **Plaintiff Fails to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act**

The elements of a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") are: "an unfair or deceptive act or practice by the defendant; the defendant's intent that plaintiff rely on the deception; the occurrence of the deception during a course of conduct involving trade or commerce; and actual damage to the plaintiff proximately caused by the deception." *Martis v. Pekin Memorial Hosp. Inc.*, 395 Ill.App.3d 943, 949 (2009). "To support a Consumer Fraud Act claim, actual damages must arise from purely economic injuries." *Cooney v. Chicago Pub. Schools*, 407 Ill.App.3d 358, 365 (2010). Plaintiff's claim must fail, because she cannot allege any deception, causation, or actual damages from purely economic injury.

With respect to deception, plaintiff fails to allege any act, statement, or nondisclosure by Neiman Marcus that is misleading; instead, plaintiff claims that she was "deceived by Neiman Marcus' failure to properly implement adequate, commercially reasonably security measures to protect [her] private financial information while shopping at Neiman Marcus." Complaint ¶ 60. But plaintiff fails to allege facts supporting this contention, which is therefore little more than "a legal conclusion couched as a factual allegation," which courts "are not bound to accept as true" under *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

The Complaint also alleges that Neiman Marcus violated the Consumer Fraud act "by failing to immediately notify affected customers of the nature and extent of the Security Breach pursuant to the Illinois Personal Information Protection Act." Complaint ¶ 70. That statute requires data collectors to notify Illinois residents "that there has been a breach of the security of the system data following discovery of the breach . . . in the most expedient time possible and without unreasonable delay, consistent with any measures necessary to determine the scope of

13

the breach and restore the reasonable integrity, security, and confidentiality of the data system." 815 ILCS 530/1, *et seq.* That is precisely what Neiman Marcus did in this instance. But hypothetically, even if it were not, plaintiff does not allege that she suffered any harm as a result of the timing of Neiman Marcus's disclosures. Most of plaintiff's alleged harms—the exposure of her information, its possible theft by the incursion's perpetrators, and even the "opportunity costs" of monitoring financial information and obtaining a substitute card—derive from the *fact* of the incursion, not the *timing* of its disclosure by Neiman Marcus. Plaintiff fails to allege any injury actually related to that timing (*e.g.*, any fraudulent charges for which she was responsible that occurred in the interval between when Neiman Marcus discovered the breach and when it announced the discovery). Without doing so, her delayed-notification claim should be dismissed for failure to state a claim.

  Plaintiff's allegations similarly fail to allege a causal link to any actual damage arising out of purely economic injury. As to injury, the standing and breach of implied contract discussions above have already demonstrated that plaintiff has failed to allege injury, let alone any economic injury. And her boilerplate recitation that she has "suffered injury in fact and actual damages including lost money and property" does nothing to change that analysis. Complaint ¶ 72. *See supra* pp. 4–10. This defect by itself defeats her claim under the Consumer Fraud Act.

  Because plaintiff has failed to allege actionable deception or any injury caused by Neiman Marcus, the second count of the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

Dated: April 2, 2014

Respectfully submitted,

/s/ Daniel Craig
David H. Hoffman
david.hoffman@sidley.com
Daniel Craig
dcraig@sidley.com
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Steven M. Bierman
(motion to appear *pro hac vice* pending)
sbierman@sidley.com
James D. Arden
(motion to appear *pro hac vice* pending)
jarden@sidley.com
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for Defendant The Neiman Marcus Group LLC*

## **CERTIFICATE OF SERVICE**

    I, Daniel Craig, an attorney, hereby certify that on April 2, 2014, I caused the foregoing Memorandum in Support of Motion to Dismiss the Complaint to be served on all counsel of record through the Court's ECF system.

                                          By: /s/ Daniel Craig
                                                  Daniel Craig
                                                  SIDLEY AUSTIN LLP
                                                  1 South Dearborn Street
                                                  Chicago, IL 60603
                                                  (312) 853-7000
                                                  *Attorney for Defendant*