**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HILARY REMIJAS, MELISSA FRANK, DEBBIE FARNOUSH, and JOANNE KAO, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:14-cv-01735 |
| | ) | Judge James B. Zagel |
| | ) | |
| | ) | Magistrate Judge Maria Valdez |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NEIMAN MARCUS GROUP'S SUPPLEMENTAL BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 1

    A.    Injury-in-Fact ........................................................................................ 3

        1.    Future Unauthorized Charges and Future Identity Theft ........... 3

        2.    Time and Money Spent Resolving Fraudulent Charges ............ 3

        3.    Time and Money Spent Protecting Against Identity Theft ........ 4

        4.    The Overpayment Theory .......................................................... 4

        5.    Valuable Information and Informational Injury Theories .......... 5

    B.    "Fairly Traceable" ............................................................................... 6

    C.    Redressability ...................................................................................... 7

    D.    12(b)(6) Motion .................................................................................. 8

ARGUMENT ............................................................................................................. 8

I.    The Panel's Opinion Does Not Moot Neiman Marcus's 12(b)(6) Challenges. ................. 8

II.    Plaintiffs Fail to State a Claim for Negligence (Count I). ................................. 10

    A.    Plaintiffs' Alleged Injuries are Insufficient to State a Claim for
        Negligence. ........................................................................................ 10

    B.    The Economic Loss Rule Bars Plaintiffs' Claim for Negligence. .......... 14

    C.    Plaintiffs Fail To Allege Proximate Causation. ................................... 17

III.    Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count II). ............. 18

IV.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Count III) .................... 19

V.    Plaintiffs Fail to State a Claim Under the California, Illinois, or New York
    Consumer Protection Laws (Count IV). ..................................................... 20

VI.    Plaintiffs Fail to State a Claim for Invasion of Privacy (Count V) .................... 21

VII.    Plaintiffs Fail to State a Claim under California's Data Breach Laws or the Illinois
        Personal Information Protection Act (Count VI)..............................................................22

CONCLUSION..........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................8

*Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*,
    937 F. Supp. 2d 355 (E.D.N.Y. 2013) .......................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................8

*Boorstein v. CBS Interactive, Inc.*,
    222 Cal. App. 4th 456 (2013) ....................................................................................24

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ................................................................................7, 17

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
    580 F. Supp. 2d 273 (S.D.N.Y. 2008).......................................................................15

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
    516 N.E.2d 190 (N.Y. 1987)......................................................................................16

*Cleary v. Philip Morris, Inc.*,
    656 F.3d 511 (7th Cir. 2011) .....................................................................................19

*Derum v. Saks & Co.*,
    95 F.Supp.3d 1221 (S.D. Cal. 2015).........................................................................24

*Doe v. Vill. of Arlington Heights*,
    782 F.3d 911 (7th Cir. 2015) .......................................................................................8

*Dolmage v. Combined Ins. Co. of Am.*,
    No. 14C3809, 2015 U.S. Dist. LEXIS 6824 (N.D. Ill. Jan. 21, 2015) ...................19

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013), *cert denied*, 134 S. Ct. 2291 (2014).........................18

*Gould v. Schneider*,
    448 F. App'x. 615 (7th Cir. 2011) ..............................................................................8

*Hammond v. Bank of N.Y. Mellon Corp.*,
    08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)...............................12, 15

*Holmes v. Countrywide Fin. Corp.*,
    No. 08-C-00205, 2012 U.S. Dist. LEXIS 96587 (W.D. Ky. July 12, 2012) ............................9

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) ........................................................................................16

*King County., Wash. v. IKB Deutsche Industriebank AG*,
    863 F. Supp. 2d 288  (S.D.N.Y. 2012) ..............................................................15, 17

*Krottner v. Starbucks Corp.*,
    406 F. App'x 129 (9th Cir. 2010) ............................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ...........................................................................................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................8

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .......................................................................7, 9, 17

*Moyer v. Michaels Stores, Inc.*,
    No. 14 C 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ........................... *passim*

*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*,
    34 N.E.3d 1023 (Ill. App. Ct. 2015) ......................................................................19

*Parsons v. U.S. Dep't of Justice*,
    801 F.3d 701 (6th Cir. 2015) ...................................................................................9

*Payton v. Cnty. of Carroll*,
    473 F.3d 845 (7th Cir. 2007) ...................................................................................9

*Pisciotta v. Old Nat'l Bancorp.*,
    499 F.3d 629 (7th Cir. 2007) ......................................................................... *passim*

*Price v. Starbucks Corp.*,
    192 Cal. App. 4th 1136 (Cal. Ct. App. 2011) .......................................................24

*Rochester-Genesee Reg'l Transp. Auth. v. Cummins Inc.*,
    No. 09-cv-6370, 2010 WL 2998768 (W.D.N.Y. July 28, 2010) ............................16

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ........................................................................7, 9, 17, 18

*Rowe v. Unicare Life & Health Ins. Co.*
    No. 09-cv-2286, 2010 U.S. Dist. LEXIS 1576 (N.D. Ill. Jan 5, 2010) ...................12

iv

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................................. 9, 12

*In re Sony Gaming Networks and Customer Data Security Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................................ 12, 15

*Worix v. Medassets, Inc.*,
    857 F. Supp. 2d 699 (N.D. Ill. 2012) ....................................................................................... 12

**Statutes**

Cal. Civ. Code § 1798.82 ....................................................................................................................... 24

Cal. Civ. Code § 1798.84(b) .................................................................................................................. 24

## INTRODUCTION

Neiman Marcus moved to dismiss the First Amended Complaint under both Rule 12(b)(1), for lack of Article III standing, and Rule 12(b)(6), for failure to state a claim. This Court granted the 12(b)(1) motion and dismissed the complaint, but the Seventh Circuit reversed, finding that the plaintiffs' allegations were sufficient to provide standing at this stage, and remanded the case to this Court. This leaves pending Neiman Marcus's motion to dismiss under 12(b)(6), which has not been addressed by this Court or the Seventh Circuit. Nothing in the Seventh Circuit's Opinion bars this Court from granting Neiman Marcus's 12(b)(6) motion, which is judged under different standards than those applicable to Article III standing. In fact, the Opinion contains statements that support the 12(b)(6) motion in important respects. For the reasons set forth in this supplemental brief and in Neiman Marcus's prior briefing, (Dkt. Nos. 36, 45), each count of the First Amended Complaint should be dismissed for failure to state a claim.

