**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HILARY REMIJAS, MELISSA FRANK, DEBBIE FARNOUSH, and JOANNE KAO, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-01735 |
| | Honorable Samuel Der-Yeghiayan |
| Plaintiffs, | |
| v. | |
| THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**

**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND**

**CERTIFICATION OF SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................... 1

II.     SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT .................... 3

        A.      Procedural History ................................................................. 3

        B.      Settlement Negotiations ........................................................ 5

        C.      Defendant's Requested Extensions and This Court's Dismissal in
                Response ................................................................................ 6

        D.      Terms of the Proposed Settlement ......................................... 6

                i.      Monetary Relief ......................................................... 6

                ii.     Non-Monetary Relief ............................................... 10

                iii.    Dissemination of Notice to the Class............................ 11

                iv.     Service Awards to Class Representatives ...................... 12

                v.      Attorneys' Fees and Expenses ..................................... 12

                vi.     Release Provisions .................................................... 12

                vii.    Opt-Out Procedure and Opportunity to Object............... 13

III.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINIARY
        APPROVAL ........................................................................................... 13

        A.      The Strength of Settlement Class Representatives' Case Is Well-Balanced
                Against the Amount Offered In the Settlement ......................... 16

        B.      The Complexity, Length, and Expense of Continued Litigation Favors
                Settlement ............................................................................ 19

                i.      Settlement Class Representatives Support the Settlement............. 19

        C.      The Settlement Is the Product of Serious, Informed, Non-Collusive
                Negotiations ........................................................................ 20

        D.      The Parties Engaged in Significant Motion Practice and Informal
                Discovery ............................................................................ 20

IV.     CLASS ACTION TREATMENT IS APPROPRIATE ......................................... 21

        A.      The Class to Be Certified for Settlement Purposes..................... 21

        B.      This Action Satisfies the Requirements of Rule 23(a)................. 22

                i.      The Class is Numerous ............................................ 23

        ii.     The Action Presents Common Questions ........................................ 24

        iii.    Plaintiffs' Claims Are Typical .................................................... 24

        iv.     Plaintiffs and Their Counsel Will Fairly and Adequately Protect the
                Interests of the Class ..................................................................... 25

    C.  This Action Satisfies the Requirements of 23(b)(3) ................................. 26

        i.      Common Questions of Law and Fact Predominate ....................... 27

        ii.     A Class Action Is Superior ......................................................... 28

    D.  Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule
        23(g) .......................................................................................................... 29

    E.  The Proposed Class Notice Is Adequate .................................................... 29

V.  CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................22

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S.Ct. 1184 (2013)..............................26

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)....13, 20

*Butler v. Am. Cable & Tel., LLC*, Case No. 09 CV 5536, 2011 U.S. Dist. LEXIS 74512 (N.D. Ill. Jul. 12, 2011) ...........................................................................................14

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981) ...................................................14

*Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill.1995)..................................23, 24, 27

*Chau v. Neiman Marcus Group, Ltd, Inc.*, No. 14-cv-597 (S.D. Cal. filed Mar. 14, 2014)............3

*Cotton v. Hinton, 559 F.2d 1326* (5th Cir. 1977) ...........................................................16

*Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002) ...........................................26

*De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225 (7th Cir. 1983)........................................24

*Ebersohl v. Bechtel Corp.*, 2010 WL 2266736 (S.D. Ill. June 7, 2010) ...................................25

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) .....................................14, 15

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)........................................................27

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)...........................................................13

*Frank v. Neiman Marcus Group*, No. 14-cv-00233-ADS-GRB (E.D.N.Y. filed Jan. 13, 2014) .....3

*Garner v. Healy*, 184 F.R.D. 598 (N.D. Ill. 1999).........................................................24

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ......................................................13

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997)..............18

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825 (E.D.N.C. 1994).........14

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) .................................................23

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ......passim

*In re Bromine Antitrust Litig*, 203 F.R.D. 403 (S.D. Ind. 2001)........................................14

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ...............19

*In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000) ............................... 16

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ................................................................................................................. 16

*In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000) ....................... 20

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) .................. 20

*In re RJR Nabisco, Inc. Secs. Litig.*, No. MDL No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ...................................................................................... 16

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ............................................................. 13, 14, 15, 16

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987) ................ 20

*McDaniel v. Univ. Fid. Corp.*, Case No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) ................................................................................................................. 22

*Mullane v. Central Hanover Trust*, 339 U.S. 306 (1950) ....................................... 29, 30

*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) .................................................. 24

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ............................................... 27

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .............................................. 28

*Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) .......................... 4

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ............................................... 24, 27

*Shields v. The Neiman Marcus Group, LLC*, No. 14-cv-752 (S.D. Cal. filed Apr. 1, 2014) ........... 3

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) .................................... 24

*Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326 (7th Cir.1969) .......................... 23

*Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982) ............................................... 25

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ......................................... 23, 24

*Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) .................................... 15

*Wong v. The Neiman Marcus Group, LLC*, No. 2:14-cv-00703-SJO-JC (C.D. Cal. filed Jan. 29, 2014) ................................................................................................................. 3

**STATUTES**

28 U.S.C. §1715 ............................................................................................... 11

**RULES**

Fed. R. Civ. P. 23(a) ...........................................................................................22, 23, 24

Fed. R. Civ. P. 23(b) ................................................................................................26, 27

Fed. R. Civ. P. 23(c) .....................................................................................................28

Rule 23(g)(1).................................................................................................................28

**TREATISES**

1 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) ...............................22, 23, 28

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d ed. 1986).........................................................................................................................26

Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010)......................................................13

Plaintiffs Hilary Remijas, Melissa Frank, Debbie Farnoush, and Joanne Kao (collectively, "Plaintiffs" or "Settlement Class Representatives"[1]) individually and on behalf of those similarly situated ("Settlement Class Members"), by their undersigned counsel, respectfully submit this memorandum of law in support of their Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Motion"). The terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement and Release (the "Settlement Agreement"), a copy of which is attached hereto as Exhibit 1.

