## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is made and entered into on February 23, 2017, by and among (1) Settlement Class Representatives (as identified in Paragraph 40), for themselves and on behalf of the Settlement Class (as defined in Paragraph 37), and (2) The Neiman Marcus Group LLC ("Neiman Marcus"), pertaining to the putative class action lawsuit captioned *Hilary Remijas, Melissa Frank, Debbie Farnoush, and Joanne Kao v. The Neiman Marcus Group, LLC*, Case No. 1:14-cv-01735 (N.D. Ill.), subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives and Neiman Marcus enter into this agreement by and through their respective counsel. Settlement Class Representatives and Neiman Marcus are collectively referred to herein as the "Parties." This Settlement Agreement and Release and Exhibits "A" to "H," attached hereto, are collectively referred to herein as the "Agreement" or the "Settlement Agreement."

## I.   RECITALS

1.      In January 2014, Neiman Marcus announced that it had experienced a cybersecurity intrusion that caused the potential compromise of the Payment Card information of certain of its customers who used Payment Cards (as defined in Paragraph 28) to make purchases at certain stores owned by Neiman Marcus ("the Cybersecurity Incident" or "the Incident").

2.      After Neiman Marcus's announcement of the Incident, the Action was filed against Neiman Marcus in the United States District Court for the Northern District of Illinois.

3.      On June 2, 2014, plaintiffs in the Action filed a First Amended Class Action Complaint (Dkt. No. 27) ("Complaint"), alleging negligence, breach of implied contract, unjust enrichment, violation of state unfair business practices statutes, invasion of privacy, and violation of state data breach acts.

4.      The Complaint alleged that the Cybersecurity Incident began in March 2013 and continued until January 10, 2014. However, the time period when the Malware operated in NMG Stores was between July 16, 2013 to and October 30, 2013 ("the Malware Period"). Moreover: (a) the Malware never operated in some NMG Stores and never operated in any restaurants owned by Neiman Marcus; (b) as to the NMG Stores where the Malware did operate, it did not operate in each of the stores during each day of the Malware Period but instead operated on dates that varied from store to store; and (c) often, the Malware only operated during part of the time that each store was open for business, and the times when the Malware operated varied from day to day within each individual store and among the stores where the Malware operated.

5.      From July 16, 2013 to January 10, 2014, approximately 2,187,773 different Payment Card accounts were used at NMG Stores. Out of these approximately 2,187,773 different Payment Card accounts, only approximately 370,385 Payment Card accounts were used at an NMG Store during the Malware Period on a date and at a time that the Malware was operating in that store. The remaining approximately 1,817,388 Payment Card accounts were not exposed to the Malware at any time and could not have been compromised as a result of the

Cybersecurity Incident.

6.  Between December 2015 and February 2017, the Parties participated in two formal mediation sessions with mediator Judge Wayne R. Andersen (retired) of JAMS, Inc, engaged in numerous telephonic conversations and negotiations with Judge Andersen, and conducted extensive negotiations directly among counsel.

7.  The Parties now agree to settle the Action in its entirety, without any admission of liability by Neiman Marcus. The Parties intend this Agreement to bind Settlement Class Representatives, Neiman Marcus, and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement pursuant to Paragraph 63.

NOW THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Action be settled, compromised, and dismissed on the merits and with prejudice as to Neiman Marcus, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the terms and conditions set forth in this Agreement.

## II.  DEFINITIONS

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

8.  "Action" means the civil action entitled *Hilary Remijas, Melissa Frank, Debbie Farnoush, and Joanne Kao v. The Neiman Marcus Group, LLC*, Case No. 1:14-cv-01735 (N.D. Ill.).

9.  "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel to compensate Class Counsel for their fees, costs, and expenses in connection with the Action and the Settlement, as described in Paragraphs 73 to 75 of this Agreement.

10.  "Claims Deadline" means a date that is 180 days after the date of the Notice Deadline.

11.  "Claim Form" or "Claim(s)" means the form that Settlement Class Members must submit by the Claims Deadlines to be eligible for monetary relief under the terms of the Settlement, substantially in the form attached hereto as Exhibit "A," and which may be modified by agreement of the Parties to meet the requirements of the Settlement Administrator.

12.  "Class Counsel" means Tina Wolfson, Theodore W. Maya, and Robert Ahdoot of Ahdoot &Wolfson, PC and John A. Yanchunis of Morgan & Morgan Complex Litigation Department.

13.  "Court" means the United States District Court for the Northern District of Illinois.

14.  "Effective Date" means the first business day after which all of the following

events have occurred:

        a.     the Final Order and Final Judgment have been entered; and

        b.1.    if reconsideration and/or appellate review is not sought from the Final Order and Final Judgment, the expiration of the time for the filing or noticing of any motion for reconsideration, appeal, petition, and/or writ; or

        b.2.    if reconsideration and/or appellate review is sought from the Final Order and Final Judgment: (A) the date on which the Final Order and Final Judgment are affirmed and are no longer subject to judicial review, or (B) the date on which the motion for reconsideration, appeal, petition, or writ is dismissed or denied and the Final Order and Final Judgment are no longer subject to judicial review.

The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of Attorneys' Fees and Expenses in the amounts that Class Counsel requests ("Fee Request").

15.     "Eligible Claimants" means the Settlement Class Members who held at least one of the Payment Card accounts that were used at an NMG Store during the Malware Period, on a date and at a time that the Malware was operating in that store.

