# EXHIBIT C

*Settlement Agreement*

*Remijas, et al. v. Neiman Marcus Group, LLC,* Case No. 1:14-cv-01735 (N.D. Ill.)
The Honorable Samuel Der-Yeghiayan

| | |
|---|---|
| HILARY REMIJAS, MELISSA FRANK, DEBBIE FARNOUSH, and JOANNE KAO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:14-cv-01735 |

**NOTICE OF CLASS ACTION SETTLEMENT**

# If you used a credit card or debit card at a Neiman Marcus Group Store between July 16, 2013 and January 10, 2014, you <u>may</u> be eligible to receive benefits from a class action settlement.

*A federal court authorized this Notice. It is not a solicitation from a lawyer.*

- A proposed Settlement has been reached in a class action lawsuit involving Neiman Marcus Group, LLC ("Neiman Marcus" or "NMG"). The Settlement resolves litigation over a Cybersecurity Incident involving malware that was successfully inserted into Neiman Marcus's system by hacker(s). Malware means the malicious software that was capable of collecting Payment Card data from Neiman Marcus's system.

- The Parties now agree to settle the Action in its entirety, without any admission of liability by NMG.

- The Settlement Class means all residents of the United States who held a credit card or debit card account that was used in any NMG Store at any time from July 16, 2013 to January 10, 2014.

- Eligible Claimants are the Settlement Class Members who held at least one credit card or debit card account that was used at an NMG Store between July 16, 2013 and October 30, 2013 ("the Malware Period"), on a date and at a time that the Malware was operating in that Store.

- Your rights are affected whether you act or do not act. <u>Read this Notice carefully</u>.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | If you submit a Claim Form, you will give up the right to sue NMG in a separate lawsuit about the claims this Settlement resolves. The deadline to submit a Claim Form is **XXXXXXXX.** |
| **ASK TO BE EXCLUDED (OPT-OUT)** | If you decide to exclude yourself, you will keep the right to sue NMG in your own separate lawsuit about the claims this Settlement resolves, but you give up the right to receive the benefits this Settlement provides. The deadline to request exclusion from the Settlement is **XXXXXXXX**. |
| **OBJECT TO THE SETTLEMENT** | If you do not exclude yourself from the Settlement, you may object to it by following the procedures below and submitting your specific objection in writing. The deadline to object to the Settlement is **XXXXXXXX**. |
| **DO NOTHING** | If you are a member of the Settlement Class, you are automatically part of the Settlement. If you do nothing, you may not receive the benefits that this Settlement provides and you will give up the right to sue NMG in a separate lawsuit about the claims this Settlement resolves. |

### 1. Why is there a Notice?

A Federal Court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, and who is eligible to receive them.

Judge Samuel Der-Yeghiayan of the United States District Court for the Northern District of Illinois is overseeing this class action. The case is known as *Hilary Remijas, Melissa Frank, Debbie Farnoush, and Joanne Kao v. The Neiman Marcus Group, LLC*, Case No. 1:14-CV-01735 (N.D. Ill.).

### 2. What is this lawsuit about?

In January 2014, Neiman Marcus announced that it has experienced a cybersecurity intrusion that caused the potential compromise of the Payment Card (debit card or credit card) information of certain of its customers who used Payment Cards to make purchases at certain stores owned by Neiman Marcus ("the Cybersecurity Incident").

The Action was filed after Neiman Marcus's announcement of the Cybersecurity Incident. In the Action, Plaintiffs allege negligence, breach of implied contract, unjust enrichment, violation of state unfair business practices statutes, invasion of privacy, and violation of state data breach acts.

The Malware operated in some (but not all) NMG Stores between July 16, 2013 and October 30, 2013 ("the Malware Period") and never operated in any restaurants owned by Neiman Marcus. Also the

Malware did not operate in affected stores during each day of the Malware Period, but instead operated on dates that varied from store to store, and often only operated during part of the time that each store was open for business.

From July 16, 2013 to January 10, 2014, approximately 2,187,773 different Payment Card accounts were used at NMG Stores. Out of these approximately 2,187,773 different Payment Card accounts, approximately 370,385 Payment Card accounts were used at an NMG Store during a time when the Malware was operating in that store. The remaining approximately 1,817,388 Payment Card accounts were not exposed to the Malware at any time and were not compromised as a result of the Cybersecurity Incident.

