# EXHIBIT H

**Settlement Agreement**

*Remijas, et al. v. Neiman Marcus Group, LLC,* Case No. 1:14-cv-01735 (N.D. Ill.)

The Honorable Samuel Der-Yeghiayan

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HILARY REMIJAS, MELISSA FRANK, DEBBIE FARNOUSH, and JOANNE KAO, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-01735 |
| Plaintiffs, | **DECLARATION OF STEVEN WEISBROT, ESQ., VICE-PRESIDENT OF ANGEION GROUP, LLC, THE SETTLEMENT ADMINISTRATOR** |
| v. | |
| THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company, | |
| Defendant. | |

## <u>DECLARATION OF STEVEN WEISBROT, ESQ.</u>

I, STEVEN WEISBROT, ESQ., of full age, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury as follows:

1.     I am Executive Vice President of Notice & Strategy at the class action notice and Settlement Administration firm, Angeion Group, LLC ("Angeion").  I am fully familiar with the facts contained herein based upon my personal knowledge.

2.     I have been responsible in whole or in part for the design and implementation of more than one hundred class action administration plans and have taught numerous Accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Class Action Notice Programs, as well as Class Action Claims Administration, generally.  Additionally, I am the author of frequent articles on Class Action Notice, Digital Media, Class Action Claims Administration and Notice Design in publications such as *Bloomberg, BNA Class Action Litigation Report*, Law360, the ABA Class Action and Derivative Section Newsletter and private law firm publications.

3.     Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, a nationally recognized class action notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice and I am currently an attorney in good standing in the State of New Jersey and the Commonwealth of Pennsylvania.

4.     My notice work comprises a wide range of class actions that includes product defect, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases. Likewise, I have been instrumental in infusing digital and social media, as well as big data and advanced targeting into class action notice programs where, as here, we only have direct notice information for a portion of the class. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation MDL* No. 2328:

> *To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web-based forms of communication in the plan.... The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.*
>
> *The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.*

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a)     For example, on May 12, 2016 in his Order granting preliminary approval of the settlement in *In Re Whirlpool Corp. Front Loading Washer Products Liability Litigation* (**MDL No. 2001),** The Honorable Christopher A. Boyko ruled:

> *The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.*

(b)	In *Sateriale, et al. v R.J. Reynolds Tobacco Co.,* **Case No. CV 09 08394 CAS**

(May 3, 2016) the Honorable Christina A. Snyder ruled:

> *The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.*

(c)	In *Ferrera et al. v. Snyder's-Lance, Inc.*, **Case No. 0:13-cv-62496** (February 12, 2016), the Honorable Joan A. Lenard ruled:

> *The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.*

5.	By way of background, Angeion Group is a class action notice and claims administration company formed by an experienced team of executives with more than 60 combined years of experience implementing claims administration and notice solutions for class action settlements and judgments. With executives that have had extensive tenures at five other nationally recognized claims administration companies, collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members.

6.	This declaration will describe the notice program that we suggest using in this matter, including the considerations that informed the development of the plan and why it will provide Due Process of Law to the Class.

## SUMMARY OF NOTICE PROGRAM

7.    The notice program is the best notice that is practicable under the circumstances, and provides individual notice to all Class Members who can be identified through reasonable effort. Specifically, the notice program incorporates a combination of direct notice (via both US postal Mail and e-mail) state of the art internet banner ad notice and traditional publication notice. The notice program also includes an informational website and toll-free telephone line.

8.    The media portion of the notice program is designed to deliver an approximate 70.15% reach with an average frequency of 2.93 times each. While the direct notice campaign, informational website and toll-free telephone line will also apprise potential Class Members of their rights and options in the Settlement, these items are not included in the 70.15% reach calculation. In actuality, when factoring in the results of the direct notice effort, the overall reach percentage will ultimately be higher than the stated 70.15%.

## CLASS DEFINITION

9.    The "Settlement Class" means all residents of the United States who held a credit card or debit card account that was used in any Neiman Marcus Group Store at any time from July 16, 2013 to January 10, 2014. Excluded from the Settlement Class are the judge presiding over this matter, any members of his judicial staff, the officers and directors of Neiman Marcus, and persons who timely and validly request exclusion from the Settlement Class.

## DIRECT NOTICE

10.    The direct notice effort in this matter will consist of (1) emailing notice of the Settlement to each Settlement Class Member for whom an email address is available in the Defendant's records and (2) sending postcard notice to each Settlement Class Member for whom a mailing address, but no valid email address, is available in the Defendant's records.