## BACKGROUND

On June 2, 2014, plaintiffs filed the First Amended Complaint (Dkt. No. 27, "FAC"), consolidating putative class action claims asserted by multiple named plaintiffs. The FAC asserts six claims, all relating to a sophisticated criminal cyberattack on Neiman Marcus's information technology systems in 2013. On July 2, 2014, Neiman Marcus moved to dismiss the FAC on two grounds—for lack of Article III standing pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). (Dkt. Nos. 35, 36.) Regarding the latter, Neiman Marcus argued that the FAC failed to establish all elements of each claim advanced, and that the allegations for several of the claims were woefully deficient on multiple fronts. At its first opportunity to dismiss the FAC, this Court granted Neiman Marcus's motion with respect to standing after finding that plaintiffs failed to establish injury-in-fact. (Dkt. No. 49, "Order".)

1

Among other things, this Court concluded that plaintiffs had not established a "certainly impending" risk of identity theft, (*id.* at 6–7), and rejected as insufficient to establish standing the allegation that plaintiffs had suffered injury due to reimbursed fraudulent charges, (*id.* at 6.) In addition, it wholly rejected plaintiffs' so-called "Overpayment Theory"—that is, that plaintiffs had overpaid for products purchased from Neiman Marcus because Neiman Marcus should have, but failed to, allocate a portion of the purchase price to pay for data security measures or because plaintiffs allegedly purchased products that they would not have otherwise purchased. (Order at 8–9.) The Court was equally unpersuaded by plaintiffs' theory that they suffered injury due to their alleged loss of control and value over their payment card information (the "Valuable Information Theory"). (*Id.* at 9.) Having determined that it lacked Article III jurisdiction, the district court did not reach Neiman Marcus's request for dismissal for failure to state a claim.

Plaintiffs thereafter appealed and, on July 20, 2015, a panel of the Seventh Circuit issued an opinion reversing this Court ("Opinion"). Notably, like this Court, the panel did not address the question of whether plaintiffs stated a claim sufficient to survive a 12(b)(6) motion. (Opinion at 17.) Nor did it reject all of the reasoning employed by this Court, and the panel in fact agreed with this Court on some points. The panel identified and addressed six claimed injuries—two future and four present injuries. As outlined below, the panel found that plaintiffs' allegations regarding the risk of future unauthorized charges and identity theft were sufficient to support standing. As to plaintiffs' four alleged present injuries, the panel found that two were sufficient to confer standing—the time and money allegedly spent resolving past fraudulent charges and the time and money spent protecting against future identity theft. But importantly, and consistent with this Court's Order, it expressed significant skepticism regarding the viability of plaintiffs' remaining two theories of injury—the "Overpayment Theory" and the "Valuable Information

Theory"—noting that it was "dubious" of these theories and describing them as "problematic." It likewise confirmed that actual damages are required for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), and that plaintiffs' claimed "informational injury" resulting from an alleged delay in notification were insufficient for Article III standing. (*Id.* at 13.) The panel's discussion of each of these theories of injury, as well as traceability and redressability, are outlined further below as relevant to Neiman Marcus's 12(b)(6) arguments and plaintiffs' responses.

### A. Injury-in-Fact

#### 1. *Future Unauthorized Charges and Future Identity Theft*

The panel described plaintiffs as alleging two future injuries: "an increased risk of future fraudulent charges and greater susceptibility to identity theft." (Opinion at 6.) It found that plaintiffs need not wait until identify theft or fraudulent charges occurred for the purposes of standing because there was an "objectively reasonable likelihood" that Neiman Marcus customers would suffer these injuries. (Opinion at 9.) In doing so, the panel did not focus on plaintiffs' actual allegations. Instead, it speculated that it could infer "a substantial risk of harm from the Neiman Marcus data breach" because "[p]resumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." (*Id.*) The panel recognized, however, that "the plaintiffs may eventually not be able to provide an adequate factual basis for the inference." (*Id.* at 10.)

#### 2. *Time and Money Spent Resolving Fraudulent Charges*

With respect to plaintiffs' alleged "present" injuries, the panel concluded that "lost time and money resolving the fraudulent charges" conferred standing. (*Id.* at 6.) Notably, its discussion of this alleged harm centered on the alleged *time* lost, rather than on *money* spent. According to the panel, the individuals who had already experienced fraudulent charges

"suffered the aggravation and loss of value of the time needed to set things straight, to reset payment associations after credit card numbers are changed, and to pursue relief for unauthorized charges." (*Id.* at 7.) The panel did not cite to any allegations of money spent, aside from a passing reference to "identifiable costs associated with the process of sorting things out," even though plaintiffs had not alleged anything concrete or specific about the hypothetical costs of "sorting things out." (*Id.*) The panel expressly recognized, however, plaintiffs' concession that they had been reimbursed for any fraudulent charges allegedly incurred—in other words, that there were no unreimbursed charges. (*Id.*)

### 3.    Time and Money Spent Protecting Against Identity Theft

The panel also concluded that plaintiffs' assertion of "lost time and money protecting themselves against future identity theft" conferred standing. (*Id.* at 10.) In support of this, the panel relied solely on the fact that *Neiman Marcus* had previously "offered one year of credit monitoring and identity-theft protection" at its own expense, and further speculated that a hypothetical customer who had been notified that her card was at risk "might think it necessary to subscribe to a service that offers monthly credit monitoring," (*Id.* at 10–11.) Again, however, the panel did not find that plaintiffs alleged that they had subscribed to any such a service. (*Id.*)

### 4.    The Overpayment Theory

The panel then refused to accept, and expressed significant skepticism regarding, plaintiffs' Overpayment Theory—which is at the heart of many of plaintiffs' claims, and that indeed is the *only* injury alleged with respect to several of them. More specifically, the panel described plaintiffs' theory as "more problematic" than the alleged injuries described above, and averred that it was "dubious" that this theory could have sufficed for standing. (*Id.* at 11.)

Plaintiffs have presented this theory in a variety of forms. For instance, plaintiffs at times alleged that they "overpaid for the products at Neiman Marcus because the store failed to invest

4

in an adequate security system," (Opinion at 11); that Neiman Marcus was required to, but did not, invest a sufficient portion of the price they paid for purchased items in cybersecurity measures, (Order at 8); and that they would not have purchased the goods they in fact purchased had they known that Neiman Marcus did not invest in an adequate cybersecurity system or had not earmarked a portion of the purchase price to cybersecurity. (*Id.*; Opinion at 12.)