## I.     INTRODUCTION

Plaintiffs brought this lawsuit as a putative class action on behalf of consumers whose credit or debit card information ("Payment Card Information") was potentially compromised in a 2013 cybersecurity intrusion (the "Cybersecurity Incident" or "the Incident") that affected certain stores owned by Defendant The Neiman Marcus Group LLC ("Neiman Marcus" or "Defendant"). Plaintiffs brought this suit against Defendant alleging negligence, breach of implied contract, unjust enrichment, violation of state unfair business practices statutes, invasion of privacy, and violation of state data breach acts.

The Settlement is the product of extensive arms' length negotiations between experienced and informed counsel, including multiple mediation sessions with the Honorable Judge Wayne R. Andersen (Ret.) of JAMS, a retired federal district judge with substantial experience in class action litigation and settlement, as well as numerous telephonic conferences between counsel, both with and without the facilitation of the Honorable Judge Andersen. The Settlement Agreement is fair, reasonable, and adequate given the claims, the alleged harm, and

---

[1]     Unless otherwise indicated herein, all capitalized terms have the definition ascribed to them in the Settlement Agreement, filed concurrently herewith.

the parties' respective litigation risks. It is "within the range of possible approval" and, thus, merits preliminary approval. *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 346 (N.D. Ill. 2010).

If approved, this Settlement will result in a Settlement Fund of up to one million, six hundred thousand dollars ($1,600,000). (Settlement Agreement ¶ 46.) The Settlement Fund will be used to pay (i) eligible claimants who submit valid and timely Claims, (ii) Service Awards, (iii) Attorneys' Fees and Expenses, (iv) any taxes due on the Settlement Payments Fund, and (v) the Settlement Administration Charges. (Settlement Agreement ¶¶ 46-48.) The Settlement also provides for an effective notice program, featuring direct notice to Potential Settlement Class Members as well as internet advertising and publication notice, all of which are well-tailored to disseminate the best notice practicable. Settlement Class Members and other customers shopping at Defendant's stores since this action was filed also benefit from changes to Defendant's business practices designed to further strengthen its information technology security, implemented after this litigation was first filed on January 13, 2014. (*Id.* ¶ 49.) In exchange for these benefits, Settlement Class Members will provide a general release to Neiman Marcus for all claims relating to the Cybersecurity Incident. (*Id.* ¶¶ 7, 68-71.)

For the reasons set forth above and explained in more detail below, Settlement Class Representatives respectfully request that the Court enter an Order, substantially in the form attached as Exhibit D to the Settlement Agreement: (1) preliminarily approving the terms of the Settlement as within the range of fair, adequate, and reasonable; (2) provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approving the notice program set forth in the Settlement Agreement and approving the form and content of the notice; (4) approving the procedures set forth in the Settlement Agreement for Settlement Class Members to exclude themselves from the

2

settlement class or to object to the Settlement; (5) staying all proceedings in this matter unrelated to the Settlement pending final approval of the Settlement; (6) staying and/or enjoining, pending final approval of the Settlement, any actions brought by Settlement Class Members concerning a released claim; and (7) scheduling a fairness hearing for a time and date convenient for the Court.

## II.  SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT

### A.  Procedural History

In January 2014, Neiman Marcus announced that it experienced the Cybersecurity Incident which potentially compromised the credit or debit card information of some of its customers who used a credit card or debit card at certain store locations.  Before initiating this litigation, Plaintiffs' counsel investigated the underlying facts, including by analyzing Defendant's public statements concerning the Cybersecurity Incident.

On March 12, 2014, Plaintiff Remijas filed her original Complaint in this action.  (Dkt. 1) Prior to this time, other complaints related to the Incident had already been filed against Neiman Marcus, including *Frank v. Neiman Marcus Group*, No. 14-cv-00233-ADS-GRB (E.D.N.Y. filed Jan. 13, 2014), and *Wong v. The Neiman Marcus Group, LLC*, No. 2:14-cv-00703-SJO-JC (C.D. Cal. filed Jan. 29, 2014).  Similar actions followed, including *Chau v. Neiman Marcus Group, Ltd, Inc.*, No. 14-cv-597 (S.D. Cal. filed Mar. 14, 2014) and *Shields v. The Neiman Marcus Group, LLC*, No. 14-cv-752 (S.D. Cal. filed Apr. 1, 2014).  After these actions were filed, Plaintiffs' counsel in all the actions related to the Incident met and conferred in order to self-organize the cases for the sake of judicial economy and efficiency.  (Declaration of Tina Wolfson ("Wolfson Decl."), filed concurrently herewith, ¶¶ 1-6.)  Plaintiffs agreed to consolidate and proceed with their cases in the Northern District of Illinois.  (*Id.*)  Ms. Remijas moved for leave to amend the complaint in her action to include additional plaintiffs and their

claims (Dkt. 22), which the Court granted on June 2, 2014. (Dkt. 26.) Plaintiffs filed their First Amended Complaint on June 6, 2014. (Dkt. 27.)

After filing, Plaintiffs' counsel's investigation continued. In this regard, Plaintiffs' counsel retained and consulted with experts on data security issues, who helped analyze publicly available information concerning the Incident. Plaintiffs' counsel fought for early discovery, filing, in the *Frank* case cited above, a motion to expedite discovery and, later, a motion to compel Defendant to participate in a Rule 26 conference so that regular discovery could proceed. (*Frank*, Dkts. 5, 29.) Counsel to Plaintiff Frank also filed a motion for a protective order seeking to curtail Defendant's communications to the class. (*Frank*, Dkt. 4.) The *Frank* court did not rule upon those motions before the cases were effectively consolidated in this Court.

On July 2, 2014, in this action, Defendant moved to dismiss Plaintiffs' First Amended Complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Dkt. 35.) Plaintiffs opposed, but on September 16, 2014, the Court granted Defendant's motion to dismiss under Rule 12(b)(1) and dismissed the action on standing grounds. (Dkt. 49.)

Plaintiffs appealed, and after oral argument this Court's dismissal was reversed by the Seventh Circuit. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015). The Seventh Circuit held that Plaintiffs adequately alleged standing under Article III of the U.S. Constitution. (Dkt. 66 at 17.) Following the Seventh Circuit's reversal and denial of Neiman Marcus's petition for rehearing *en banc*, Defendant renewed its Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. (Dkt. 75.) On January 13, 2016, the Court denied Defendant's Motion to Dismiss, stating that "[d]ismissal is not appropriate at this time." (Dkt. 84.) On October 26, 2016, the Court issued an Executive Committee Order, transferring the

action from the Honorable James B. Zagel to the Honorable Samuel Der-Yeghiayan for all further proceedings.  (Dkt. 121.)