16.     "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) entering the Final Approval Order and Final Judgment and dismissing the Action with prejudice; (b) determining whether the Settlement should be approved as fair, reasonable, and adequate; (c) ruling upon an application for Service Awards by the Plaintiffs; (d) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses; and (e) entering any final order awarding Attorneys' Fees and Expenses and Service Awards. The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. § 1715(d).

17.     "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards (as defined in Paragraphs 72-73). In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

18.     "Final Order and Final Judgment" means the Court's order and judgment that the Court enters upon Final Approval, substantially in the form attached hereto as Exhibit "B."

19.     "Long Form Notice" means the long form notice of settlement, substantially in the form of the document attached to this Agreement as Exhibit "C."

20.     "Malware" means the malicious software that was capable of collecting Payment Card data and that a hacker or hackers successfully inserted into Neiman Marcus's system.

21.     "NMG Stores" means stores at physical locations operating under the "Neiman Marcus," "Bergdorf Goodman," "Cusp," and "Last Call" names, but excluding all restaurants operating in any such stores, and excluding any website or online store.

22.     "Notice" means the Long Form Notice and Summary Notice that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

23.     "Notice Date" means the first date upon which the Notice is disseminated.

24.     "Notice Deadline" means the date that is 30 days after the Preliminary Approval Order is issued by the Court.

25.     "Notice Program" means the plans and methods for the dissemination of the Notice provided for and agreed to in this Agreement in Section VIII.

26.     "Objection Deadline" means 45 days after the Notice Deadline.

27.     "Opt-Out Deadline" means 45 days after the Notice Deadline.

28.     "Payment Card" means a credit card or a debit card.

29.     "Personal Information" means Payment Card data including Payment Card account numbers, expiration dates, card verification values, and cardholder names.

30.     "Plaintiffs" means the plaintiffs named in the Complaint: Hilary Remijas, Melissa Frank, Debbie Farnoush, and Joanne Kao.

31.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice and Notice Program, substantially in the form of the document attached to this Agreement as Exhibit "D."

32.     "Publication Notice" means the online and print notices of settlement substantially in the form of the documents attached to this Agreement as Exhibit "E."

33.     "Releasing Parties" means the Settlement Class Representatives and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

34.     "Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are as set forth in this Agreement including the exhibits hereto.

35.     "Settlement Administrator" means the qualified third party administrator and agent agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including providing the Notice.  The Parties agree to recommend that the Court appoint Angeion Group as Settlement Administrator to: (a) design,

consult on, and implement the Notice Program and related requirements of this Agreement; and (b) implement the Notice Program, the Settlement Website, the submission and review of Claim Forms, and related requirements of this Agreement, subject to the Court's approval. Class Counsel and Neiman Marcus may, by agreement, substitute a different Settlement Administrator, subject to approval by the Court. In the absence of agreement, either Class Counsel or Neiman Marcus may move the Court to substitute a different Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

36. "Settlement Administration Charges" means all charges or costs, including those arising from implementation of the Notice Program, purchasing the advertisements described in the Notice Program, dissemination of the Notice, and administration of the claims and Settlement, invoiced or charged by the Settlement Administrator that the Parties agree were reasonably incurred by the Settlement Administrator in carrying out the duties described in the Settlement Agreement, and such agreement shall not be unreasonably withheld.

37. "Settlement Class" means all residents of the United States who held a credit card or debit card account that was used in any NMG Store at any time from July 16, 2013 to January 10, 2014. Excluded from the Settlement Class are the judge presiding over this matter, any members of his judicial staff, the officers and directors of Neiman Marcus, and persons who timely and validly request exclusion from the Settlement Class, pursuant to Paragraph 63.

38. "Settlement Class Members" means all persons who fall within the Settlement Class.

39. "Settlement Class Period" means July 16, 2013 to January 10, 2014.

40. "Settlement Class Representatives" means Hilary Remijas, Melissa Frank, Debbie Farnoush, and Joanne Kao.

41. "Settlement Fund" means the amount of up to One Million Six Hundred Thousand Dollars and No Cents ($1,600,000) that Neiman Marcus will pay, pursuant to Paragraphs 46-48 of this Agreement, as part of the consideration for the release of all claims as provided in this Agreement.

42. "Settlement Website" means the Internet website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement. The URL of the Settlement Website shall be www.NMSettlement.com.

43. "Summary Notice" means the summary form notice of settlement, substantially in the form of the document attached to this Agreement as Exhibit "F."

## III. SETTLEMENT CLASS

44. For settlement purposes only, the Parties agree that the Court should certify the

Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3).

45.     For settlement purposes only, Class Counsel shall seek and Neiman Marcus shall not oppose the appointment of Class Counsel as settlement class counsel and appointment of the Settlement Class Representatives. The Settlement Class Representatives will move for certification of the Settlement Class contemporaneously with their motion for preliminary approval of the Settlement. Neiman Marcus agrees not to contest certification of the Settlement Class pursuant to the terms of this Settlement Agreement.

## IV.     SETTLEMENT PAYMENTS

46.     In consideration for the Release contained in this Agreement, and without admitting liability for any of the alleged acts or omissions alleged in the Complaint, and in the interests of minimizing the costs inherent in any litigation, Neiman Marcus will pay up to One Million, Six Hundred Thousand Dollars and No Cents ($1,600,000) to create the two components of the Settlement Fund, as set forth in this Section IV.