The Parties now agree to settle the Action in its entirety, without any admission of liability by Neiman Marcus. The Parties intend this Agreement to bind Settlement Class Representatives, Neiman Marcus, and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement

### 3. What is a class action?

In a class action, one or more people called Plaintiffs or Class Representatives (in this case, Hilary Remijas, Melissa Frank, Debbie Farnoush and Joanne Kao) sue on behalf of other people who have similar claims. The people included in the class action are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Class Members, except for those who timely exclude themselves from the Class.

### 4. Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or NMG. Instead, both sides agreed to this Settlement, in order to avoid the cost and burden of further litigation and so the Class Members can receive benefits. The Class Representatives and their attorneys believe the Settlement is a fair and reasonable resolution of the claims asserted in this lawsuit.

### 5. How do I know whether I am part of the Settlement?

You are part of the Settlement Class if you are a United States resident who held a credit card or debit card account that was used in any NMG Store at any time from July 16, 2013 to January 10, 2014. NMG Store means stores at physical locations that operate under the "Neiman Marcus", "Bergdorf Goodman", "Cusp", and "Last Call" names, but do not include restaurants operating in any of these stores or any of the stores' websites or online stores.

Excluded from the Settlement Class are the judge presiding over this matter, any members of his judicial staff, the officers and directors of Neiman Marcus, and persons who timely and validly request exclusion from the Settlement Class.

### 6. What if I am still not sure whether I am part of the Settlement?

If you are not sure whether you are included in the Settlement Class, you can call toll-free 1-XXX-XXX-XXXX, visit the Settlement Website: www.NMSettlement.com, or send an email to the Settlement Administrator at XXXXXXXXXXXXXX.

### 7. How do I know if I am eligible for monetary Settlement benefits?

All Settlement Class Members who are Eligible Claimants and submit valid and timely Claims are eligible to receive monetary benefits. Eligible Claimants are the Settlement Class Members who held at least one credit card or debit card account that was used at an NMG Store between July 16, 2013 and October 30, 2013 ("the Malware Period"), on a date and at a time that the Malware was operating in that Store. To read more about submitting a Claim Form, see section 9 below.

### 8. What are the Settlement benefits?

The Settlement creates a Settlement Fund in the total amount of up to $1,600,000.00. The Settlement Fund will be comprised of two components:
(1) **Settlement Administration Fund.** Up to $400,000 to pay the Settlement Administration Charges (described more fully in the Settlement Agreement, which can be viewed at www.NMSettlement.com); and
(2) **Settlement Payments Fund.** $1,200,000 to pay Eligible Claimants who submit valid and timely Claims, taxes due on the Settlement Fund (if any), Attorneys' Fees and Expenses awarded by the Court, and Service Awards for Class Representatives awarded by the Court.

Each Eligible Claimant who submits a valid and timely Claim will receive a payment of up to $100. If after subtracting any taxes due on the Settlement Fund, any Service Awards approved by the Court, and Attorneys' Fees and Expenses approved by the Court, the remaining amount is insufficient to pay all Eligible Claimants $100, the $100 payment will be reduced on a *pro rata* basis based on the number of Eligible Claimants who have submitted a Claim.

Any funds remaining in the Settlement Fund after the above payments shall be distributed as follows:

i. Pay any Excess Notice and Administration Costs as defined in the Settlement Agreement;

ii. Issue payments on a *pro rata* basis to Eligible Claimants for whom NMG has a mailing address and who did not previously submit a valid and timely Claim Form, provided the amount of these payments would exceed $5.00 after deducting the estimated costs of sending the checks. If the payments to Eligible Claimants would not exceed $5.00, the funds will not be distributed;

iii. Any remaining funds, including any funds that remain as a result of uncashed checks, shall be donated to an Internal Revenue Code Section 501(c)(3) charitable organization chosen jointly by the Parties.

Business Practice Changes
In addition to the Settlement benefits described above, Neiman Marcus has taken numerous measures to further enhance the security of its customers' data, including the measures set out below. These measures remain in effect as of the date of the Settlement Agreement:

i. Chief Information Security Officer. NMG created and filled the position of Chief Information Security Officer (CISO), an executive position with responsibility to coordinate and be responsible for NMG's program(s) to protect the security of customers' Personal Information.

ii. <u>Information Security Organization</u>. NMG created a new organizational unit responsible for information security and has hired employees to fill the organization, including a Director of Security Operations and a Director of Security, Risk Management and Compliance.

iii. <u>Senior Leadership Reporting</u>. NMG increased the frequency and depth of reporting to its executive team and members of its board of directors about its cybersecurity efforts and the cybersecurity threat landscape.

iv. <u>Chip-Based Payment Card Infrastructure</u>. NMG equipped all of its Stores with devices that allow customers to pay for purchases using payment cards containing embedded computer chips.

v. <u>Employee Education</u>. NMG expanded its program to educate and train its workforce on methods to protect the privacy and security of its customers' information.

vi. <u>Log Analysis Tool</u>. NMG invested in a new tool to automatically collect and analyze logs generated by Neiman Marcus systems for potential security threats.

vii. <u>Information Sharing</u>. NMG joined several public-private partnerships that facilitate information sharing concerning cybersecurity and threat awareness.