11.    Angeion has been informed that Defendant's records contain email addresses for

approximately 640,000 Settlement Class Members. Angeion will email notice of the Settlement to each such Settlement Class Member.

12. Angeion will send postcard notice by U.S. first-class mail, postage prepaid, to each Settlement Class Member whose emailed notice bounces back as undeliverable if Defendant's records contain a mailing address for that Settlement Class Member.

13. Angeion has also been informed that Defendant's records contain mailing addresses for approximately 167,000 individuals for whom Defendant's records do not contain email addresses. Angeion will send these Class Members postcard notice of the Settlement via U.S. first-class mail, postage prepaid.

14. For each sent postcard notice that is returned as undeliverable, Angeion will use the National Change of Address database to attempt to obtain a valid mailing address for the intended Settlement Class Member recipient, and will send postcard notice by U.S. first-class mail, postage prepaid, to each such individual for whom it can obtain a valid mailing address from the National Change of Address database.

## MEDIA NOTICE TARGET AUDIENCE

15. In order to develop the media plan for the notice program, the Class was profiled using GfK MRI 2015 Doublebase data[1]. Gfk MRI data is used by advertising agencies and other communications professionals to understand the socio-economic characteristics, interests and practices of a target group and aids in the proper selection of media to reach that target. It is also instrumental in allowing the Court to review the estimated net reach and average frequency of a

---

[1]     GfK MRI is a leading supplier of publication readership and product usage data for the communications industry. GfK MRI offers complete demographic, lifestyle, product usage and exposure to all forms of advertising media. As the leading U.S. source of multimedia audience research, GfK MRI provides information to magazines, television and radio networks and stations, internet sites, other media, leading national advertisers, and over 450 advertising agencies – including 90 of the atop 100 in the U.S. MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

particular program and is precisely the type of "accepted methodology" that the Checklist cautions should be used in class action notice programs. Here, Neiman Marcus is a measured entity in MRI.

16.     Utilizing syndicated data like MRI aids in understanding the socio-economic characteristics, interests and practices of a target group which guides the proper selection of media to reach that target. Here, the target audience has the following characteristics:

- Women ages 35 - 64 with a median age of 47
- Just over half are married (56%)
- 42.5% have a child/children under the age of 17 living in the household
- Higher educated with a majority (58.5%) having a college degree
- 64.7% live in households with total income above $75K
- 63.5% are employed, with most working full time (48%)

17.     To identify the best vehicles to deliver messaging to the target audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population.  Here it shows our target audience spend a heavy amount of time (19 hours) per week on the internet compared to the general population. Additionally, the frequency with which the target audience reads magazines is well above average compared to the general population.

18.     In light of this data, Angeion recommends using a combination of traditional print publication and internet banner advertisements to reach the target audience, which will effectively generate the reach required to notify potential Class Members of their rights and options in the Settlement.

## INTERNET BANNER NOTICE

19.     The notice program utilizes a programmatic approach to purchasing internet media advertisements to target potential Class Members with tailored communications.  Purchasing display and mobile inventory programmatically provides the highest reach for internet publication, allows for multiple targeting layers, and causes banner advertisements to be systematically shown

to persons most likely to be Class Members.

20.     The internet campaign will implement multiple targeting layers to ensure that notice is delivered to the persons most likely to be members of the Class, inclusive of search targeting, demographic targeting, category contextual targeting, keyword contextual targeting, site retargeting, and purchase data targeting.  This enables Angeion to utilize, for example, search terms that an individual has entered into web browsers (like Google), to deliver banner ads to individuals most likely to be Class Members. Search terms, relevant to Neiman Marcus products, Neiman Marcus branding and women's clothing, will also be incorporated into the campaign parameters to drive relevant traffic.  The digital media plan will further target users who are currently browsing or have recently browsed content in categories such as Neiman Marcus items, retail and clothing, which will also help qualify impressions to ensure messaging is served to the most relevant audience.  A focus will be placed on purchase data targeting Neiman Marcus specifically.  The purpose of such targeting is to ensure that likely Class Members are exposed to the notice documents while simultaneously minimizing the chance that notice is misdirected to individuals who are unlikely to be members of the Class.

21.     The internet banner notice portion of the notice program will be implemented using a 4-week desktop and mobile campaign, utilizing standard Interactive Advertising Bureau ("IAB") sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50).  A 3x frequency cap will be imposed to maximize reach.  The banner notice is designed to result in serving approximately 4,086,000 impressions.

## PRINT PUBLICATION

22.     Angeion will cause a true and correct copy of the publication notice to be published in a one-half page black and white ad in *People* magazine.