In support of this theory, plaintiffs relied on product liability cases involving the purchase of a product that supposedly contained an inherent characteristic that was absent, making the product harmful, defective, or less valuable. (*See* Reply at 13–14.) The panel, like this Court, dismissed this argument as overreaching. The panel noted that, "[i]n some situations, we have held that financial injury in the form of an overcharge can support Article III standing" but "many of these cases involve products liability claims against defective or dangerous products." (Opinion at 11–12.) Thus, the panel characterized the Overpayment Theory as an attempt to "extend that idea from a particular product to the operation of the entire store," and rejected the attempted application in data breach cases. (*Id.* at 12; *see also* Order at 8–9.)

Significantly, the panel cast in the same light plaintiffs' unjust enrichment theory, recognizing it as another attempted iteration of the Overpayment Theory. (Opinion at 12.)

### 5. Valuable Information and Informational Injury Theories

Finally, like the Overpayment Theory, the panel rejected plaintiffs' theory that they had been injured by losing control over, and the value of, their private information (the "Valuable Information Theory"), concluding that it was "dubious" of this "problematic" theory as well. (*Id.* at 11.) The panel noted that plaintiffs characterized this as "an intangible commodity" and explained that such a theory "assume[d] that federal law recognizes such a property right," a proposition for which "[p]laintiffs refer[red] [the panel] to no authority that would support such a finding." (*Id.* at 13.) The panel further described plaintiffs' theory as one under which "persons

who had unauthorized credit charges would have standing even if they were automatically reimbursed, their identities were not stolen, and they could not show that there was a substantial risk of lack of reimbursement or further use of their information." (*Id.*) Finding that "the complaint does not suggest that the plaintiffs could sell their personal information for value," the court "refrain[ed] from supporting standing on such an abstract injury." (*Id.*) Thus, again, the panel's finding mirrored this Court's determination that the Valuable Information Theory was "not sufficiently concrete" to provide the basis for an injury-in-fact. (Order at 9.)

The panel went further, also dispensing with plaintiffs' theory that "recently-enacted state statutes make [a] right to personal information concrete enough for standing" (the "Informational Injury Theory"). (Opinion at 13.) More specifically, regarding plaintiffs' alleged violations of the California and Illinois data breach acts on the ground that data breach notifications were allegedly delayed in an impermissible manner, the panel found that neither statute "provide[d] the basis for finding an injury for Article III standing." (*Id.*) Thus, under California data breach law, "a delay in notification is not a cognizable injury." (*Id.* (*citing Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1143 (Cal. Ct. App. 2011)).) Similarly, plaintiffs had not suffered an injury under the Illinois Consumer Fraud Act (and therefore also the Illinois Personal Information Protection Act ("PIPA")) because that statute "requires 'actual damages,'" a fundamental element lacking in this case. (*Id.* at 13–14 (*quoting People ex rel. Madigan v. United Constr. Of Am., Inc.*, 981 N.E.2d 404, 411 (Ill. App. Ct. 2012)).)

### B. "Fairly Traceable"

Regarding traceability, the panel concluded that the injuries it found sufficient to confer standing were also fairly traceable to Neiman Marcus, again only for the purposes of standing. While the panel was not persuaded by the argument that plaintiffs' could not meet the "fairly

traceable" element in light of the fact that numerous large-scale retailers announced data breaches around the same time as Neiman Marcus (*id.* at 14), the panel did not examine whether plaintiffs had sufficiently alleged that their injuries were proximately caused by Neiman Marcus for the purposes of Rule 12(b)(6)—a substantially higher threshold than the "relatively modest" fairly traceable standard. *See Rothstein v. UBS AG*, 708 F.3d 82, 91–92 (2d Cir. 2013) (collecting cases and explaining that "the 'fairly traceable' element of Article III standing imposes a standard lower than proximate cause") (quotation marks omitted); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (plaintiffs seeking to establish Article III standing "do not bear so heavy a burden" as demonstrating "proximate cause"); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (certain plaintiffs could not show the proximate causation, but could "meet[] the less rigorous Article III causation threshold").

### C.    Redressability

Finally, the panel found that, although plaintiffs admitted that they had been reimbursed for any alleged fraudulent charges, the "mitigation expenses" and "future injuries" were alleged injuries that could be redressed by a judicial decision, despite the fact that plaintiffs had not alleged or proffered any specific information about such injury. (Opinion at 15–16.) The panel also acknowledged that some credit card companies offer customers "zero liability" policies, pursuant to which customers are not held responsible for fraudulent charges, but found that the existence of such policies did not defeat redressability because such policies are not required under federal law and may not apply to debit cards, and because unauthorized charges reported after certain deadlines may not be reimbursed. (*Id.* at 16.) Notably, the panel did not find that plaintiffs actually alleged that their affected cards were not covered by a zero liability policy, or that any of the plaintiffs failed to timely report any unauthorized charge. (*Id.*)

D.      **12(b)(6) Motion**

Finally, the panel noted that Neiman Marcus had sought dismissal for failure to state a claim in the alternative, and that this Court had not previously reached this challenge.  (*Id.*)  The panel abstained from addressing the 12(b)(6) arguments for procedural reasons.  (*Id.* at 17.)

## ARGUMENT

I.      **The Panel's Opinion Does Not Moot Neiman Marcus's 12(b)(6) Challenges.**

The panel's conclusion that certain of plaintiffs' claims were sufficient to confer standing in no way implies that plaintiffs' allegations are sufficient to state a claim pursuant to Rule 12(b)(6).  Indeed, the Rule 12(b)(6) standard is in many ways more demanding than the standing analysis.  Whereas a plaintiff may rely on "general factual allegations of injury resulting from the defendant's conduct" to establish standing at the pleading stage, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), "[t]o survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim for relief that is plausible on its face and raise a right to relief above the speculative level," *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 914 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 915 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

For this reason, courts have repeatedly cautioned that one must not conflate the standing and merits analyses.  *See, e.g., Gould v. Schneider*, 448 F. App'x. 615, 618 (7th Cir. 2011) (affirming Rule 12(b)(6) dismissal and recognizing, "[h]aving standing . . . does not mean that

[the plaintiff] has stated a claim"); *Payton v. Cnty. of Carroll*, 473 F.3d 845, 851 (7th Cir. 2007); *Moyer v. Michaels Stores, Inc.*, No. 14 C 561, 2014 WL 3511500, at *2, 6 (N.D. Ill. July 14, 2014) (citing *Gould* and *Payton*).[1] Indeed, courts considering data breach cases have repeatedly dismissed complaints for failure to state a claim, even after finding that plaintiffs had standing.[2]

These well-established principles make three things clear. First, alleged future and present "injury" and traceability theories recognized as sufficient to confer standing may not be—and here are not—sufficient to meet the higher plausibility threshold required to state a claim pursuant to Rule 12(b)(6). Second, the purported injuries that the panel held *could almost certainly not* meet the standing requirements cannot and will not satisfy Rule 12(b)(6)'s more demanding requirements. Third, the panel's decision has no bearing on Neiman Marcus's additional arguments regarding the deficiencies in the FAC unrelated to injury and proximate cause. For all these reasons, the FAC should be dismissed.[3]

---

[1] *See also Maya*, 658 F.3d at 1067–68 (district court "inappropriately applied the standards of [*Iqbal*] and [*Twombly*]" to a question of Article III standing); *Rothstein*, 708 F.3d at 93–94, 97–98 (claim sufficient to survive a Rule 12(b)(1) motion to dismiss but not a 12(b)(6) motion to dismiss); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015) ("[T]he test for standing is not whether the [plaintiffs] met [*Iqbal*] and [*Twombly*] pleading requirements . . . .").