### B.    Settlement Negotiations

In December 2015, the parties began discussing possible settlement, which resulted in a long series of arms' length negotiations, including mediation and numerous post-mediation discussions between counsel and the mediator.  (Wolfson Decl. ¶ 11.)  In connection with the mediation, Plaintiffs requested information from Neiman Marcus.  Neiman Marcus provided information sufficient to permit Plaintiffs and Class Counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.  (*Id.* ¶¶ 14, 17.)  Before entering into the Settlement Agreement, Plaintiffs' Counsel conducted a thorough examination, investigation, and evaluation of the relevant law and facts to assess the merits of the claims and defenses.  (*Id.* ¶ 16.)

The Honorable Judge Wayne R. Andersen (Ret.) of JAMS served as the mediator in two formal all-day mediation sessions, taking place on December 22, 2015 and on March 2, 2016, as well as numerous subsequent telephonic conversations and negotiations.  (*Id.* ¶ 12.)  Judge Andersen is a highly respected and experienced class action mediator, who joined JAMS following more than twenty-six years on the bench, spending the most recent nineteen years as a U.S. District Judge for the Northern District of Illinois.  (*Id.* ¶ 13.)  During the settlement negotiations, Plaintiffs obtained substantial information from Defendant concerning the Incident.  (*Id.* ¶ 14.)

The parties then began to memorialize the full Settlement, which generated numerous additional rounds of negotiations.  The parties extensively negotiated each aspect of the Settlement, including each of its eight (8) exhibits.  For example, counsel negotiated and meticulously refined the Notice Program and claim process and each document comprising the

5

Notice (*i.e.* the Long Form Notice, Summary Notice, Claim Form, and Settlement Administration Protocol), with the assistance of the Settlement Administrator, to ensure an accurate and simple claim process and that the information disseminated to Settlement Class Members is clear and concise. (*Id.* ¶ 18.)

C.     **Defendant's Requested Extensions and This Court's Dismissal in Response**

In November 2016, the parties agreed to extend Defendant's time to file a responsive pleading in order to continue settlement discussions, and Defendant filed an agreed motion that the Court granted.  (Dkts. 123-25.)  Similar requests were granted in December 2016 and in January 2017.  (Dkts. 128, 131, 134.)  In February 2017, Defendant filed another Agreed Motion Seeking an Extension of Time to File a Responsive Pleading.  (Dkt. 135.)  The Court denied this request and terminated the case.  (Dkt. 136.)  The Court stated "Plaintiffs may file a motion to reinstate" and Plaintiffs filed their motion to reinstate on March 8, 2017.  (Dkt. 140.)  The Court granted this motion on March 15, 2017.  (Dkt. 142.)

D.     **Terms of the Proposed Settlement**

i.     **Monetary Relief**

Defendant will pay up to one million, six hundred thousand dollars ($1,600,000) to create a Settlement Fund.  (Settlement Agreement ¶ 46.)

Up to $400,000 of the Settlement Fund will be used to pay charges and costs invoiced or charged by the Settlement Administrator arising from implementation of the Notice Program and administration of the Settlement, which the parties expect will amount to $400,000.  (*Id.* at ¶ 47.) If these Settlement Administration Charges are less than $400,000, then Defendant retains the difference.  If the Settlement Administration Charges exceed $400,000, such excess charges will be paid using funds set aside for payments to Class Members that have not been claimed; if such funds are not sufficient to pay these excess charges, then Defendant will pay the excess charges

not covered by the unclaimed funds.  (*Id.* ¶ 47.)

The remaining $1.2 million of the settlement fund will be used to pay Eligible Claimants (who submit valid and timely claims), any taxes due, any Service Awards to Plaintiffs and Attorneys' Fees and Expenses ordered by the court, and, if such payments do not exhaust this portion of the Settlement Fund, then the remaining funds may be used to pay any excess notice and administration costs, to make supplemental distributions to certain Class Members, and to make a charitable contribution.  (*Id.* at ¶ 48.)  Each Eligible Claimant who submits a valid and timely Claim to the Settlement Administrator will receive up to $100.  (*Id.* at ¶ 51.)

The parties have developed a streamlined and convenient method to determine whether a claimant has a valid claim.  Claimants need only answer two questions to submit a claim.

**Question One.**  A claimant must state whether his or her credit or debit card was used at a Neiman Marcus store between July 16, 2013 and October 30, 2013.[2]  (Settlement Agreement, Ex. A.)  Answering this question in the affirmative establishes that the claimant's card may have been used at a time and a place where malware capable of collecting payment card data was operating.  Claimants who answer in the negative are not entitled to any monetary benefit, as their payment card could not have been compromised in the Incident.

**Question Two.**  Claimants who answer the first question in the affirmative must provide at least one of two additional sets of information to submit a valid claim.  First, claimants may

---

[2]    This is a more limited period than the period covered by the class definition.  The Complaint alleged that malware capable of collecting payment card data operated through January 10, 2014, but such malware operated no later than October 30, 2013.  (Settlement Agreement ¶ 4.) Class members whose payment cards were used at a Neiman Marcus store only after October 30, 2013 could not therefore have been affected by the Cybersecurity Incident.  Monetary relief is available only to those class members whose cards could have been affected by the Cybersecurity Incident, so this question serves as an efficient screen for invalid claims.

provide (i) the last four digits of the payment card used at a Neiman Marcus store between July 16, 2013 and October 30, 2013 and (ii) the dates and locations that that card was used at a Neiman Marcus store between these dates. Second, claimants may provide the full name and billing address associated with the payment card. This information is necessary to determine whether the payment card was actually used at a time and place that malware capable of collecting payment card data was operational. Because Neiman Marcus does not possess the full name and billing address of all of the payment cards used at a time and place that malware capable of collecting payment card data was operating, it is possible that claimants who submit only the name and billing address associated with their payment card will have their claims denied due to a lack of information sufficient to determine whether or not that card was used at a time and place that the malware operated. The Claim Form therefore clearly explains this possibility and explains that claimants may avoid it by submitting the last four digits of the payment card used at a Neiman Marcus store during the relevant period, along with the dates and locations of such purchases. If the information submitted by the claimant establishes that their card was actually used at a time and place the malware was operational, then they will receive a monetary benefit; if it does not, they will not.