47.     The first component of the Settlement Fund, the "Settlement Administration Fund," will be used to pay Settlement Administration Charges, which the Parties expect will amount to Four Hundred Thousand Dollars and No Cents ($400,000).

        a.     Following the entry of the Preliminary Approval Order as contemplated by Paragraph 52, Neiman Marcus shall pay Settlement Administration Charges (the "Periodic Payment(s)") within thirty (30) calendar days after the submission of an invoice by the Settlement Administrator. Any such payments by Neiman Marcus constitute the Settlement Administration Fund.

        b.     In the event that the Settlement Administration Charges amount to less than Four Hundred Thousand Dollars and No Cents ($400,000), Neiman Marcus will retain the difference between such Settlement Administration Charges and Four Hundred Thousand Dollars and No Cents ($400,000).

        c.     In the event the Settlement Administration Charges exceed Four Hundred Thousand Dollars and No Cents ($400,000), those charges above that amount (the "Excess Notice and Administration Costs") will be paid as follows:

                i.     First, any Excess Notice and Administration Costs will be paid from the Residual Settlement Payments Fund (as defined below), pursuant to Paragraph 51(c)(i).

                ii.     Second, Neiman Marcus will pay any Excess Notice and Administration Costs that the Residual Settlement Payments Fund has insufficient funds to pay.

        d.     Under no circumstances (including if this Agreement is terminated, the Settlement is not approved, or the Effective Date does not occur) will the Plaintiffs, Plaintiffs' attorneys, and / or Class Counsel be obligated to pay any Settlement Administration Charge.

48.     The second component of the Settlement Fund, the "Settlement Payments Fund," will be used to pay Eligible Claimants who submit valid and timely Claims, Service Awards,

Attorneys' Fees and Expenses, and any taxes due on the Settlement Payments Fund, and will amount to One Million, Two Hundred Thousand Dollars and No Cents ($1,200,000).

a.      To create the Settlement Payments Fund, within fifteen (15) calendar days of the Effective Date, Neiman Marcus shall pay and deposit One Million, Two Hundred Thousand Dollars and No Cents ($1,200,000) (the "Settlement Payments Fund Deposit") into an escrow bank account ("Escrow Account"), to be created and administered by the Settlement Administrator.

b.      The Settlement Administrator shall timely furnish to Neiman Marcus any required account information, wiring instructions, or necessary forms before a payment is made. The Settlement Payments Fund shall be a Qualified Settlement Fund (pursuant to Treas. Reg. § 1.468B-1) in interest bearing bank account deposits with commercial banks with excess capital exceeding One Hundred Million Dollars and No Cents ($100,000,000.00), with a rating of "A" or higher by S&P and insured by the FDIC. All funds in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed and / or further order of the Court. Interest earned on deposits in the Escrow Account, less any taxes owed thereon (if any), will be added to the Settlement Payments Fund for the benefit of the Class. The Settlement Administrator shall be responsible for all administrative, accounting and tax compliance activities in connection with the Escrow Account and the Settlement Payments Fund and the monies deposited into the Escrow Account, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § l.468B-l. Neiman Marcus shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Payments Fund pursuant to Treas. Reg. § 1.468B- l. All taxes on interest income generated by the funds in the Settlement Payments Fund, if any, shall be paid out of the Settlement Payments Fund.

49.      *Business Practice Changes*.  Neiman Marcus represents that from January 2014, the month when it learned preliminary information about the Cybersecurity Incident and when the initial lawsuit was filed, on January 13, 2014, against Neiman Marcus relating to the Cybersecurity Incident, to the date of this agreement, Neiman Marcus has taken numerous measures to further enhance the security of its customers' data, including the measures set out below. The Parties agree that Neiman Marcus has taken the following measures and that such measures remain in effect as of the date of this Settlement Agreement:

a.      *Chief Information Security Officer*.  Neiman Marcus created and filled the position of Chief Information Security Officer (CISO), an executive position with responsibility to coordinate and be responsible for Neiman Marcus's program(s) to protect the security of customers' Personal Information.

b.      *Information Security Organization*.  Neiman Marcus created a new organizational unit responsible for information security and has hired employees to fill the organization, including a Director of Security Operations and a Director of Security, Risk Management and Compliance.

c.      *Senior Leadership Reporting*.  Neiman Marcus increased the frequency

and depth of reporting to its executive team and members of its board of directors about its cybersecurity efforts and the cybersecurity threat landscape.

        d.    *Chip-Based Payment Card Infrastructure*.  Neiman Marcus equipped all of its Stores with devices that allow customers to pay for purchases using payment cards containing embedded computer chips.

        e.    *Employee Education*.  Neiman Marcus expanded its program to educate and train its workforce on methods to protect the privacy and security of its customers' information.

        f.    *Log Analysis Tool*.  Neiman Marcus invested in a new tool to automatically collect and analyze logs generated by Neiman Marcus systems for potential security threats.

        g.    *Information Sharing*.  Neiman Marcus joined several public-private partnerships that facilitate information sharing concerning cybersecurity and threat awareness.

This Paragraph 49 recites only some of the business practice changes that Neiman Marcus has implemented following the Cybersecurity Incident and the filing of the initial lawsuit relating to the Cybersecurity Incident.  The recitation of these business practices is intended to provide information to Class Members and the Court about some of Neiman Marcus's cybersecurity actions following the Cybersecurity Incident and the filing of the initial lawsuit relating to the Cybersecurity Incident and does not create any rights or obligation.  Neiman Marcus may, in its discretion, amend the business practices described in this Paragraph 49 or adopt other or alternate cybersecurity business practices in the future.