The business practices described above represent some of the business practice changes that Neiman Marcus has implemented following the Cybersecurity Incident and the filing of the initial lawsuit relating to the Cybersecurity Incident. The recitation of these business practices is intended to provide information to Class Members and the Court about some of Neiman Marcus's cybersecurity actions following the Cybersecurity Incident and the filing of the initial lawsuit relating to the Cybersecurity Incident and does not create any rights or obligation. Neiman Marcus may, in its discretion, amend the business practices described above or adopt other or alternate cybersecurity business practices in the future.

### 9. How do I get benefits and what is the Claim Period?

In order to receive monetary benefits under this Settlement, Eligible Claimants should submit a Claim Form to the Settlement Administrator. The deadline for submitting Claim Forms is XXXXXXXX if submitted online via the Settlement Website www.NMSettlement.com, or must be postmarked by XXXXXXXX if submitted by U.S mail to the Settlement Administrator at:

*NM Settlement Administrator*
1801 Market Street, Suite 660
Philadelphia, PA 19103

Claim Forms can also be downloaded from www.NMSettlement.com, by calling toll-free 1-XXX-XXX-XXXX, emailing the Settlement Administrator at XXXXXX, or by mailing a request to the Settlement Administrator at the address set forth above.

To receive a payment, you must submit a timely Claim Form with information sufficient to establish that your credit or debit card was used at a Neiman Marcus, Bergdorf Goodman, Cusp, or Last Call store while malicious software capable of capturing payment card information was active in that store, and comply with the instructions set forth in the Claim Form.

## 10. What rights am I giving up to receive benefits and stay in the Settlement Class?

Unless you timely exclude yourself, you will remain in the Settlement Class. If the Settlement is approved and becomes final, you will not be able to sue NMG regarding the legal claims that were litigated in this case, but you will be able to submit a Claim Form to receive benefits from this Settlement. The specific rights you are giving up are called Released Claims.

## 11. What are the Released Claims?

Upon the Effective Date of the Settlement, the Settlement Class Representatives and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement, and each of their respective heirs, assigns, beneficiaries and successors ("Releasing Parties") shall automatically be deemed to have fully and irrevocably released and forever discharged Neiman Marcus and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, offices, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively the "Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Action, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the theft, exposure or disclosure of Settlement Class Members' Personal Information; (2) Neiman Marcus's maintenance and storage of Settlement Class Members' Personal Information; (3) Neiman Marcus's information security policies and practices; and (4) Neiman Marcus's notice of the Incident to Settlement Class Members (the "Released Claims").

For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 *et seq*., California Civil Code § 1750 *et seq*., California Civil Code § 1798.80 *et seq*., California Civil Code § 56.10 *et seq*., Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq*., the Illinois Personal Information Protection Act, 815 ILCS 530/1 *et seq*., New York General Business Law § 349, 15 U.S.C. § 1681 *et seq*., and any similar statutes or data breach notification statutes in effect in the United States or in any states in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure/of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief. The Released Claims do not include any claims arising from or relating to any conduct by Neiman Marcus after the date the Agreement is executed.

The Settlement Agreement, available at www.NMSettlement.com contains additional information about Released Claims.

### 12. How do I exclude myself from the Settlement?

Settlement Class Members have the right to request exclusion from (*i.e.*, opt out of) the Settlement Class by sending a written request for exclusion to the Settlement Administrator postmarked by **XXXXXXXX**. Requests for Exclusion must be mailed to:

*NMS Settlement Administrator*
ATTN: Exclusion Requests
1801 Market Street, Suite 660
Philadelphia, PA 19103

Requests for exclusion must: (a) Include the individual's name and address; (b) Contain a statement that he/she wants to be excluded from this Action; and (c) Must be signed personally by the Settlement Class Member who is requesting exclusion.