## RESPONSE MECHANISMS

23.     The notice program will implement the creation of a case website, where Class Members can view general information about this class action, review relevant Court documents and view important dates and deadlines pertinent to the Settlement. The website will also have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address.

24.     A toll-free hotline devoted to this case will be implemented to further apprise Class Members of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide important information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

25.     The media notice program is designed to deliver an 70.15% reach with an average frequency of 2.93 times each. The 70.15% reach does <u>not</u> include the direct notice effort, which is a standalone effort.  Therefore, the overall reach of the integrated notice program, which includes the email and mailing efforts described above, will materially surpass the 70.15% reach percentage that will be achieved via the media notice program alone.  Similarly, the informational website and toll-free hotline is not calculable in reach percentage, but will nonetheless aid in informing Class Members of their rights and options under the Settlement.

## PLAIN LANGUAGE NOTICE DESIGN

26.     The Notice forms themselves are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members.  The design of the Notices follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. Many courts, and as previously cited, the FJC itself, have

approved notices that we have written and designed in a similar fashion. The Notice forms contain plain language summaries of all the key information about Settlement Class Members' rights and options. Consistent with normal practice, all notice documents will undergo a final edit prior to actual emailing and publication for grammatical errors and accuracy.

27. Moreover, Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language." Angeion applies the plain language requirement in drafting notices in federal and state class actions. Angeion maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Settlement Class Members.

28. I have been involved in the drafting of the Notice form for this case. All forms of Notice are noticeable, clear, concise, and in plain, easily understood language. The Notice forms effectively communicate information about the Settlement.

29. In preparing the Notice forms in this Settlement, I have employed communications methods that are well-established in my field. I have embraced the high standards embodied in the Advisory Committee's notes accompanying the 2003 changes to Rule 23(c)(2): "The direction that the class-certification notice be couched in plain easily understood language is added as reminder of the need to work unremittingly at the difficult task of communicating with class members."

30. All Notices are designed to increase noticeability and comprehension.

31. Because email recipients are accustomed to receiving junk email that they may be inclined to discard unread, the Notice Plan calls for steps to bring the emailed Notice to the attention of Settlement Class Members. Once people "notice" the Notice, it is critical that they can understand them. As such, the Notice forms here, as produced, are clearly worded with an

emphasis on simple, plain language to encourage readership and comprehension.

32.    The Summary Notices, both email and postcard, feature a prominent headline in bold text.  This alerts recipients and readers that the Notice is an important document and that the content may affect them, thereby supplying reasons to read the Notice. Directly beneath the headline, in italicized text, both Summary Notices state: A federal court authorized this Notice. It is not a solicitation from a lawyer. This lends credibility to the document and alerts recipients that the Notice is authorized by a court.

33.    Class Notice will also include a Long Form Notice.  The Long Form Notice provides substantial information to Settlement Class Members.  The Long Form Notice begins with a summary page providing a concise overview of the important information and a table highlighting key options available to Settlement Class Members. A table of contents, categorized into logical sections, helps to organize the information, while a question and answer format makes it easy to find answers to common questions by breaking the information into simple headings. The proposed Long Form Notice is attached as an exhibit to the Settlement Agreement.

34.    The proposed Notice Plan in this Settlement satisfies the Rule 23 requirement that the best notice practicable under all circumstances be given to the class.

35.    Based on the data provided to Angeion, Angeion estimates that the total cost of notice and administration of this Settlement will be $400,000.

## CONCLUSION

36.    The notice program outlined above includes direct notice to Settlement Class Members and an integrated notice effort incorporating state of the art internet banner notice utilizing multiple targeting layers and traditional print publication.  The notice program is designed to reach at least 70.15% of the Class on average 2.93 times each.

37.    The Notice Plan will effectively fall within the guideline recommended by the

Federal Judicial Center (see e.g. Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf (last visited on January 27, 2017)). It will deliver "noticeable" Notices to capture Settlement Class Members' attention, and provide them with information necessary to understand their rights and options.

38.     The Notice Plan will afford enough time to provide full and proper notice to Settlement Class Members before any claims, opt-out and objection deadline.

39.     At the conclusion of the Notice Plan, Angeion will provide a final report verifying its effective implementation.

40.     Courts systematically rely upon reach and frequency evidence in reviewing class action notice programs for adequacy.  The reach percentage and the number of exposure opportunities here, meet or exceed those approved in other similar class actions.

41.     It is my opinion that the Notice Program provides class members Due Process of Law and is the best notice that is practicable under the circumstances and is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: March 1, 2017

_____

STEVEN WEISBROT