[2] *See, e.g.*, *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 640 (7th Cir. 2007); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 130–131 (9th Cir. 2010) ("[O]ur holding that [plaintiffs] pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) ("While Plaintiffs have currently alleged enough to assert Article III standing to sue based on an increased risk of future harm, the Court finds such allegations insufficient to sustain a negligence claim under California law."); *Moyer*, 2014 WL 35511500, at *6–7 (an increased risk of identity theft after a data breach sufficient to grant standing but not sufficient to plead state law claims under Rule 12(b)(6)); *Holmes v. Countrywide Fin. Corp.*, No. 08-C-00205, 2012 U.S. Dist. LEXIS 96587 (W.D. Ky. July 12, 2012) (data breach plaintiffs had Article III standing but failed to state any claims under Kentucky and New Jersey law).

[3] This brief does not repeat those arguments in the initial briefing on Neiman Marcus's 12(b)(6) motion that it believes are unaffected by the panel's Opinion. All other arguments in Neiman Marcus's initial briefing are incorporated by reference. (*See* Memorandum in Support of Defendant Neiman Marcus Group's Motion to Dismiss Plaintiffs' First Amended Complaint, Dkt. No. 36 ("Init. Br."); Plaintiffs' Response to Defendant The Neiman Marcus Group's Motion to Dismiss First Amended Class Action

**II.** **Plaintiffs Fail to State a Claim for Negligence (Count I).**

The parties agree that to state a claim for negligence under California, Illinois and New York law, a plaintiff must show that the plaintiff suffered an injury proximately caused by defendant's breach of a duty owed to plaintiff. (Init. Br. at 19; Opp. at 33–34.) Plaintiffs fail to state a claim for negligence for at least three reasons. First, the injuries alleged in the FAC are insufficient to state a claim for negligence. Second, their claims are barred by the economic loss doctrines in California, Illinois, and New York. Third, plaintiffs do not allege that their alleged injuries were proximately caused by Neiman Marcus.

**A.** **Plaintiffs' Alleged Injuries are Insufficient to State a Claim for Negligence.**

As described above, the panel found that four injuries alleged by plaintiffs sufficed as injuries in fact—more specifically, two "future" injuries (the increased risk of identity theft and unreimbursed fraudulent charges) and two "present" injuries (time and money spent resolving fraudulent charges and protecting against the risk of future identity theft, although the panel's analysis regarding the former focused solely on time, rather than money). Recognition by the panel that such theories were sufficient to confer standing does not imply that such alleged injuries are adequate to state a claim for negligence.

As a preliminary matter, plaintiffs do not even allege in Count I that they suffered either of the future injuries recognized by the panel in its standing analysis. (*See* FAC ¶ 89.) Even if plaintiffs had alleged that they suffered the future injuries recognized by the panel because of Neiman Marcus's alleged negligence, such allegations would not suffice to state a claim under controlling Seventh Circuit law. Nor do the present injury theories articulated for standing.

Complaint, Dkt. No. 39 ("Opp."); Defendant Neiman Marcus Group's Reply in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint, Dkt. No. 45 ("Reply").)

It is settled law in this Circuit that the risk of future injuries and expenditures made to mitigate such risks are not sufficient injuries to state a claim for negligence. In *Pisciotta v. Old Nat'l Bancorp*, the plaintiffs alleged that the defendant had injured them due to its alleged failure to prevent a hacker from accessing confidential information that the plaintiffs and other customers had provided to the defendant. 499 F.3d at 631. The plaintiffs sued in negligence, seeking compensation for past and future credit monitoring services that they bought in response to the breach. *Id.* The *Pisciotta* plaintiffs alleged that defendant "caused Plaintiffs and other similarly situated past and present customers to suffer substantial potential economic damages." *Id.* at 632. On appeal, the Seventh Circuit first found that the plaintiffs had standing and that the injury-in-fact requirement was satisfied by a threat of future harm or by an act that harmed the plaintiffs by increasing the risk of future harm. *Id.* at 634. The Seventh Circuit also found, however, that the possibility of future injury stemming from a data breach was insufficient to state claims for negligence or breach of implied contract and granted the defendant's motion to dismiss. *Id.* at 639 ("Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy.").

The *Pisciotta* plaintiffs also alleged that they had "incurred expenses in order to prevent their confidential personal information from being used and will continue to incur expenses in the future." *Id.* at 632. Like plaintiffs here, the *Pisciotta* plaintiffs "did not allege any completed direct financial loss to their accounts as a result of the breach" and did not claim that "they or any other member of the putative class already had been the victim of identity theft as a result of the breach." *Id.* (emphasis omitted). The Seventh Circuit found that the plaintiffs failed to state a negligence claim because credit monitoring costs were not compensable as a matter of Indiana law. *Id.* at 640. Thus, even though the Seventh Circuit found that plaintiffs had sufficiently pled

injuries that conferred standing, it held that those alleged injuries were insufficient to meet the standard for stating a negligence claim, and therefore dismissed the complaint.