In addition to answering these two questions, claimants must affirm that the information they provided is true and correct, and that the claimant is the cardholder of the card identified in the response to Question Two.

This Claim validation procedure is convenient for claimants. It is possible for claimants to submit a valid Claim using only information in their memory, such as the name and billing address of a potentially-affected payment card. All of the information requested is easily ascertainable from billing records that claimants may have in their files or be able to quickly obtain from the websites maintained by the issuers of their payment cards. Unlike in other data

breach class action settlements, claimants need not collect or submit any documents to the settlement administrator in order to obtain a monetary benefit, which would substantially increase the burden on potential claimants.

Each Class Member who submits a valid and timely Claim will receive a monetary payment. The Settlement Payments Fund will first be used to pay any taxes due on the Settlement Fund, any Service Awards to Plaintiffs ordered by the Court, and any Attorneys' Fees and Expenses awarded by the Court. Once these payments have been made, the Settlement Administrator will pay an amount of up to $100 to each Class Member who submitted a valid and timely claim. In the event that the aggregate value of the valid and timely claims, valued at $100 per valid and timely claim, exceeds the amount remaining in the Settlement Payments Fund after taxes, Service Awards, and Attorneys' Fees and Expenses are paid, then the cash payment provided to each Class Member who submitted a valid and timely Claim will be reduced on a *pro rata* basis, and such Class Members will be paid a *pro rata* amount that exhausts the Settlement Payments Fund.

In the event that there are funds left in the Settlement Payments Fund after all Class Members who submitted a valid and timely Claim have been paid $100, then the remaining funds will be distributed as follows. First, such funds will be used to pay any costs of providing class Notice and administering the Settlement in excess of $400,000. Second, if there are funds remaining in the Settlement Payments Fund after payment of any such excess Notice and administration costs, the Settlement Administrator will estimate the cost of sending a check to each Class Member who could have submitted a valid Claim but did not for whom Neiman Marcus has a mailing address, and subtract that amount from the remaining funds. After subtracting this cost, any remaining amounts will be distributed to such Class Members on a *pro rata* basis, provided that each such distribution would exceed $5.00. Third, if there are funds

remaining in the Settlement Payments Fund after any such distribution, such remaining funds shall be donated to a charitable organization chosen jointly by the Parties.

The Parties have thus designed a process to distribute the Settlement Payments Fund that will provide substantial monetary benefits to Class Members who submit valid and timely Claims and may provide substantial monetary benefits to Class Members who could have submitted valid and timely Claims, but did not.

> ii.     **Non-Monetary Relief**

In addition to the monetary relief, since learning of the Cybersecurity Incident, and since the initial lawsuit described above was filed, Neiman Marcus took measures to further enhance the security of its customers' data, which remain in effect as of the date of the Settlement Agreement and include the following:

*Chief Information Security Officer*.  Neiman Marcus created and filled the position of Chief Information Security Officer (CISO), an executive position with responsibility to coordinate and be responsible for Neiman Marcus's program(s) to protect the security of customers' payment card data including account numbers, expiration dates, card verification values, and cardholder names;

*Information Security Organization*.  Neiman Marcus created a new organizational unit responsible for information security and has hired employees to fill the organization, including a Director of Security Operations and a Director of Security, Risk Management and Compliance;

*Senior Leadership Reporting*.  Neiman Marcus increased the frequency and depth of reporting to its executive team and members of its board of directors about its cybersecurity efforts and the cybersecurity threat landscape;

*Chip-Based Payment Card Infrastructure*.  Neiman Marcus equipped all of its stores with devices that allow customers to pay for purchases using payment cards containing embedded computer chips;

*Employee Education*.  Neiman Marcus expanded its program to educate and train its workforce on methods to protect the privacy and security of its customers' information;

*Log Analysis Tool*.  Neiman Marcus invested in a new tool to automatically collect and analyze logs generated by Neiman Marcus systems for potential

security threats; and

> *Information Sharing*.  Neiman Marcus joined several public-private partnerships that facilitate information sharing concerning cybersecurity and threat awareness.

(Settlement Agreement ¶ 49; Wolfson Decl. ¶ 14.)

### iii.    Dissemination of Notice to the Class

Settlement Class Members for whom Neiman Marcus has an e-mail or mailing address will directly receive the Summary Notice (Settlement Agreement, Ex. F) by e-mail, and, if a valid e-mail address is not available, by U.S. Mail to the extent such information is available in Neiman Marcus's records.  (*Id.* ¶ 58, 62.)  The Long Form Notice (*id.*, Ex. C) will be made available on a settlement website (www.NMSettlement.com).  The Settlement Administrator will also establish a toll-free telephone number through which Settlement Class Members may ask questions or request a mailed copy of the Long Form Notice and Claim Form.  (*Id.* ¶ 61.)  The Summary Notice will refer settlement Class Members to the Settlement Website, which will make available the Long Form Notice, Summary Notice, the Settlement Agreement, any motion seeking final approval of the Settlement, any motion for an award of Attorneys' Fees and Expenses or Service Awards to Plaintiffs, the Preliminary Approval Order, the Claim Form, the First Amended Complaint, and other relevant court documents that class counsel and Defendant agree to post or that the Court orders to be posted.  (*Id.* ¶¶ 59, 62.)  Finally, Defendants will comply with the requirements of 28 U.S.C. § 1715 ("CAFA").  (*Id.* ¶ 53.)

### iv.    Service Awards to Class Representatives

Each of the Settlement Class Representatives took the initiative to commence this litigation, assisted in case development, stayed apprised throughout the litigation, and accepted risks and responsibilities individually and on behalf of others similarly situated.  Therefore,

subject to Court approval and in recognition of these efforts, the Settlement Agreement allows each Settlement Class Representative to apply for a Service Award of up to two thousand five hundred dollars ($2,500), no later than 14 days prior to the Objection Deadline, to be paid out of the Settlement Fund.  (Settlement Agreement ¶ 72.)