## V.    DISTRIBUTION PLAN

50.    Settlement Class Members shall be eligible for monetary relief from the Settlement Payments Fund provided that they are Eligible Claimants who submit valid and timely Claims pursuant to the terms and conditions of this Agreement.

51.    The funds in the Settlement Payments Fund shall be distributed as follows:

        a.    *Step 1*:  Within three (3) business days after Neiman Marcus's payment / deposit of the Settlement Payments Fund Deposit in to the Escrow Account pursuant to Paragraph 48 herein, the Settlement Administrator will use the funds in the Settlement Payments Fund to pay (i) any taxes due on the Settlement Payments Fund, (ii) any Service Awards approved by the Court, and (iii) the Attorneys' Fees and Expenses approved by the Court.  The balance of the Settlement Payments Fund after these payments are made is the "Net Settlement Payments Fund Amount."

        b.    *Step 2*:  Within sixty (60) calendar days after the Effective Date, the Settlement Administrator will pay, from the Settlement Payments Fund, an amount of up to One Hundred Dollars and No Cents ($100.00) to each Eligible Claimant who submitted a valid and timely Claim to the Settlement Administrator pursuant to the Settlement Administration Protocol attached hereto as Exhibit "G" ("Group 1 Eligible Claimants").  In the event that the aggregate

value of the valid and timely Claims, up to One Hundred Dollars and No Cents ($100.00) per Group 1 Eligible Claimant, exceeds the Net Settlement Payments Fund Amount, then the cash payment to be provided to each Group 1 Eligible Claimant shall be reduced on a *pro rata* basis, such that the aggregate value of the cash payments to the Group 1 Eligible Claimants does not exceed the Net Settlement Payments Fund Amount. The Settlement Administrator shall calculate any such *pro rata* reduction and distribute the Net Settlement Payments Fund Amount, on that *pro rata* basis, to the Group 1 Eligible Claimants.

        c.    *Step 3*: Any funds remaining in the Settlement Payments Fund after Steps 1 and 2 (the "Residual Settlement Payments Fund") shall be distributed as follows:

        i.    First, any Excess Notice and Administration Costs as defined in Paragraph 47(c) will be paid.

        ii.    Second, if any funds remain in the Residual Settlement Payments Fund after payments made under Paragraph 51(c)(i), the Settlement Administrator will estimate the cost of sending a check to each Eligible Claimant for whom Neiman Marcus has a mailing address, and who did not previously submit a valid and timely Claim pursuant to Paragraph 51(b) ("Group 2 Eligible Claimants"). After subtracting this estimated cost from the funds remaining in the Residual Settlement Payments Fund, any remaining amounts will be distributed to the Group 2 Eligible Claimants on a *pro rata* basis, provided that the amount sent to each Group 2 Eligible Claimant would exceed Five Dollars and No Cents ($5.00). If the amount sent to each Group 2 Eligible Claimant would not exceed Five Dollars and No Cents ($5.00), then the Settlement Administrator will not send checks to the Group 2 Eligible Claimants, and the funds will be distributed pursuant to Paragraph 51(c)(iii).

        iii.    Third, if any funds remain in the Settlement Payments Fund, including any funds that remain in the Settlement Payments Fund as a result of the expiration of checks not cashed by Class Members within one hundred eighty one (181) days after issuance, the remaining funds will be donated to an Internal Revenue Code Section 501(c)(3) charitable organization chosen jointly by the Parties.

## VI.  PRELIMINARY APPROVAL

52.    Upon execution of this Agreement by the Parties, Class Counsel shall promptly move the Court to enter an Order substantially in the form of the Preliminary Approval Order. The motion for preliminary approval shall request, among other things set forth in the Preliminary Approval Order, that the Court: (i) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (ii) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (iii) approve the Notice Program set forth herein and approve the form and content of the Notice; (iv) approve the procedures set forth in Section VIII for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (v) stay all proceedings in this matter unrelated to the Settlement pending Final Approval of the Settlement; (vi) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim; and (vii) schedule a Fairness Hearing for a time and date convenient for the Court.

53.     Within 10 days of the filing of the motion for preliminary approval, Neiman Marcus, at its own expense, shall serve or cause to be served through the Settlement Administrator a notice of the proposed Settlement on appropriate officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

## VII.     SETTLEMENT ADMINISTRATOR

54.     The Settlement Administrator shall perform the functions specified for the Settlement Administrator in this Agreement and in the Declaration of the Settlement Administrator attached hereto as Exhibit "H," including, but not limited to, overseeing administration of the Settlement Fund; providing E-mail Notice and Mail Notice to Settlement Class Members as described in Section VIII; effecting the Notice Plan; establishing and operating the Settlement Website and a toll-free number; administering the Claims processes; and distributing cash payments according to the processes and criteria set forth herein and in the Settlement Administration Protocol attached hereto as Exhibit "G."