No request for exclusion will be valid unless it complies with these requirements. If a timely and valid request for exclusion is made by a Settlement Class Member, then that person will no longer be a member of the Settlement Class and shall not be affected by or bound by the Settlement, and shall receive no benefits from the Settlement.

### 13. How do I object to the Settlement?

Settlement Class Members have the right to object to the Settlement and/or to Class Counsel's application for Attorneys' Fees, Costs and Expenses.

Any written objection to the Settlement must: be submitted to the Court by filing the written objection through the Court's Case Management/Electronic Case Files ("CM/ECF") system, or by mailing the written objection to the Class Action Clerk for United States District Court for the Northern District of Illinois, or by filing the written objection in person at any location of the United States District Court for the Northern District of Illinois; (ii) be filed or postmarked on or before the **XXXXXXXX** objection deadline; and (iii) be mailed first class postage prepaid to Class Counsel and Neiman Marcus's counsel and postmarked by no later than **XXXXXXXX**.

For an objection to be considered by the Court, the objection must also set forth:
(a) The case name and number of the Action;
(b) The objector's full name, address, email address and telephone number;
(c) An explanation of the basis upon which the objector claims to be a Settlement Class Member;
(d) All grounds for the objection, accompanied by any legal support for the objection;
(e) The identity of all counsel who represent the objector; including any former or current counsel who may be entitled to compensation for any reason related to the objection of the Settlement, the fee application, or the application for Service Awards;
(f) The identity of all counsel representing the objector who will appear at the Fairness Hearing;
(g) Any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector and objector's counsel and any other person or entity;

(h) A list of any persons who will be called to testify at the Fairness Hearing in support of the objection;
(i) A statement confirming whether the objector intents to personally appear and/or testify at the Fairness Hearing; and
(j) The objector's signature on the written objection (an attorney's signature is not sufficient).

| COURT | CLASS COUNSEL | NEIMAN MARCUS' COUNSEL |
|---|---|---|
| Class Action Clerk<br>Everett McKinley Dirksen<br>United States Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604 | Tina Wolfson<br>**Ahdoot & Wolfson, P.C.**<br>c/o NMS Settlement Administrator<br>1801 Market Street, Suite 660<br>Philedelphia, PA 19103<br><br>John A. Yanchunis<br>**Morgan & Morgan**<br>Complex Litigation Department<br>c/o NMS Settlement Administrator<br>1801 Market Street, Suite 660<br>Philedelphia, PA 19103 | David H. Hoffman<br>**Sidley Austin LLP**<br>One South Dearborn<br>Chicago, IL 60603 |

## 14. Who are the attorneys appointed to represent the Settlement Class?

The Court has appointed the following lawyers to represent you and the other Settlement Class Members:

| | |
|---|---|
| Tina Wolfson<br>Theodore W. Maya<br>Robert Ahdoot<br>**Ahdoot & Wolfson, P.C.**<br>c/o NMS Settlement Administrator<br>1801 Market Street, Suite 660<br>Philedelphia, PA 19103 | John A. Yanchunis<br>**Morgan & Morgan**<br>Complex Litigation Department<br>c/o NMS Settlement Administrator<br>1801 Market Street, Suite 660<br>Philedelphia, PA 19103 |

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 15. How will the lawyers be paid?

Class Counsel (set forth in the preceding section) will seek an award of no more than $530,000 in attorneys' fees, costs and expenses.

Class Counsel will also request the Court to award $2,500 service awards to each of the four Settlement Class Representatives as compensation for their efforts in the litigation and commitment on behalf of the Settlement Class. If approved, these amounts will be deducted from the Settlement Fund as described in Section 8 above.

| 16. When will the Court decide final approval of the Settlement? |
|---|

The Court will hold a hearing at XXXX a.m./p.m. on **XXXX, 2017**, at the United States District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Chicago, IL 60604, to decide whether to grant final approval of the Settlement. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will also consider Class Counsel's application for an award of attorneys' fees and expenses, and the proposed service awards. Settlement Class Members are welcome to attend the Final Approval Hearing but it is not necessary for them to attend to receive their benefits under the Settlement. The Settlement will not become final until the Court grants final approval of the Settlement and any appeals have been resolved.

| 17. How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement, which is available at www.NMSettlement.com. You may can also call toll-free 1-XXX-XXX-XXXX, or write to the Settlement Administrator by mail or email:

*NMS Settlement Administrator*
1801 Market Street, Suite 660
Philadelphia, PA 19103

Email: XXXXXXXX