Judges in this district applying Illinois law have reached the same conclusion. *See*, *e.g.*, *Moyer*, 2014 WL 3511500, at *7; *Rowe v. Unicare Life & Health Ins. Co.* No. 09-cv-2286, 2010 U.S. Dist. LEXIS 1576, at *22–23 (N.D. Ill. Jan 5, 2010) (finding that an increased risk of future harm, even accompanied by the costs of credit monitoring services, is not a cognizable present harm in Illinois); *Worix v. Medassets, Inc.*, 857 F. Supp. 2d 699, 704–05 (N.D. Ill. 2012) (same, and collecting cases dismissing negligence claims where the only damage alleged was the cost of guarding against risk of identity theft).[4]

Most recently, in *Moyer*, a case relating to a similar payment-card cybersecurity attack, the court considered and rejected both future injuries and present injuries nearly identical to those alleged by plaintiffs here as insufficient to state common law or statutory claims. The *Moyer* plaintiffs alleged that their payment card information was exposed and could be misused by thieves. 2014 WL 3511500, at *2. Like plaintiffs here, they alleged that they suffered (1) an elevated risk of identity theft and costs associated with protecting themselves against this risk, (2) overpayment for goods allegedly priced to reflect the added cost of securing credit and debit card information, (3) a lost property interest in their personal identifying information and its

---

[4] Courts in California and New York have likewise found that alleged future injuries are insufficient to state claims for negligence. *See*, *e.g.*, *In re Sony Gaming Networks*, 903 F. Supp. 2d at 963 (applying California law and holding that the mere "danger of future harm, unaccompanied by present damage, will not support a negligence action") (citations omitted); *Hammond*, 2010 WL 2643307, at *10 (holding that a "heightened fear of having [one's] identit[y] stolen" does not give rise to damages under New York's negligence law). They have also recognized that credit monitoring costs undertaken to prevent such alleged risks are insufficient as well. *See Hammond*, 2010 WL 2643307, at *9–10 (finding that plaintiffs could not demonstrate that they suffered damages despite alleging "that they have a heightened fear of having their identities stolen in the future and have, as a result, taken steps to monitor their credit more vigilantly"); *see also In re Sony Gaming Networks and Customer Data Security Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) (credit monitoring costs not sufficient injury to state claim for negligence where plaintiff presented no evidence that he had become a victim of identity theft.).

alleged commercial value, and (4) additional "monetary losses arising from unauthorized bank account withdrawals, fraudulent card payments, and/or related bank fees charged to their accounts," though the court noted that "[t]he only concrete monetary loss . . . is [one plaintiff's] purchase of credit monitoring protection." *Id.* at *4. The court found that the elevated risk of identity theft sufficed as an injury-in-fact and that the plaintiffs had standing. *Id.* at *6.

The court then found that plaintiffs' alleged injuries did not "constitute actual economic damage under Illinois law," and found such allegations insufficient to state claims for breach of implied contract and violation of the Illinois Consumer Fraud Act. *Id.* at *7. The court found that allegations of increased risk of future identity theft and the purchase of credit monitoring services were not sufficient to state common law or statutory claims and that the other "monetary losses" alleged in the complaint were "entirely conclusory." *Id.* Here, plaintiffs have alleged a similar list of alleged harms that is even more vague and conclusory than the list alleged by plaintiffs in *Moyer*: they allege that they suffered "fraud on their credit or debit cards, . . . loss of time and money associated with resolving the fraudulent charges on their cards, loss of time to monitor and cancel additional cards or accounts, [and] loss of time and money monitoring their finances for additional fraud." (FAC ¶ 89.) Because plaintiffs have not substantiated any of these conclusory statements with factual allegations that plaintiffs personally spent a single dollar, the Court should find that these alleged injuries are insufficient to state a claim. The *Moyer* court also rejected a theory nearly identical to plaintiffs' Overpayment Theory, finding that "[p]laintiffs have not pled enough facts to support an inference that [defendant] charged customers a premium for data security protection." 2014 WL 3511500, at *7.

Because these cases involved dismissal for failure to state a claim rather than for lack of standing, the panel's Opinion in this case does not affect their continuing validity. Indeed,

13

*Pisciotta* and *Moyer* are wholly consistent with the panel's Opinion. Like the panel, both courts found that plaintiffs' allegations of present and future injuries were sufficient to constitute an injury-in-fact that conferred standing to sue, but concluded that plaintiffs fell short of plausibly alleging that they had suffered the compensable injury or actual monetary damages that were required elements of the claims brought by plaintiffs.

The panel's Opinion in fact confirmed the futility of plaintiffs' attempts to distinguish *Pisciotta*. Plaintiffs made two such attempts. First, they argued that the *Pisciotta* plaintiffs did not allege any theory analogous to the Overpayment Theory. However, as established above and as confirmed by the panel, this Court, and the court in *Moyer*, this theory cannot stave off dismissal. Second, plaintiffs argued that in this case certain plaintiffs had alleged actual damages including "unauthorized charges and phishing." (Opp. at 34.) Again, however, the panel confirmed that there were no allegations of unreimbursed unauthorized charges here. No court, including the panel in this matter, has recognized a *reimbursed* unauthorized charge, standing alone, as a sufficient injury for the purpose of conferring Article III standing, let alone as injury sufficient to state a claim for negligence. (*See* Init. Br. at 6–7.) The panel also recognized that phishing is not an injury. In stating background allegations, the panel noted that plaintiff Frank, the only plaintiff who allegedly was the target of phishing, "was the target of a scam through her cell phone." (Opinion at 4.) Notably, it did not include this alleged attempted scam as one of the injuries alleged by plaintiffs, or as a theory of injury that conferred standing. (Opinion at 6.) Nor could it have; as outlined in Neiman Marcus's Reply, there is no support for the conclusory claim that receipt of a phishing attempt is, on its own, a compensable injury. (Reply at 22 n.15.)

## B. The Economic Loss Rule Bars Plaintiffs' Claim for Negligence.

Even if plaintiffs had alleged injury sufficient to state a claim, the economic loss rule bars plaintiffs' claims. As Neiman Marcus explained in its initial brief, the economic loss rules

adopted in California, Illinois, and New York prohibit a plaintiff from recovering for purely economic losses under a tort theory of negligence and thus bar plaintiffs' claims. (See Init. Br. at 20–21; Reply at 23.) The panel's Opinion does not affect the operation of the doctrine here.

In their Opposition, plaintiffs did not contest, and thus conceded, that the Illinois economic loss rule bars any negligence claim under Illinois law. (Opp. at 35–37; Reply at 23.)

With respect to California, plaintiffs conveniently ignored Neiman Marcus's reliance on *In re Sony Gaming Networks*, 996 F. Supp. 2d 942, (S.D. Cal. 2014) a California data breach case that applied the economic loss rule to bar a negligence suit alleging economic damages. (*See* Init. Br. at 20; Opp. at 36–37; Reply at 23.) Instead, plaintiffs cited two cases in support of their contention that the California economic loss rule did not bar their claim—one that applied Nevada law and was thus wholly inapplicable, and one that involved allegations of emotional injuries that are not alleged in the FAC. (Opp. at 36–37; Reply at 23–24.)