### v.        Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel will make their application for reasonable attorneys' fees, costs, and expenses at least 14 days before the Objection Deadline. *Id.* ¶ 73.  Class Counsel agree not to seek an award of attorneys' fees, costs, and expenses in excess of five hundred and thirty thousand dollars ($530,000).  (*Id.*)  This maximum amount is stated on the relevant Notice forms.  (*Id.* Exs. D, G.)  Neiman Marcus reserves the right to object to Class Counsel's request for attorneys' fees, costs, and expenses.  (*Id.* ¶ 73.)

### vi.        Release Provisions

If the Court grants final approval of the Settlement, Settlement Class Members will automatically be deemed to have released Defendant of all claims, known or unknown, that were asserted or could have been asserted in the litigation.  (*Id.* ¶¶ 68-71.)  The Released Claims do not include any claims arising from or relating to any conduct by Neiman Marcus after the date the Settlement Agreement is executed.  (*Id.* ¶ 69.)

### vii.        Opt-Out Procedure and Opportunity to Object

Any Settlement Class Member may request to be excluded from the Settlement Class by sending a written request to the Settlement Administrator postmarked no later than the Opt-Out Deadline, as specified in the Long Form Notice.  (*Id.* ¶ 63 & Ex. D.)  Valid requests must include information described in the Long Form Notice, including a statement that the person sending the request wishes to be excluded from the Class.  (*Id.*)

Any Settlement Class Member who does not request to be excluded may object to the Settlement, Class Counsel's fee application, and/or the requests for Service Awards. (*Id.* ¶ 64.) To be considered, an objection must either be mailed to the Class Action Clerk or filed with the Court, and must be in writing, personally signed by the objector, and include the information prescribed by the Long Form Notice. (Settlement Agreement ¶ 64 & Ex. D.)

## III.  THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINIARY APPROVAL

Federal courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of claims brought on a class basis as follows: (i) the Court must preliminarily approve the proposed Settlement; (ii) members of the Settlement Class must be given notice re the proposed Settlement; and (iii) a hearing must be held, after which the Court must decide whether the proposed Settlement is fair, reasonable, and adequate. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010).

In considering a motion for preliminary approval of class action settlement, the Court must determine whether the settlement is within the range of possible approval, *i.e.*, within the range of what might be found fair, reasonable, and adequate. *In re AT&T Mobility Wireless*, *supra*, 270 F.R.D. at 346; *see also Armstrong*, *supra*, 616 F.2d at 314, *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("The courts of appeals have required that district court approval of a settlement pursuant to Rule 23(e) be given only where the district finds the

settlement fair, reasonable and adequate.").  If the Court finds the Settlement within the range of possible approval at the time of preliminary approval, notice of the Settlement will be given to Settlement Class Members, and a hearing scheduled to consider final settlement approval.  *See In re AT&T Mobility Wireless*, *supra*, 270 F.R.D. at 346.

However, at the time of preliminary approval, the Court is not required to make a final determination as to the fairness of the Settlement.  *Id.*  As a result, Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval.  *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low"); *see also Butler v. Am. Cable & Tel., LLC*, Case No. 09 CV 5536, 2011 U.S. Dist. LEXIS 74512, at *22 (N.D. Ill. Jul. 12, 2011) ("Although the 'fair, reasonable, and adequate standard' and the factors used to measure it are ultimately questions for the fairness hearing, a more summary version of the same inquiry takes place at the preliminary phase.") (citations omitted).  The Supreme Court has cautioned that, in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *Isby*, *supra*, 75 F.3d at 1196-97.

Here, the Settlement before the Court is fair, reasonable, and adequate, and well within the range of possible approval, because it provides monetary benefits to Settlement Class Members, avoids the uncertainty and expense of prolonged litigation, and avoids the need to resolve contentious factual and legal issues.  The Settlement Agreement further satisfies the

factors set forth by the Seventh Circuit in assessing whether a proposed settlement agreement is within the range of fair, reasonable, and adequate.

> In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*In re AT&T Mobility Wireless*, *supra*, 270 F.R.D. at 346; *see also*, *e.g.*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) (reiterating "longstanding guidance" of the relevant factors for determining fairness of class action settlement). In weighing these factors, a district court should "recognize[] that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, *supra*, 75 F.3d at 1199. The Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99. Further, "[t]he essence of settlement is compromise…[t]hus the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC v. Hiram Walker & Sons*, *supra*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, *supra*, 75 F.3d at 1200. Consideration of these factors confirms that the proposed Settlement here is well "within the range of possible approval" and weighs in favor of the Court preliminarily approving the Settlement.

A.     **The Strength of Settlement Class Representatives' Case Is Well-Balanced Against the Amount Offered In the Settlement**

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *In re AT & T Mobility*

15

*Wireless*, *supra*, 270 F.R.D. at 346 (internal citations omitted). The Seventh Circuit is clear that "[a]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Id*. at 347. Here, Plaintiffs believe in the merits of their case, but must acknowledge the risks of continuing to litigate the action.[3]

First, fact-intensive inquiries are pervasive in this action. Plaintiffs' contention that Defendant failed to secure and safeguard their credit and debit card information (*e.g.*, First Amended Complaint ¶¶ 1, 84-85, 98, 107) involve consideration of many facts surrounding the Incident, including the manner in which the information was potentially compromised in the first instance, the length of time the information was potentially compromised, the types of information that were potentially compromised, and whether any of the information was improperly accessed or used as a result. As the Seventh Circuit recognized, proving causation in this case presents a significant hurdle. (Dkt. 66 at 10.) Similar difficulties exist for purposes of quantifying settlement class members' damages. Likewise, Plaintiffs' claims regarding Defendant's failure to provide timely and adequate notice to settlement class members after the Incident require a factual inquiry into Defendant's notification program.