55.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

a.     Obtaining from Neiman Marcus and securely maintaining the name, mailing address, and/or e-mail address information of Settlement Class Members for the purpose of sending E-Mail Notice and U.S. Mail Notice to Settlement Class Members;

b.     Obtaining from Neiman Marcus information necessary to carry out the claim validation procedure set forth in the Settlement Administration Protocol attached hereto as Exhibit "G";

c.     Effecting the Notice Program and performing the duties ascribed to the Settlement Administrator in this Agreement;

d.     Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

e.     Establishing and maintaining the Settlement Website;

f.     Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

g.     Responding to any mailed Settlement Class Member inquiries;

h.     Processing all written notifications of exclusion from the Settlement Class;

i.     Providing weekly reports and, no later than ten days after the Opt-Out Deadline, a final report to Class Counsel and Neiman Marcus, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information as requested by Class Counsel and

Neiman Marcus's counsel;

j.     In advance of the Fairness Hearing, preparing a declaration to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

k.     Reviewing, determining the validity of, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria set forth in the Settlement Administration Protocol attached hereto as Exhibit "G;"

l.     After the Effective Date, processing and transmitting distributions to Settlement Class Members, Class Representatives, Class Counsel, and the Settlement Administrator, as required by and in accordance with Section V;

m.     Providing weekly reports and a final report to Class Counsel and Neiman Marcus that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel and Neiman Marcus's counsel; and

n.     Performing any function related to Settlement administration at the agreed-upon instruction of both Class Counsel and Neiman Marcus, including, but not limited to, verifying that cash payments have been distributed in accordance with Section  V.

## VIII.   NOTICE, OPT-OUTS, AND OBJECTIONS

56.     Upon entry of the Preliminary Approval Order, the Settlement Administrator will implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order.

57.     Notice of the Settlement to the Settlement Class Members shall comply with the Federal Rules of Civil Procedure and any other applicable statute, law, or rule, including but not limited to, the Due Process Clause of the United States Constitution.

58.     *Class Member Information*:

a.     No later than three (3) business days after entry of the Preliminary Approval Order, Neiman Marcus shall provide the Settlement Administrator with the name, address, e-mail, and other contact information that Neiman Marcus has in its possession for each Settlement Class Member for which it has such information, and to the extent possible will indicate whether each Settlement Class Member is an Eligible Claimant;

b.     For each Eligible Claimant, whether Neiman Marcus is in possession of the name or contact information of such Eligible Claimant, Neiman Marcus will also provide the Settlement Administrator with (i) the last four (4) digits of all credit and / or debit cards used by all Eligible Claimants at NMG Stores during the Malware Period, and (ii) the corresponding

date(s) and location(s) of all purchases made by Eligible Claimants at NMG Stores during the Malware Period.

        c.     To the extent possible, Neiman Marcus shall match the information required by Paragraph 58(b) to the name or identity of the Eligible Claimant.

        d.     Neiman Marcus warrants and represents that it is in possession of the information required by Paragraph 58(b) for all Eligible Claimants.

        e.     Neiman Marcus warrants and represents that when it provides the information required by this Paragraph 58, it will provide information that is current as of no more than one month prior to the execution of this Settlement Agreement.  Neiman Marcus shall not be required to update any such information after providing it.  The information required by this Paragraph 58 shall mean and collectively be referred to as "Class Member Information."

     59.    *Settlement Website*:  Prior to the Notice Date, the Settlement Administrator shall establish the Settlement Website at www.NMSettlement.com that will inform Settlement Class Members of the terms of this Agreement, their rights, dates and deadlines and related information, including periodic updates, a list of important dates, hyperlinked access to this Agreement, the Long Form Notice and Summary Notice, any motion seeking Final Approval of this Agreement, any motion for an award of Attorneys' Fees and Expenses and Service Awards, the order preliminarily approving this Settlement, the Claim Form, the Complaint and such other documents as Class Counsel and Neiman Marcus agree to post or that the Court orders posted on the website.  The Settlement Website shall not include any advertising and shall remain operational until at least 30 days after the Claims Deadline. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically.  The Settlement Website shall also make the Claim Form available for download. Advertisements on the Internet, if any, shall direct Class Members to the website.

     60.    *The Long Form Notice:*  The Long Form Notice shall be in a form substantially similar to the document attached to this Agreement as Exhibit "C" and shall comport with the following:

        a.    <u>General Terms</u>:  The Long Form Notice shall contain a plain and concise description of the nature of the Action and the proposed Settlement, including information on the definition of the Settlement Class, the identity of Settlement Class Members, how the proposed Settlement would provide relief to Settlement Class Members, the date upon which the Fairness Hearing will occur, the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information, what claims are released under the proposed Settlement, and other relevant information.

        b.    <u>Opt-Out Rights</u>:  The Long Form Notice shall inform Settlement Class Members that they have the right to opt out of the Settlement.  The Long Form Notice shall provide the deadlines and procedures for exercising this right.

        c.    <u>Objection to Settlement</u>:  The Long Form Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and appear at the Fairness

Hearing. The Long Form Notice shall provide the deadlines and procedures for exercising these rights.

d. **Fees and Expenses**: The Long Form Notice shall inform Settlement Class Members of the maximum amounts to be sought by Class Counsel as Attorneys' Fees and Expenses and individual Service Awards to Plaintiffs, and shall explain that the fees and expenses awarded to Class Counsel, Service Awards to Plaintiffs, and certain Settlement Administration Charges, in addition to amounts being made available for relief to Settlement Class Members, will be deducted from the Settlement Payments Fund and be paid out of the Settlement Payments Fund.

e. **Claim Form**: The Long Form Notice shall describe the Claim Form and shall inform the Settlement Class Member: (i) the criteria to be used to determine whether the Settlement Class Member is an Eligible Claimant; and (ii) that in order to claim any payment pursuant to the Settlement, the Settlement Class Member must fully complete and timely submit the Claim Form prior to the Claim Deadline.