Similarly, with respect to New York, plaintiffs ignored Neiman Marcus's reliance on *King County., Wash. v. IKB Deutsche Industriebank AG*, which held that, "[u]nder New York's 'economic loss' rule, a plaintiff cannot recover in tort for purely economic losses caused by a defendant's negligence." 863 F. Supp. 2d 288, 302 (S.D.N.Y. 2012); (*see also* Init. Br. at 20.) Instead, plaintiffs incorrectly averred that "[t]he only New York case Defendant cites in support of its economic-loss-rule argument is *Hammond v. Bank of N.Y. Mellon Corp.*, 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)." (Opp. at 35.) Plaintiffs also cited two cases— *Hammond* and *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 281 (S.D.N.Y. 2008)—for the proposition that New York courts would not "apply the economic loss rule to [a] case such as this one." (Opp. at 35–36.) But, as Neiman Marcus pointed out in its Reply, neither case considered New York's economic loss doctrine; both dismissed claims

15

similar to those alleged by plaintiffs here for failure to allege cognizable injury. (Reply at 23 (*citing Caudle*, 580 F. Supp. 2d at 282, *and Hammond*, 2010 WL 2643307, at *9–10).)

Plaintiffs also identified an "exception" to the New York economic loss doctrine, but failed to show that it applied here. Nor could it. Plaintiffs argued that "under New York law, a Plaintiff may bring a cause of negligence where a legal duty independent of contractual obligations has been breached." (*See* Opp. at 35, *citing Rochester-Genesee Reg'l Transp. Auth. v. Cummins Inc.*, No. 09-cv-6370, 2010 WL 2998768, at *8 (W.D.N.Y. July 28, 2010), *and Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000)).) As Neiman Marcus pointed out in its Reply, plaintiffs failed to fully articulate this argument, and failed even to identify the source from which Neiman Marcus's alleged "duty independent of contractual obligations" could arise. (Reply at 23.) Indeed, a review of the cases cited by plaintiffs makes clear that the exception does not apply here. In *Hydro Investors*, the Second Circuit found that the exception applied to allow recovery for solely economic losses "in the limited class of cases involving liability for the violation of a professional duty," such as malpractice suits against accountants and attorneys. 227 F.3d at 18. And, in *Rochester-Genesee*, the court found that this "independent duty" exception applied *only* to contracts for services, not to contracts for the provision of goods. 2010 WL 2998768, at *8. Plaintiffs plainly do not allege that they are bringing claims for professional malpractice or for breach of a contract for services. In any event, plaintiffs' conclusory assertion that Neiman Marcus bore an independent "duty to provide adequate data security," (Opp. at 36), does not suffice under New York law and is not even alleged in the FAC. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 194

16

(N.Y. 1987) ("Merely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.").[5]

All of the alleged injuries recognized by the panel in its Opinion as sufficient to confer standing on plaintiffs—the risk of future identity theft, the risk of future unauthorized charges, time and money spent resolving fraudulent charges, and time and money spent guarding against future identity theft—are clearly purely economic injuries, as are plaintiffs' "problematic" alleged injuries of overpayment and loss of value of their personal information. None involve personal injury or property damage, and the panel's Opinion did not operate to change the *nature* of these alleged injuries. Thus, because all of the alleged injuries are purely economic in nature, the economic loss doctrine continues to bar their negligence claim.

### C. Plaintiffs Fail To Allege Proximate Causation.

As even plaintiffs have recognized, "the 'fairly traceable' element of Article III standing imposes a standard lower than proximate cause." *Rothstein*, 708 F.3d at 91–92; *see also* Opp. at 20.[6] Well-established law dictates that the panel's traceability finding does not imply that the claimed injuries were proximately caused by Neiman Marcus.

Unlike proximate cauation, plaintiff need only "demonstrate a causal nexus between the defendant's conduct and the injury" to meet the traceability requirement for standing. *Rothstein,*

---

[5] Some courts have characterized the application of New York's economic loss doctrine outside the products liability context as requiring a "focused duty analysis." *See King Cty.*, 863 F. Supp. 2d at 302. Regardless of how the doctrine is characterized, plaintiffs bear the responsibility of identifying the source of a duty outside of contract. *See id.* at 302–03; *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 364 (E.D.N.Y. 2013) ("Plaintiffs' claims sounding in tort can survive this motion only if they plausibly allege the existence of a duty, separate and apart from the parties' contracts . . . ."). This, plaintiffs have not done.

[6] *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1391 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct"); *Maya*, 658 F.3d at 1070; *Canyon*, 519 F.3d at 975 n.7.

708 F.3d at 91 (noting also that "indirectness is not necessarily fatal to standing because the 'fairly traceable' standard is lower than that of proximate cause"). Indeed, "the fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause but is not necessarily a basis for finding that the injury is not 'fairly traceable' to the acts of the defendant." *Id.* at 92; *see also Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013) ("We have . . . found the traceability requirement met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events."), *cert denied*, 134 S. Ct. 2291 (2014). Here, such an intervening cause of injuries purportedly suffered by plaintiffs clearly exists—the decision by criminals to attempt to steal and use Neiman Marcus's customers' payment card information.

Moreover, as Neiman Marcus highlighted in prior briefing, plaintiffs Frank (the sole New York plaintiff) and Farnoush do not even allege that they used their payment cards at a Neiman Marcus store at any time when the malware was operating. (Init. Br. at 2, 22.) They have thus failed to allege that they could have been injured as a result of Neiman Marcus's alleged negligence. For these reasons as well, plaintiffs have failed to allege proximate causation.

## III. <u>Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count II).</u>

In its initial brief, Neiman Marcus argued that plaintiffs had failed to state a claim for breach of implied contract on two grounds: first, that plaintiffs failed to allege facts establishing the terms of the implied contract, and second, that plaintiffs failed to allege damages resulting from the alleged breach of the implied contract. (Init. Br. at 23.) Each argument provides a sufficient ground for dismissal. The former argument is unrelated to the panel's standing analysis and thus remains an independent basis for dismissal.