In support of its defenses, Plaintiffs expect that Defendant would attempt to present

---

[3]  In considering a settlement, a court is required to take the parties' views into account. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate; *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, No. MDL No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 at *12 (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *see also In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

certain materials as evidence and arguments that would seek to demonstrate that: (i) Defendant implemented robust security architecture to protect its systems and customer data, (ii) Plaintiffs' damages were not caused by the Incident or, at least, could have had other causes including other cybersecurity incidents; (iii) Assessments by allegedly independent third parties found that Defendant was in compliance with applicable data security standards before, during, and after the Incident; (iv) there was no evidence that the payment card information collected by the Malware in the Cybersecurity Incident was actually exfiltrated; (v) transactions on Defendant's websites and at Defendant's restaurants were not compromised; and (vi) PIN data was not compromised. (Wolfson Decl. ¶¶ 15.) Defendant would also likely attempt to present evidence in an effort to establish that they sent written notice of the Incident to consumers with an offer of free credit monitoring for one year. (*Id.*)

Second, continued litigation would present risks in establishing liability and damages. If the Settlement is not approved, this action will proceed to intense litigation and possibly trial and appeal. Plaintiffs and Defendant vehemently disagree about the merits of Plaintiffs' claims. Although this Court denied Defendant's Motion to Dismiss based on Fed. Rule Civ. P. 12(b)(6), it did not rule on the merits. (Dkt. 85.) Regardless of each party's respective position, there is uncertainty about the ultimate outcome of this action.

Third, valuation of Plaintiffs' damages is difficult. Even without any discount for the significant risks of continued litigation, most if not all injuries suffered by settlement class members were relatively small, and establishing a nexus between those injuries and the Cybersecurity Incident may be problematic. Even if economic damages can be proven, the value of any monetary recovery to Plaintiffs erodes over time, and litigation expenses increase.

Fourth, Defendant would oppose class certification if the action were to proceed to that stage. Plaintiffs believe that class certification is appropriate in this action, but are cognizant of

the risk that the Court may not certify a class at all, may not certify a class covering all claims asserted in the First Amended Complaint, or may limit the size of any class. This Court or the Seventh Circuit might ultimately conclude that individualized questions predominate over any common questions. Finally, even if Plaintiffs are successful in gaining certification of their claims, the class certified may ultimately be smaller than the nationwide class to whom the Settlement will confer its benefits.

Finally, the tremendous amount of time and resources it will take to litigate the case to conclusion counsels in favor of accepting the Settlement now. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also In re AT&T Mobility Wireless*, *supra*, 270 F.R.D. at 347 ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (citations omitted). Under this Settlement, the Settlement Class will realize immediate benefits once the Settlement is approved and the Claims process is completed. As a factual matter, it is clear that the Incident occurred. But the legal questions, such as whether Defendants' conduct gives rise to liability and valuation of damages, remain disputed. And while Plaintiffs strongly believe that they could overcome these legal hurdles, they cannot responsibly ignore the risk that this Court or a reviewing court might not accept some or all of their arguments. As a result, the present value of the monetary component of the Settlement is significant compared to duration and uncertainty of litigation and valuation of damages—indicating the Settlement merits approval.

**B.** **The Complexity, Length, and Expense of Continued Litigation Favors Settlement**

The likely complexity, length, and expense of continued litigation are relevant factors in assessing a proposed settlement. *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015), *appeal dismissed* (May 5, 2015), *appeal dismissed* (June 8, 2015), *appeal dismissed* (June 26, 2015). The Settlement makes a final decision on several disputed factual and legal issues unnecessary. While the parties have conducted informal discovery for settlement purposes, in the event litigation proceeded, the parties would need to engage in further and significant discovery. Both parties would require experts. Costs of testifying experts regarding the economic harm caused to consumers, discovery, class certification, summary judgment motion practice, as well as other pre-trial and trial expenses, would be substantial. Continued litigation would likely involve, as indicated by the procedural history in this matter, motions to dismiss, motions for summary judgment, a motion for class certification, and one or more interlocutory appeals, all of which would delay final resolution. This factor also weighs in favor of preliminary approval.

### i. Settlement Class Representatives Support the Settlement

At the current stage of the litigation, prior to the dissemination of the class notice, no Settlement Class Members, including the named Plaintiffs, have indicated any objections to the proposed Settlement. Class Counsel will revisit this issue at the fairness hearing, to the extent necessary.

**C.** **The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations**

A proposed settlement is presumed to be fair and reasonable when it is the result of

arms' length negotiations. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, *supra*, 616 F.2d at 325; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (internal quotation omitted); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal quotation omitted). This presumption is applicable here.

As discussed above, the Settlement is the result of over twelve months of arm's length negotiations, including two days of mediation, and numerous other telephone conferences with the mediator and directly between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. The negotiations were mediated and facilitated by a retired judge with substantial judicial and mediation experience in class actions. Moreover, the settlement was reached only after Plaintiffs' Counsel analyzed information provided by Defendant in informal discovery, conducted interviews of putative class members, and performed other meticulous investigation. Given these facts, the Settlement is shown to be non-collusive.

**D.** **The Parties Engaged in Significant Motion Practice and Informal Discovery**

Class Counsel conducted a detailed investigation into the facts and law relating to the matters alleged. Plaintiffs requested, received, and reviewed information from Defendant in connection with mediation and settlement negotiations. Among other facts, Plaintiffs learned that malicious software capable of collecting payment card data operated in Neiman Marcus stores between July 16, 2013 and October 30, 2013. In addition, Plaintiffs learned that (a) this malware never operated in some Neiman Marcus stores, (b) as to those stores where this

malware did operate, it did not operate in each of the stores during each day between July 16, 2013 and October 30, 2013, and (c) often, this malware only operated during part of the time that each store was open for business, and the times when this malware operated varied from day to day within each individual store and among the stores where this malware operated. (Settlement Agreement ¶ 4.) These facts refined Plaintiffs' understanding of the Incident, and Plaintiffs no longer contend, as the amended complaint alleges, that the Cybersecurity Incident began in March 2013 and continued until January 10, 2014.