61. *Toll Free Telephone Number*: Prior to the Notice Date, the Settlement Administrator shall establish a toll-free telephone number, through which Settlement Class Members may obtain information about the Action and the Settlement and request a mailed copy of the Long Form Notice and/or the Claim Form, pursuant to the terms and conditions of this Agreement.

62. As set forth in the Declaration of the Settlement Administrator attached hereto as Exhibit "H," the Notice Program has four components: (1) E-Mail of the Summary Notice; (2) dissemination of the Summary Notice by U.S. Mail; (3) Publication Notice; and (4) Notice on the Settlement Website by posting the Long Form Notice, the Summary Notice, and relevant documents and information. Within ten (10) days after the entry of the Preliminary Approval Order and to be substantially completed no later than the Notice Deadline, and subject to the requirements of this Agreement and the Preliminary Approval Order, the Parties shall coordinate with the Settlement Administrator to provide Notice pursuant to the Notice Program as follows:

a. The Settlement Administrator shall send the Summary Notice via E-mail to all Settlement Class Members for whom Neiman Marcus can ascertain an e-mail address from its records with reasonable effort;

b. In the event an e-mail address for a Settlement Class Member cannot be ascertained by Neiman Marcus, or the Settlement Administrator learns (through an email "bounce-back" or otherwise) that the e-mail address in Neiman Marcus's records is invalid, the Settlement Administrator shall send the Summary Notice *via* U.S. Mail Notice to all such Settlement Class Members for whom Neiman Marcus can ascertain a mailing address from its records with reasonable effort. For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Summary Notice to the updated address as indicated. For any U.S. Mailed Summary Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Summary Notice to the extent

updated addresses are identified. The Settlement Administrator need only make one attempt to re-mail any Summary Notices that are returned as undeliverable;

       c.    Publishing the Publication Notice as set forth in the Declaration of the Settlement Administrator, attached hereto as Exhibit "H;"

       d.    Publishing, on or before the Notice Date, the Long Form Notice on the Settlement Website, as specified in the Preliminary Approval Order and as set forth in the Declaration of the Settlement Administrator, attached hereto as Exhibit "H;" and

       e.    Providing the Internet URL address of the Settlement Website (www. NMSettlement.com) in the Long Form Notice and the Summary Notice.

63. Settlement Class Members may elect to opt out of the Settlement, relinquishing their rights to benefits hereunder. The Notice shall include a procedure for Settlement Class Members to exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. Settlement Class Members who opt out of the Settlement will not release their claims pursuant to this Agreement. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include the individual's name and address; a statement that he or she wants to be excluded from the Action; and the individual's signature. The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than 10 days prior to the Fairness Hearing. Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement.

64. The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for Attorneys' Fees and Expenses. Any written objection to the Settlement must (i) be submitted to the Court by filing the written objection through the Court's Case Management/Electronic Case Files ("CM/ECF") system, or by mailing the written objection to the Class Action Clerk for United States District Court for the Northern District of Illinois, or by filing the written objection in person at any location of the United States District Court for the Northern District of Illinois; (ii) be filed or postmarked on or before the objection deadline provided in the Court's Preliminary Approval Order; and (iii) be mailed first class postage prepaid to Class Counsel and Neiman Marcus's counsel and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth:

       a.    the case name and number of the Action;

       b.    the objector's full name, address, email address, and telephone number;

       c.    an explanation of the basis upon which the objector claims to be a Settlement Class Member;

       d.    all grounds for the objection, accompanied by any legal support for the

14

objection;

        e.       the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Awards;

        f.       the identity of all counsel representing the objector who will appear at the Fairness Hearing;

        g.       any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

        h.       a list of any persons who will be called to testify at the Fairness Hearing in support of the objection;

        i.       a statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; and

        j.       the objector's signature on the written objection (an attorney's signature is not sufficient).

        65.      Within seven (7) days after the Notice Deadline, the Settlement Administrator shall provide Class Counsel and Neiman Marcus with one or more affidavits confirming that the Notice Program was completed in accordance with the terms of this Agreement, the Parties' instructions, and the Court's approval. Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representatives' motion for final approval of the Settlement.

## IX.    FAIRNESS HEARING, FINAL APPROVAL ORDER AND JUDGMENT

        66.      Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Fairness Hearing will occur. The Fairness Hearing shall be scheduled no earlier than 90 days after the CAFA notices are mailed to ensure compliance with 28 U.S.C § 1715. By no later than 14 days prior to the Objection Deadline, Plaintiffs shall file a motion for final approval of the Settlement and a motion for Attorneys' Fees and Expenses and for Service Awards. By no later than 7 days prior to the Fairness Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for Attorneys' Fees and Expenses and for Service Awards. At the Fairness Hearing, the Court will consider Settlement Class Representatives' motion for final approval of the Settlement, and Class Counsel's application for Attorneys' Fees and Expenses and for Service Awards. In the Court's discretion, the Court also may hear argument at the Fairness Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the application for Attorneys' Fees and Expenses and for Service Awards, provided the objectors filed timely objections that meet all of the requirements listed in Paragraph 64.