Moreover, the viability of the latter argument was confirmed by the panel's discussion of injury-in-fact in connection with standing. In its response to Neiman Marcus's motion to

18

dismiss, plaintiffs pointed to only one purported injury in support of their breach of contract claim: that "they, like all consumers making purchases at Defendant's stores, paid a price premium that should have been used to protect Plaintiffs' personal information through adequate security measures." (Opp. at 33.) This is plainly a reiteration of plaintiffs' Overpayment Theory. As discussed *supra*, this theory has been considered and rejected numerous times, including by this Court, the panel, and Judge Bucklo in *Moyer*. Since this is the sole injury identified by plaintiffs in support of their claim for breach of implied contract, this claim fails.[7]

## IV. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count III).

Neiman Marcus set forth in its initial brief the reasons that compel dismissal of plaintiffs' unjust enrichment claim, including: (1) the claim is too vague to put Neiman Marcus or the Court on notice of the relief sought; (2) the claim appears based on plaintiffs' invalid Overpayment Theory; (3) California law does not allow an individual who received the benefit of her bargain to bring a claim for unjust enrichment; and (4) in Illinois, a claim for unjust enrichment may only be brought where there is an independent basis for a duty on the part of the defendant, and plaintiffs here failed to allege the basis of any such duty.[8] In addition, plaintiffs alleged no facts to establish the necessary elements under New York law, including that the unidentified benefit allegedly conferred on Neiman Marcus was conferred under mistake of fact or law, that such

---

[7] Even if plaintiffs had alleged their other theories of injury in support of this claim, plaintiffs would still fail to state a claim because such allegations are conclusory in nature and do not constitute "actual monetary damages," a required element for a breach of contract claim. *Moyer*, 2014 WL 3511500, at *7.

[8] In 2015, the Illinois Appellate Court found that plaintiffs need not establish that such a duty was required to prevail on a claim for unjust enrichment. *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1043 (Ill. App. Ct. 2015). However, other recent decisions have been to the contrary. *See, e.g.*, *Dolmage v. Combined Ins. Co. of Am.*, No. 14C3809, 2015 U.S. Dist. LEXIS 6824, at *27 (N.D. Ill. Jan. 21, 2015) ("In order to recover for unjust enrichment based on a tort claim, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty."); *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (finding that the improper conduct making retention of a benefit unjust usually also forms the basis of another claim against the defendant, and that a claim for unjust enrichment stands or falls with the related claim).

benefit remains with Neiman Marcus, or that Neiman Marcus has changed its position. (*See* Init. Br. at 25–29.) Each of these arguments compels dismissal of plaintiffs' claim.

The only issue implicated by the panel's Opinion is plaintiffs' reliance on the Overpayment Theory. More specifically, in response to Neiman Marcus's motion to dismiss, plaintiffs confirmed that their claim for unjust enrichment is based *solely* on their Overpayment Theory. (*See* Opp. at 37–40.) As explained above, the invalidity of this theory has been confirmed by multiple courts, including the panel and this Court. Moreover, the panel expressly cited plaintiffs' unjust enrichment theory in the context of its discussion regarding the failed Overpayment Theory. (Opinion at 12.) For these reasons, as well as those outlined in Neiman Marcus's prior briefs, the unjust enrichment claim must be dismissed.

## V.     Plaintiffs Fail to State a Claim Under the California, Illinois, or New York Consumer Protection Laws (Count IV).

As outlined in Neiman Marcus's initial briefing, plaintiffs fail to state a claim under the consumer protection laws of California, Illinois and New York because they failed to allege deception, injury, and causation. (Init. Br. at 30.) Each remains an independent ground for dismissal, but only injury is implicated by the panel's Opinion—which again confirms that plaintiffs do not, and cannot, allege injuries sufficient to state a consumer protection claim.

The laws of each state require plaintiffs to allege actual injury. (*Id.* at 29–30 (*citing Martis v. Pekin Mem'l Hosp. Inc.*, 395 Ill.App.3d 943, 949 (2009) (elements of a claim under the Illinois Consumer Fraud Act include "actual damage to the plaintiff proximately caused by the deception"); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (Ct. App. 2000) (plaintiff suing under New York General Business Law § 349 must prove that she "suffered injury as a result of the deceptive act"); *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (2011) (plaintiff suing under California Unfair Competition Law must show "that economic injury was the result of, *i.e.*

caused by, the unfair business practice or false advertising that is the gravamen of the claim.")
(emphasis omitted)).)  Again, plaintiffs have alleged only one injury: their invalid Overpayment
Theory.  (Opp. at 27.)  This has been rejected, and this claim must be dismissed.

Moreover, the panel's finding that plaintiffs alleged that injuries sufficient to confer
standing were fairly traceable to Neiman Marcus in no way implies that plaintiffs have
established that any injuries alleged under this count were caused by any alleged deceptive
statements by Neiman Marcus.  (*See* Init. Br. at 32.)

## VI.  Plaintiffs Fail to State a Claim for Invasion of Privacy (Count V).

In its initial brief, Neiman Marcus showed that the FAC failed to state a claim for
invasion of privacy under California law for three reasons.  First, the FAC failed to allege that
their privacy was violated by Neiman Marcus, as opposed to by third-party criminals who
hacked into Neiman Marcus's systems, nor could it so allege.  (Init. Br. at 33.)  Second, the FAC
failed to allege that any purported disclosure of plaintiffs' payment card information was an
egregious breach of social norms, a required element under any plausible invasion of privacy
theory.  (*Id.* at 33–34.)  And third, the FAC failed to allege cognizable damages or that plaintiffs
suffered any injury resulting from the alleged invasion.  For instance, plaintiffs failed to allege
that they personally found the alleged invasion of privacy highly offensive, suffered any hurt
feelings or embarrassment, or suffered any monetary loss as a result.  (*Id.* at 34.)  The first two
arguments are not implicated by the panel's Opinion and are independent grounds for dismissal.

Regarding the third argument, the panel's Opinion again sealed the fate of plaintiffs'
claim.  In response to Neiman Marcus's motion to dismiss, plaintiffs did not point to allegations
supporting cognizable damages.  Instead, they relied on their strained Valuable Information
Theory, citing to case law holding that California's "right of publicity has . . . become a tool to
control the commercial use and thus, protect the economic value of one's name, voice, signature,

photograph, or likeness." (Opp. at 40 (*quoting Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011)).) As discussed above, this theory was considered and rejected by this Court and the Seventh Circuit panel. In its Order, this Court noted that it was "unpersuaded by Plaintiffs' claim to standing based on the loss of control over and value of their private information." (Order at 9 (*citing In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *5 (N.D. Ill. Sept. 3, 2013) (finding no actual injury "unless a plaintiff has the ability to sell his own information and a defendant sold the information.")).) The panel shared this skepticism, stating that it doubted such a theory could even confer an injury sufficient for standing. (Opinion at 13-14.) As previously explained, such skepticism is well-founded. This count should be dismissed for failure to state a claim.

## VII. Plaintiffs Fail to State a Claim under California's Data Breach Laws or the Illinois Personal Information Protection Act (Count VI).