The parties have also briefed the legal issues at hand extensively, as described above. As a result of this informal discovery and motion practice, Plaintiffs fully understand the merits of this case—weighing in favor of preliminary approval.[4]

## IV. CLASS ACTION TREATMENT IS APPROPRIATE

### A. The Class to Be Certified for Settlement Purposes

Plaintiffs seek certification of the following settlement class for settlement purposes:

All residents of the United States who held a credit card or debit card account that was used in any stores at physical locations operating under the "Neiman Marcus," "Bergdorf Goodman," "Cusp," and "Last Call" names, but excluding all restaurants operating in any such stores, and excluding any website or online store, at any time from July 16, 2013 to January 10, 2014. Excluded from the Settlement Class are the judge presiding over this matter, any members of his judicial staff, the officers and directors of Neiman Marcus, and persons who timely and validly request exclusion from the Settlement Class.

(Settlement Agreement ¶¶ 21, 37.) Compared to the class alleged in the First Amended Class Action Complaint, this class includes a more refined time frame and more specific store locations.

---

[4] The lack of formal discovery does not preclude preliminary approval "[b]ecause counsel have conducted a significant amount of informal discovery and 'dedicated a significant amount of time and resources to advancing the underlying lawsuits.'" *In re AT & T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 350 (N.D. Ill. 2010) (internal citations omitted).

The Court should certify the settlement class because Rules 23(a) and 23(b)(3) are satisfied. "Settlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 622 (1997). The Supreme Court "has expressly approved the use of the settlement class device." *Id.* at 618 ("[T]he 'settlement only' class has become a stock device."). Settlement Class Representatives seek conditional certification of the class under Rule 23(b)(3), their appointment as Settlement Class Representatives solely for purposes of the settlement, and appointment of their counsel as Class Counsel. A class may be certified if it satisfies all of the requirements of Rule 23(a) and one of the three subparagraphs of Rule 23(b), *see McDaniel v. Univ. Fid. Corp.*, Case No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) (applying Rule 23 at preliminary approval stage), but without regard to whether the class would be manageable for trial. *See Amchem*, *supra*, 521 U.S. at 620.

This case meets the four prerequisites of Rule 23(a) necessary for class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the case satisfies the requirements of Rule 23(b)(3): common issues predominate and a class action is the superior method of resolving them.

### B.      This Action Satisfies the Requirements of Rule 23(a)

Fed. R. Civ. P. 23(a) sets forth the four prerequisites to class certifications: (i) the class is so numerous that joinder of all members is impracticable ("numerosity"); (ii) the claims raise common questions of law or fact ("commonality"); (iii) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (iv) the representative parties can fairly and adequately protect the interests of the class ("adequacy"). The Settlement Class proposed here satisfies each of these prerequisites.

22

### i.     The Class is Numerous

Rule 23(a)(1) provides that a class must be "so numerous that joinder of all members is impracticable."  "When class size reaches substantial proportions . . . , the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (*citing* 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992)).  The proposed Settlement Class Members are sufficiently numerous under Rule 23(a)(1) because joinder of such Settlement Class Members, who are geographically dispersed, would be impracticable.  Here, the nationwide class includes individuals who held approximately 2,187,773 different payment card accounts.  Courts in the Seventh Circuit have found that classes with significantly less members than the proposed settlement class satisfy the numerosity requirement.  *See, e.g.*, *In re AT&T Mobility Wireless, supra,* 270 F.R.D. at  341 (citing *Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969) (forty class members satisfy numerosity requirement)); *Chandler v. S.W. Jeep–Eagle, Inc.,* 162 F.R.D. 302, 307–08 (N.D.Ill.1995) (finding fifty class members satisfy numerosity requirement)).  As a result, the proposed Settlement Class is so numerous that joinder would be impracticable.

### ii.     The Action Presents Common Questions

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."[5] Commonality focuses on the relationship of common facts and legal issues among class members.  1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002).  The commonality requirement is easily met here.  "Courts have consistently found a 'common

---

[5]     *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Id. at* 2551.  This means that the class members' claims "must depend on a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

nucleus of operative fact[s]' when the defendants are alleged to have directed 'standardized conduct toward [the putative class] members.'"  *Chandler, supra,* 162 F.R.D. at 308 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)); *accord Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).  Here, commonality is satisfied because a determination of whether Defendant put reasonable information technology security in place prior to the Incident, and complied with its statutory duties following the Incident, will resolve issues "central to the validity" of each Class Member's claims "in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  For purposes of Rule 23(a)(2), even a single common question will do.  *Id.* at 2556.

### iii.    Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the Settlement Class Representatives' claims be typical of other proposed Settlement Class Members' claims.  A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory."  *Rosario, supra*, 963 F.2d at 1018 (quoting *De La Fuente v. Stokely-VanCamp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)).  While "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large."  *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted); *see also Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (finding typicality satisfied where plaintiffs, like the class, "believed that they were getting something more than they ultimately received").  Typicality is satisfied here because Plaintiffs and the proposed Settlement Class Members have the same claims arising from the same alleged course of conduct — that Defendant allegedly failed to implement reasonable information technology

security and then allegedly failed to respond to the Cybersecurity Incident that followed, adequately and in compliance with state law. Accordingly, the Settlement Class Representatives' claims are typical of the claims of the other proposed Settlement Class Members.

### iv. Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Adequacy is satisfied where the class representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class. Moreover, "it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (*quoting Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

Here, the interests of Settlement Class Representatives and the proposed Settlement Class Members are fully aligned. Settlement Class Representatives seek the same remedy as all proposed Settlement Class Members: relief to address claims arising from the Cybersecurity Incident, through which certain Payment Card Information of proposed Settlement Class Members may have been compromised. Further, proposed Class Counsel have extensive experience litigating and settling class actions, including class actions based on data breaches, false advertising, breach of contract, and unlawful business practices claims. They have demonstrated expertise in handling all aspects of complex litigation and class actions, and are

well qualified to represent the Class.  (Wolfson Decl. ¶ 2 & Ex. A; *see generally*, Declaration of John Yanchunis ("Yanchunis Decl."), filed concurrently herewith).  Plaintiffs and proposed Class Counsel remain fully committed to advancing the interests of, and obtaining relief for, the proposed Settlement Class Members, as evidenced by the terms of the Settlement Agreement. *See Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (addressing Rule 23(a)(4)'s adequacy requirement and the importance of Class Counsel's advocacy with respect to a proposed settlement).