67.     At or following the Fairness Hearing, the Court will determine whether to enter the Final Order and Judgment granting final approval of the Settlement, and whether to approve Class Counsel's request for Attorneys' Fees and Expenses, and the Service Awards. The proposed Final Order and Judgment, in a form agreed upon by the Parties, shall, among other things:

     a.     Determine that the Settlement is fair, adequate, and reasonable;

     b.     Finally certify the Settlement Class for settlement purposes only;

     c.     Determine that the Notice provided satisfied Due Process requirements;

     d.     Dismiss the Action with prejudice;

     e.     Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section X, including during the pendency of any appeal from the Final Approval Order;

     f.     Release Neiman Marcus and the Released Parties from the Released Claims, as set forth in Section X; and

     g.     Reserve the Court's continuing and exclusive jurisdiction over Neiman Marcus and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## X.     RELEASES

68.     As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Neiman Marcus and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively the "Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, or remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Action, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the theft, exposure or disclosure of Settlement Class Members' Personal Information; (2) Neiman Marcus's maintenance and storage of Settlement Class Members' Personal Information; (3) Neiman Marcus's information security policies and practices; and (4) Neiman Marcus's notice of the Incident to Settlement Class Members (the "Released Claims").

69.     For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 *et seq.*, California Civil Code § 1750 *et seq.*, California Civil Code § 1798.80 *et seq.*, California Civil Code § 56.10 *et seq.*, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*, the Illinois Personal Information Protection Act, 815 ILCS 530/1 *et seq.*, New York General Business Law § 349, 15 U.S.C. § 1681 *et seq.*, and any similar statutes or data breach notification statutes in effect in the United States or in any states in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.  The Released Claims do not include any claims arising from or relating to any conduct by Neiman Marcus after the date the Agreement is executed.

70.     As of the Effective Date, the Released Parties will be deemed to have completely released and forever discharged the Releasing Parties and Class Counsel from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Action.

71.     Upon entry of the Final Judgment, the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Judgment.  It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## XI.     ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

72.     <u>Service Awards</u>.  Class Counsel will ask the Court to approve, and Neiman Marcus will not oppose, service awards not to exceed Two Thousand, Five Hundred Dollars and No Cents ($2,500) for each of the four Settlement Class Representatives, which are intended to compensate such individuals for their efforts in the litigation and commitment on behalf of the Settlement Class ("Service Award(s)").  Any Service Award approved will be paid from the

Settlement Payments Fund pursuant to Paragraph 51(a). Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Agreement. The application for the Service Awards will be filed at least 14 days prior to the Objection Deadline.

73.    Attorneys' Fees and Expenses. Class Counsel will make their application for Attorneys' Fees and Expenses at least 14 days before the Objection Deadline. Class Counsel agree not to seek an award of Attorneys' Fees and Expenses in excess of Five Hundred and Thirty Thousand Dollars and No Cents ($530,000), and in no event will Neiman Marcus be required to pay Class Counsel more than Five Hundred and Thirty Thousand Dollars and No Cents ($530,000). Neiman Marcus reserves the right to object to Class Counsel's request for Attorneys' Fees and Expenses; however, Neiman Marcus agrees not to appeal the award if the amount awarded by the Court in Attorneys' Fees and Expenses does not exceed Five Hundred and Thirty Thousand Dollars and No Cents ($530,000).

74.    The payment of the Attorneys' Fees and Expenses pursuant to Paragraph 73 shall be made through a wired deposit by Settlement Administrator from the Escrow Account into the attorney client trust account to be designated by Class Counsel. After the Attorneys' Fees and Expenses have been deposited into this account, Class Counsel shall be solely responsible for allocating such Attorneys' Fees and Expenses and distributing each participating firm's allocated share of such Attorneys' Fees and Expenses to that firm, and Neiman Marcus and the Settlement Administrator shall have no responsibility for distribution of Attorneys' Fees and Expenses among participating firms.

75.    In the event the Court declines to approve, in whole or in part, the payment of Attorneys' Fees and Expenses or Service Awards in the amounts that Class Counsel requests, the remaining provisions of this Agreement shall remain in full force and effect. The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount on their fee request, or Class Representatives the Service Award(s), and shall not alter the Effective Date. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of Attorneys' Fees and Expenses or Service Awards shall constitute grounds for cancellation of, termination of, or withdrawal from this Agreement.

## XII.    TERMINATION

76.    Neiman Marcus shall have the sole discretion to terminate the Settlement Agreement if Five Thousand (5,000) or more Settlement Class Members submit valid requests to opt out.

77.    If any of the following events occur, this Settlement may be terminated by either Settlement Class Representatives or Neiman Marcus by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 14 days (or such longer time as may be agreed between Class Counsel and Neiman Marcus), provided, however, that no decision by any court declining to approve, in whole or in part, the payment of Attorneys' Fees and Expenses in the amounts that Class Counsel requests, or to reduce the same, constitutes grounds for termination:

a.  Class Counsel and Neiman Marcus agree to termination before the Effective Date;

b.  The Court or any reviewing appellate court rejects, incorporates material terms or provisions into, deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the Notice Program (including by requiring that the Notice Program reach a higher percentage of the Settlement Class than is set forth in the Declaration of the Settlement Administrator, attached as Exhibit "H"), the proposed Final Order and Judgment, or the Settlement other than by declining to approve, in whole or in part, the payment of Attorneys' Fees and Expenses in the amounts that Class Counsel requests;

c.  The Court declines to preliminarily or finally approve the Settlement;

d.  An appellate court reverses the Final Order and Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand, provided that the Court's declining to approve, in whole or in part, the payment of Attorneys' Fees and Expenses in the amounts that Class Counsel requests does not constitute grounds for termination; or

e.  The Effective Date does not occur.