Plaintiffs' final count alleges that Neiman Marcus violated California's data breach laws and the Illinois PIPA. (FAC ¶¶ 135–47.) As outlined in Neiman Marcus's initial brief, the FAC fails to state a claim because it does not allege that plaintiffs suffered any injury as a result of any alleged violation of either statute. (Init. Br. at 35–36.) In particular, relief under the California Data Protection Act is limited to a "customer injured by a violation." (Init. Br. at 35, *citing* Cal. Civ. Code § 1798.84(b).) In addition, a violation of the Illinois PIPA does not provide an independent cause of action, but instead constitutes an unlawful practice under the Illinois Consumer Fraud Act, which, in turn, requires a plaintiff to show "actual damage . . . proximately caused by the deception." (Init. Br. at 35 (*citing Martis*, 395 Ill.App.3d at 949).) Thus, in both states, a plaintiff must allege an injury beyond the mere violation of the statute; it must allege an actual injury proximately caused by the alleged violation. (Init. Br. at 35.)

Again, the only aspect of Neiman Marcus's challenge that relates to the panel's decision is plaintiffs' failure to allege an actual injury proximately caused by the alleged violation. And, again, the panel's Opinion confirmed the invalidity of plaintiffs' theory. In their response to Neiman Marcus's motion to dismiss, plaintiffs stated that Neiman Marcus had violated the California Customer Records Act in three ways. First, they alleged that Neiman Marcus failed to "implement and maintain reasonable security procedures and practices," and that they were injured because "they spent money that, absent defendants' actions, they would not have spent and have, thus, demonstrated quintessential injury-in-fact." (Opp. at 22.) This alleged injury is nothing more than a restatement of plaintiffs' legally erroneous Overpayment Theory.

Second, plaintiffs alleged that Neiman Marcus failed to disclose the breach "in the most expedient time possible and without unreasonable delay." (*Id.*) In their FAC, plaintiffs alleged only that, as a result of this alleged delay in disclosure, "Plaintiffs and Class Members incurred economic damages, including expenses associated with monitoring their personal and financial information to prevent further fraud." (FAC ¶ 145.) The FAC makes no mention of any other injuries caused by such alleged violations. Notably, this theory of injury was squarely rejected by the Seventh Circuit, which found that under California law "a delay in notification is not a cognizable injury." (Opinion at 13.) In their Opposition, plaintiffs attempted to supplement their plainly insufficient allegations by claiming that "Plaintiff Kao alleges that she was injured . . . because she alleges that she used a credit card to make a purchase at Defendant's stores on December 31, [2013]," which she could have avoided if she had been previously provided notice. (Opp. at 23.) In addition, plaintiffs claimed that plaintiff Kao "suffered economic injury as a consequence of Defendant's untimely notice because she spent money on December 31,

2013 to purchase a product she would not have otherwise purchased." (*Id.*) This allegation is another instance of the invalid Overpayment Theory.[9]

Third, plaintiffs alleged that the notice provided to plaintiffs Kao and Remijas was inadequate for two reasons. (Opp. at 23–25.) First, plaintiffs alleged that the notice to plaintiff Kao was insufficient because it was undated and allegedly did not include information required under California law. (Opp. at 23–24.) Plaintiffs argue that they "show injury because they allege they were deprived of disclosures . . . that they are statutorily entitled to receive." (Opp. at 24.) However, as Neiman Marcus previously noted and the panel recognized, California courts have rejected such a claim: an allegation of "'deprivation of . . . information,' standing alone, is not a cognizable injury." Opinion at 13; *Price*, 192 Cal. App. at 1143;[10] *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 472 (2013) (noting lack of any California cases recognizing "informational injury" as a cognizable injury). Instead, plaintiffs must allege that they were *injured* by a violation of the statute requiring disclosure. *Boorstein*, 222 Cal. App. 4th at 467. This plaintiffs have not done, and the Opinion does not remedy this deficiency.

Regarding Illinois, plaintiffs alleged that Neiman Marcus did not provide any notice to plaintiff Remijas in violation of the Illinois PIPA. (Opp. at 25.) In doing so, they rely solely on a so-called "informational injury." But, as the panel recognized, such a theory is insufficient to state a claim because the Illinois Consumer Fraud Act requires "actual damages" resulting from

---

[9] Moreover, if plaintiffs are alleging that plaintiff Kao's card was compromised as a result of her December 31, 2013 purchase, such allegations are not plausible in light of Neiman Marcus's prior public disclosures that the malware did not operate after October 30, 2013.

[10] The statute at issue in *Price,* which concerned wage statements disclosures and included statutory damages, was revised in 2013 to provide that the injury requirement of the statute is met if an employee must refer to information beyond each wage statement to determine the dates of the pay period. *See Derum v. Saks & Co.*, 95 F.Supp.3d 1221, 1229 (S.D. Cal. 2015). By contrast, only individuals *injured* by violations of Cal. Civ. Code § 1798.82 may state claims. Cal. Civ. Code § 1798.84(b).

the alleged violation.[11]  (Opinion at 13.)  Moreover, plaintiffs have failed to allege that their alleged injuries were proximately caused by any violation of these statutes by Neiman Marcus. For these reasons, Plaintiffs have failed to state a claim for violation of the California or Illinois data breach laws, and these claims should therefore be dismissed with prejudice.

<strong>CONCLUSION</strong>

For the foregoing reasons, plaintiffs have failed to state any claim, and all of plaintiffs' claims should be dismissed with prejudice.

Dated: November 12, 2015                      Respectfully submitted,


                                              /s/  David H. Hoffman
                                              David H. Hoffman
                                              david.hoffman@sidley.com
                                              Geeta Malhotra
                                              gmalhotra@sidley.com
                                              Daniel Craig
                                              dcraig@sidley.com
                                              Sidley Austin LLP
                                              One South Dearborn Street
                                              Chicago, Illinois 60603
                                              Telephone: (312) 853-7000
                                              Facsimile: (312) 853-7036


                                              Steven M. Bierman
                                              sbierman@sidley.com
                                              James D. Arden
                                              jarden@sidley.com
                                              Sidley Austin LLP
                                              787 Seventh Avenue
                                              New York, New York 10019
                                              Telephone: (212) 839-5300
                                              Facsimile: (212) 839-5599

                                              *Counsel for Defendant The Neiman Marcus Group LLC*

---

[11] The allegation is also factually false.  As Neiman Marcus previously showed, it *did* provide notice to plaintiff Remijas by email.  (Declaration of Kristin Ammon, Dkt. No 45-1.)

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel Craig, an attorney, hereby certify that on November 12, 2015, I caused the foregoing Supplemental Brief to be served on all counsel of record through the Court's ECF system.

By: /s/ Daniel Craig
Daniel Craig
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000
*Attorney for Defendant*