Plaintiffs' Counsel and Defendant engaged in extended negotiations regarding the Claims validation process, and throughout the negotiations, Plaintiffs' counsel sought to simplify the process and lower the burden that claimants must meet.  That the parties ultimately agreed to the simple Claims validation process described above is further evidence that Plaintiffs and their counsel will fairly and adequately represent absent proposed Settlement Class Members.

### C.     This Action Satisfies the Requirements of 23(b)(3)

In addition to meeting the requirements of Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3).  Here, Fed. R. Civ. P. 23(b)(3) is satisfied because: (i) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (ii) the class action mechanism is superior to any other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

### i.     Common Questions of Law and Fact Predominate

Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans &*

*Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (emphasis in original). Plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'" *Id*. (quoting Fed. R. Civ. P. 23(b)(3)); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) *reversed on other grounds by Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members"). Class action status is appropriate where common questions represent a significant aspect of a case and they can be resolved in a single action. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986). Common questions, however, need not be dispositive of the entire action, because "predominate" does not mean "determinative." *Id.* at 528-29. The presence of "some factual variation among the class grievances will not defeat a class action." *Rosario, supra*, 963 F.2d at 1017; *see also Chandler, supra*, 162 F.R.D. at 308 (N.D. Ill. 1995) ("It is well-established . . . that the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant has engaged in standardized conduct toward the class.")

Here, the claims are based upon uniform conduct regarding a single Cybersecurity Incident that affected all proposed settlement class members in similar fashion, and for the same amount of time. Because these core issues involve uniform conduct common to all proposed Settlement Class Members, the Rule 23(b)(3) predominance requirement is satisfied.

### ii. A Class Action Is Superior

A class action is superior to other available methods for the fair and efficient adjudication of this controversy. To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors: "(A) [T]he interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the

controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

Each of these factors supports certifying the proposed settlement class. There is little interest or incentive for proposed Settlement Class Members to individually control the prosecution of separate actions. While the total amount of economic harm caused by this Cybersecurity Incident is significant, the Settlement Class Members' individual claims are too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985). Although the injuries resulting from Defendant's alleged failure to secure and safeguard the Payment Card Information of the Settlement Class are real, the cost of individually litigating such cases against Defendant would easily exceed the value of any relief that could be obtained by any one consumer. This fact strongly warrants a finding that a class action is a superior method of adjudication.[6] In sum, the proposed Settlement Class's claims satisfy Rule 23(b)(3)'s requirements, and should be certified.

### D.    Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) states that "a court that certifies a class must appoint class counsel." As discussed *supra*, and in the Declarations of Tina Wolfson and John Yanchunis, Plaintiffs' Counsel are well-qualified.

---

[6]    Possible alternatives to the class action device include: joinder, intervention, consolidation, a test case, and an administrative proceeding. H. Newberg & A. Conte, Newberg on Class Actions, § 4.27 (4th ed. Supp. 2010). None of those alternatives is superior to class action treatment in this matter because the Settlement Class consists of approximately two million consumers across the country.

E.     **The Proposed Class Notice Is Adequate**

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust,* 339 U.S. 306, 314 (1950). Notice must clearly and concisely state the following, in plain, easily understood language: (i) the nature of the action; (ii) the class definition; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(B) similarly directs that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

Here, the method and form of Notice meet all of the requirements of Rule 23. The proposed Notice Program will include direct Notice to all proposed Settlement Class Members. (Settlement Agreement ¶ 62.) Moreover, the Summary Notice and Long Form Notice are written in clear and concise language and contain the information required by Rule 23(c)(2)(B). (Settlement Agreement ¶¶ 57-64 and Exs. C, F.) The proposed Notice, *inter alia*, describes the nature, history, and status of the action; sets forth the definition of the proposed Settlement Class; states the proposed Settlement Class's Claims and relevant issues; informs proposed Settlement Class Members of the right to exclude themselves from the Settlement Class or object to the Settlement Agreement, as well as the deadline and procedure for doing so; sets out the Attorneys' Fees and Expenses that Class Counsel intend to seek in connection with final settlement approval; provides contact information for Class Counsel; warns of the binding effect of the settlement approval proceedings; and outlines the date, time, and place of the Fairness Hearing.

Notice will be disseminated both directly to proposed Settlement Class Members, as well

as through a combination of traditional print publication and internet banner advertisements tailored to reach the target audience. (Settlement Agreement, Ex. I.) The internet campaign will implement multiple targeting layers to ensure that notice is delivered to the persons most likely to be members of the proposed Settlement Class, including search targeting, demographic targeting, category contextual targeting, keyword contextual targeting, site retargeting, and purchase data targeting. (*Id*.) The Notice, therefore, is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane, supra,* 339 U.S. at 314 (1950). Accordingly, the forms of Notice and plan of dissemination should be approved.

## V.  CONCLUSION

For all of the foregoing reasons, Settlement Class Representatives, by and through their counsel, respectfully submit that the Court should (1) preliminarily approve the terms of the Settlement as fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth in the Settlement Agreement and exhibits thereto and approve the form and content of the Notice; (4) approve the procedures set forth in the Settlement Agreement for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay all proceedings in this matter unrelated to the Settlement pending final approval of the Settlement; (6) stay and/or enjoin, pending final approval of the Settlement, any actions brought by Settlement Class Members concerning a released claim; and (7) schedule a Fairness Hearing for a time and date convenient for the Court for the purpose of determining whether the Settlement is fair, reasonable, and adequate and, therefore, deserving of final approval.

Dated: March 17, 2016

Respectfully submitted,

/s/ *Tina Wolfson*
Tina Wolfson
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Ave.
West Hollywood, CA 90069
Tel: 310-474-9111; Fax: 310-474-8585

*Proposed Class Counsel and Attorneys for*
*the Plaintiffs*

/s/ *John A. Yanchunis*
John A. Yanchunis
*jyanchunis@forthepeople.com*
**MORGAN & MORGAN**
**COMPLEX LITIGATION DEPARTMENT**
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813-275-5272; Fax: 813-226-5402

*Proposed Class Counsel and Attorneys for*
*the Plaintiffs*

/s/ *Joseph J. Siprut*
Joseph J. Siprut
*jsiprut@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
Tel: 312-236-0000; Fax: 312-878-1342

*Attorneys for Plaintiffs*