78.  In the event of a termination as provided in Paragraphs 76-77, this Agreement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIII.  NO ADMISSION OF LIABILITY

79.  Neiman Marcus disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Neiman Marcus has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

80.  Class Counsel and Settlement Class Representatives believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the likelihood that class members would not pursue individual litigation to protect their privacy interests and to seek redress for violations of their interests, particularly considering the costs of pursuing such litigation, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, including certification of a class and upholding certification on appeal, the delay in providing benefits to the class in the event that this litigation was not settled, and the likelihood of success on the merits of the Action. Class Counsel and Settlement Class Representatives have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

81. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

82. Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

## XIV. MISCELLANEOUS

83. <u>Recitals</u>. The Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

84. <u>Singular and Plurals</u>. As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

85. <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

86. <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

87. <u>Obligation To Meet And Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

88. <u>Extensions of Time</u>. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

89. <u>Integration</u>. This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

90. <u>No Conflict Intended</u>. Any inconsistency between the headings used in this

Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

91. <u>Governing Law</u>.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Illinois, without regard to the principles thereof regarding choice of law.

92. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

93. <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator.  As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

94. <u>Notices</u>.  All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

Robert Ahdoot
Tina Wolfson
Theordore W. Maya
**Ahdoot & Wolfson, P.C.**
1016 Palm Aveue
West Hollywood, California 90069
rahdoot@ahdootwolfson.com
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com

John A. Yanchunis
**Morgan & Morgan Complex Litigation Group**
201 North Franklin Street , 7th Floor
Tampa, Florida 33602
jyanchunis@forthepeople.com

All notices to Neiman Marcus provided for herein shall be sent by overnight mail and email to:

David H. Hoffman
Geeta Malhotra

Daniel C. Craig
**Sidley Austin LLP**
One South Dearborn
Chicago, IL 60603
david.hoffman@sidley.com
gmalhotra@sidley.com
dcraig@sidley.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

95.    <u>Authority</u>.  Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

96.    <u>No Construction Against Drafter</u>.  This Agreement shall be deemed to have been drafted by the Parties and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

97.    <u>Headings</u>.  The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this document.

98.    The Parties believe that this Agreement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length negotiations, taking into account all relevant factors, present and potential.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Agreement as of the date first set forth above.

*[signature pages follow]*

22

**SETTLEMENT CLASS REPRESENTATIVES**

_____
Hilary Remijas
Plaintiff


_____
Melissa Frank
Plaintiff


_____
Debbie Farnoush
Plaintiff


_____
Joanne Kao
Plaintiff


**NEIMAN MARCUS**


_____
Tracy M. Preston
Senior Vice President & General Counsel
The Neiman Marcus Group LLC

23

## SETTLEMENT CLASS REPRESENTATIVES

_____
Hilary Remijas
Plaintiff

_____
Melissa Frank
Plaintiff

_____
Debbie Farnoush
Plaintiff

_____
Joanne Kao
Plaintiff

## NEIMAN MARCUS

_____
Tracy M. Preston
Senior Vice President & General Counsel
The Neiman Marcus Group LLC

## SETTLEMENT CLASS REPRESENTATIVES

_____
Hilary Remijas
Plaintiff

_____
Melissa Frank
Plaintiff

_____ 3/6/17
Debbie Farnoush
Plaintiff

_____
Joanne Kao
Plaintiff

## NEIMAN MARCUS

_____
Tracy M. Preston
Senior Vice President & General Counsel
The Neiman Marcus Group LLC

23

## SETTLEMENT CLASS REPRESENTATIVES

_____

Hilary Remijas
Plaintiff


_____

Melissa Frank
Plaintiff


_____

Debbie Farnoush
Plaintiff

_____

Joanne Kao
Plaintiff

## NEIMAN MARCUS

_____

Tracy M. Preston
Senior Vice President & General Counsel
The Neiman Marcus Group LLC

23

## SETTLEMENT CLASS REPRESENTATIVES

_____

Hilary Remijas
Plaintiff

_____

Melissa Frank
Plaintiff

_____

Debbie Farnoush
Plaintiff

_____

Joanne Kao
Plaintiff

## NEIMAN MARCUS

_____

Tracy M. Preston
Senior Vice President & General Counsel
The Neiman Marcus Group LLC

**CLASS COUNSEL**

_____
Tina Wolfson
Ahdoot & Wolfson, PC




_____
John A. Yanchunis
Morgan & Morgan
Complex Litigation Department


**NEIMAN MARCUS COUNSEL**


_____
David H. Hoffman
Sidley Austin LLP

24

**CLASS COUNSEL**


_____

Tina Wolfson
Ahdoot & Wolfson, PC


_____

John A. Yanchunis
Morgan & Morgan
Complex Litigation Department


**NEIMAN MARCUS COUNSEL**


_____

David H. Hoffman
Sidley Austin LLP

24

**CLASS COUNSEL**

_____

Tina Wolfson
Ahdoot & Wolfson, PC

_____

John A. Yanchunis
Morgan & Morgan
Complex Litigation Department

**NEIMAN MARCUS COUNSEL**

_____

David H. Hoffman
Sidley Austin LLP

24