**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HILARY REMIJAS, MELISSA FRANK, DEBBIE FARNOUSH, and JOANNE KAO, individually and on behalf of all others similarly situated, <br><br>            Plaintiffs, <br><br>     v. <br><br> THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company, <br><br>            Defendant. | Case No. 1:14-cv-01735 <br><br> Honorable Samuel Der-Yeghiayan |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................1

II.   SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT ........................2

    A.  Procedural History ......................................................................................................2

    B.  Settlement Negotiations ..............................................................................................4

    C.  Components of the Settlement .....................................................................................4

       i.     The Settlement Class ..........................................................................................4

       ii.    Non-Reversionary Monetary Relief ...................................................................4

       iii.   Streamlined Claim System .................................................................................5

       iv.    Payments to Class Members ...............................................................................6

       v.     Administration Costs Above $400,000 Will Be Paid By Defendant ...............7

       vi.    Non-Monetary Relief .........................................................................................8

       vii.   Service Awards to Class Representatives ...........................................................9

       viii.  Attorneys' Fees and Expenses ...........................................................................9

       ix.    Release Provisions .............................................................................................9

       x.     Opt-Out Procedure and Opportunity to Object ...............................................10

III.  THE SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL ...............10

    A.  The Strength of the Case Measured Against the Settlement ....................................11

    B.  The Complexity, Length, and Expense of Continued Litigation Favors Settlement ............14

       i.     The Settlement Class's Reaction ......................................................................15

       ii.    Class Counsel's Opinion ..................................................................................15

    C.  The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations ............15

    D.  The Parties Engaged in Significant Motion Practice and Informal Discovery ...................16

IV.   THE COURT APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS ...............17

V.    THE CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL REQUIREMENTS
    OF RULE 23 .....................................................................................................................18

    A.  This Action Satisfies the Requirements of Rule 23(a) ............................................18

       i.     The Class Is Numerous ....................................................................................19

       ii.    The Action Presents Common Questions ........................................................19

       iii.   Plaintiffs' Claims Are Typical ........................................................................20

       iv.    Plaintiffs and Their Counsel Have Fairly and Adequately Protect the Interests of the
           Class ................................................................................................................21

    B.  This Action Satisfies the Requirements of Rule 23(b)(3) .......................................22

       i.     Common Questions of Law and Fact Predominate ..........................................22

       ii.    A Class Action Is Superior ..............................................................................22

VI.   CONCLUSION ................................................................................................................24

## TABLE OF AUTHORITIES

### CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................... 18

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S.Ct. 1184 (2013) ........................... 22

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) .......................................................... 11

*Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill.1995) ................................ 19, 20, 23

*Chau v. Neiman Marcus Group, Ltd, Inc.*, No. 14-cv-597 (S.D. Cal. filed Mar. 14, 2014) ........... 2

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ....................................................... 12

*Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002) .............................................. 22

*De La Fuente v. Stokely-VanCamp, Inc.,* 713 F.2d 225 (7th Cir. 1983) .................................. 20

*Ebersohl v. Bechtel Corp.*, 2010 WL 2266736 (S.D. Ill. June 7, 2010)................................... 21

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985)...................................... 11

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ................................................... 23

*Fraley v. Facebook, Inc.*, Case No. C 11-1726 RS, 2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012)............................................................................................ 5

*Frank v. Neiman Marcus Group*, No. 14-cv-00233-ADS-GRB (E.D.N.Y. filed Jan. 13, 2014)..... 2

*Garner v. Healy*, 184 F.R.D. 598 (N.D. Ill. 1999) .......................................................... 20

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982)......................................................... 15

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) ............. 14

*Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F. Supp. 1130 (N.D. Ill. 1997).... 10

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996) ................................................... 19

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011)............................................................................................................ 15

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011)............................. 5

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015).......... 14, 15

*In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000) .................................... 12

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974)................................................................................................... 12

*In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000)............................. 16

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) ....................... 16

*In re RJR Nabisco, Inc. Secs. Litig.*, MDL No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992)................................................................................... 12

*In re Sears, Roebuck & Co. Front–Loading Washer Prods. Liability Litig.*, No. 16-3554, 2017 WL 3470400 (7th Cir. Aug. 14, 2017).................................................................... 9

*In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) .................................... 6

*Kaufman v. Am. Express Travel Related Servs.*, No. 07-cv-1707, 2016 U.S. Dist. LEXIS 26167 (N.D. Ill. Mar. 2, 2016) ...................................................................................... 7

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987) ........................ 16

*McDaniel v. Univ. Fid. Corp.*, Case No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004)....................................................................................................... 18

*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) ...................................................... 20

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010)..................................................... 23

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)..................................................... 24

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014)................................................ 9

*Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) ................................... 3

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)................................. 11

*Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir. 1992) ........................................... 20, 23

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................ 7

*Shields v. The Neiman Marcus Group, LLC*, No. 14-cv-752 (S.D. Cal. filed Apr. 1, 2014) .......... 2

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ..................................... 20

Swanson v. Am. Consumer Indus., Inc., 415 F.2d 1326 (7th Cir.1969) ........................... 19

*Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982)............................................. 21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)..................................... 19, 20

*Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014)................................... 11

*Wong v. The Neiman Marcus Group, LLC*, No. 2:14-cv-00703-SJO-JC (C.D. Cal. filed Jan. 29, 2014).......................................................................................... 2

*Zawikowski v. Ben. Nat'l Bank*, Case No. 98 C 2178, 2001 U.S. Dist. LEXIS 3098 (N.D. Ill. Mar. 20, 2001) ................................................................................ 5

## RULES

Fed. R. Civ. P. 23(a) ................................................................. 18, 19, 20, 21

Fed. R. Civ. P. 23(b) ...................................................................... 22, 23

## TREATISES

1 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992).................................. 19, 24

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d ed. 1986)............................................................................................. 23

Pursuant to Fed. R. Civ. P. 23(h) and this Court's June 21, 2017 Order Certifying A Settlement Class, Preliminarily Approving Class Action Settlement And Directing Notice To The Settlement Class, Dkt. 154 (the "Preliminary Approval Order"), Plaintiffs Hilary Remijas, Melissa Frank, Debbie Farnoush, and Joanne Kao (collectively, "Plaintiffs" or "Settlement Class Representatives"[1]) individually and on behalf of those similarly situated ("Class Members"), by and through their undersigned counsel, submit this Motion For Final Approval of Class Action Settlement (the "Motion").  For the reasons detailed below, Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement as fair, reasonable, and adequate.  (*See* Settlement Agreement ("SA"), Dkt. 145-1; *see also* [Proposed] Final Judgment and Order, Dkt. 145-3.)

## I.    INTRODUCTION

The Settlement in this case involves a $1,600,000 common fund.  (SA ¶ 46.)  The Settlement Fund will be used to pay (i) Class Members who submit valid and timely Claims[2] up to $100 apiece, (ii) Service Awards, (iii) Attorneys' Fees and Expenses, and (v) Settlement Administration Charges of up to $400,000.  (SA ¶¶ 46-48.)[3]  In addition, Class Members and other customers shopping at Defendant's stores benefit from new business practices designed to further strengthen its information technology security, implemented after this litigation was

---

[1]    Unless otherwise indicated herein, all capitalized terms have the definition ascribed to them in the Settlement Agreement, filed concurrently herewith.

[2]    As of August 21, 2017, there have been 13,872 claims submitted to the Settlement Administrator. (Declaration of Brian Devery ("Devery Decl."), filed concurrently herewith, ¶ 15.)  Class Members will be able to continue to submit claims until January 17, 2018 – the Claim Deadline.

[3]    Defendant must pay any Settlement Administration Charges in excess of $400,000 -- in effect, the danger and burden of administrative cost-overruns will be shifted to Defendant.  (SA ¶ 51.)  As of the August 18, 2007, the Settlement Adminstration Charges are $279,549.55.  (Devery Decl. ¶19.)  Settlement Administration Charges, however, are not expected to exceed $400,000. (*Id.*)

first commenced on January 13, 2014. (*Id.* ¶ 49.)

As discussed in the preliminary approval submission to this Court, *see* Dkt. 145, there are pronounced and tangible advantages to this Settlement. When the benefits of the Settlement are compared to the possibility of zero gain, added expense, time and effort, which would certainly be associated with continued litigation, the Settlement exceeds the requisite standards under the Seventh Circuit and should receive final approval.

## II. SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT

### A. Procedural History

In January 2014, Neiman Marcus announced that it experienced the Cybersecurity Incident which potentially compromised the credit or debit card information of some of its customers who used a credit card or debit card at certain store locations.

On March 12, 2014, Plaintiff Remijas filed her original Complaint in this action. (Dkt. 1) Prior to this time, other complaints related to the Incident had already been filed against Neiman Marcus, including *Frank v. Neiman Marcus Group*, No. 14-cv-00233-ADS-GRB (E.D.N.Y. filed Jan. 13, 2014), *Clark v. Neiman Marcus Group, Ltd., LLC*, No. 1:14-cv-0236 (N.D. Ga., filed Jan. 27, 2014), and *Wong v. The Neiman Marcus Group, LLC*, No. 2:14-cv-00703-SJO-JC (C.D. Cal. filed Jan. 29, 2014). Similar actions followed, including *Chau v. Neiman Marcus Group, Ltd, Inc.*, No. 14-cv-597 (S.D. Cal. filed Mar. 14, 2014) and *Shields v. The Neiman Marcus Group, LLC*, No. 14-cv-752 (S.D. Cal. filed Apr. 1, 2014). After these actions were filed, Plaintiffs' counsel in all the actions related to the Incident met and conferred in order to self-organize the cases for the sake of judicial economy and efficiency. (Declaration of Tina Wolfson ("Wolfson Decl."), filed concurrently herewith, ¶¶ 1-6.) Plaintiffs agreed to consolidate and proceed with their cases in the Northern District of Illinois. (*Id.*) Ms. Remijas moved for leave to amend the complaint in her action to include additional plaintiffs and their

claims (Dkt. 22), which the Court granted on June 2, 2014.  (Dkt. 26.)  Plaintiffs filed their First Amended Complaint on June 6, 2014.  (Dkt. 27.)

After filing, Plaintiffs' counsel's investigation continued.  In this regard, Plaintiffs' counsel retained and consulted with experts on data security issues, who helped analyze publicly available information concerning the Incident.  Plaintiffs' counsel fought for early discovery, filing, in the *Frank* case cited above, a motion to expedite discovery and, later, a motion to compel Defendant to participate in a Rule 26 conference so that regular discovery could proceed.  (*Frank*, Dkts. 5, 29.)  Counsel to Plaintiff Frank also filed a motion for a protective order seeking to curtail Defendant's communications to the class.  (*Frank*, Dkt. 4.)  The *Frank* court did not rule upon those motions before the cases were effectively consolidated in this Court.

On July 2, 2014, in this action, Defendant moved to dismiss Plaintiffs' First Amended Complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  (Dkt. 35.)  Plaintiffs opposed, but on September 16, 2014, the Court granted Defendant's motion to dismiss under Rule 12(b)(1) and dismissed the action on standing grounds.  (Dkt. 49.)

Plaintiffs appealed, and after oral argument this Court's dismissal was reversed by the Seventh Circuit.  *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015).  The Seventh Circuit held that Plaintiffs adequately alleged standing under Article III of the U.S. Constitution.  (Dkt. 66 at 17.)  Following the Seventh Circuit's reversal and denial of a petition for rehearing *en banc*, Defendant renewed its Motion to Dismiss under Rule 12(b)(6) for failure to state a claim.  (Dkt. 75.)  On January 13, 2016, the Court denied Defendant's Motion to Dismiss, stating that "[d]ismissal is not appropriate at this time."  (Dkt. 84.)  On October 26, 2016, the Court issued an Executive Committee Order, transferring the action from the

Honorable James B. Zagel to the Honorable Samuel Der-Yeghiayan for all further proceedings. (Dkt. 121.)

### B. Settlement Negotiations

In December 2015, the parties began discussing settlement, which resulted in a long series of arms' length negotiations, including two days of in-person mediation and numerous post-mediation discussions between counsel and the mediator.[4] (Wolfson Decl. ¶¶ 13-15.) Before entering into the Settlement Agreement, Plaintiffs' Counsel conducted a thorough examination, investigation, and evaluation of the relevant law and facts to assess the merits of the claims and defenses. (*Id.* ¶ 16.)

### C. Components of the Settlement

#### i. The Settlement Class

The Settlement Class provisionally certified by this Court, is defined as:

All residents of the United States who held a credit card or debit card account that was used in any NMG Store at any time from July 16, 2013 to January 10, 2014. Excluded from the Settlement Class are the judge presiding over this matter, any members of his judicial staff, the officers and directors of Neiman Marcus, and persons who timely and validly request exclusion from the Settlement Class.

(Preliminary Approval Order, Dkt. 154 ¶ 1.)

#### ii. Non-Reversionary Monetary Relief

Defendant will pay up to $1,600,000 to create a Settlement Fund. (SA ¶ 46.) Up to $400,000 of the Settlement Fund will be used to pay the costs of notice and settlement

---

[4] The Honorable Wayne R. Andersen (Ret.) of JAMS served as the mediator in two all-day mediation sessions, taking place on December 22, 2015 and on March 2, 2016, as well as numerous subsequent telephonic conversations and negotiations. (Wolfson Decl. ¶ 12.) Judge Andersen is a respected and experienced mediator, who joined JAMS following more than twenty-six years on the bench, spending the most recent nineteen years as a U.S. District Judge for the Northern District of Illinois. (*Id.* ¶ 13.)

administration.[5]  (*Id*. ¶ 47.)  The remaining $1,200,000 is non-revisionary[6] and will be used to pay Class Members who submit Claims, Service Awards to Plaintiffs and Attorneys' Fees and Expenses ordered by the court.[7]  (*Id*. ¶ 48.)  Each Eligible Claimant who submits a valid and timely Claim to the Settlement Administrator will receive up to $100.  (*Id*. ¶ 51.)

### iii.  Streamlined Claim System

Similarly, the claims program showcases the ease of filing a claim or seeking help if needed.  Settlement Class Members may submit Claim Forms electronically (through the Settlement website), or physically (through U.S. mail).  Further, the parties have developed a streamlined and convenient method to determine whether a claimant has a valid claim. Claimants need only answer two questions to submit a claim.[8]

---

[5]  Settlement Administration Charges to date are $279,549.55 and are expected to be approximately $400,000. (Devery Decl. ¶ 19.)  Nonetheless, in such expenses are less than $400,000, then Defendant retains the difference.  If they exceed $400,000, the excess will be paid using funds set aside for payments to Class Members that have not been claimed, if any. (SA ¶ 47.)  Given the number of Claims to date (Devery Decl. ¶ 15), there will likely be no such unclaimed funds and Defendant will be obligated to pay any administration charges in excess of $400,000.

[6]  The non-revisionary nature of the Settlement Fund effectively aligns the interests of the various Parties to provide immediate relief to those injured. *See Zawikowski v. Ben. Nat'l Bank*, Case No. 98 C 2178, 2001 U.S. Dist. LEXIS 3098, at *6-8 (N.D. Ill. Mar. 20, 2001) ("[R]eversion provisions need careful scrutiny" when compared to the boon of "certainty created by non-reversionary settlement"), *reversed on other grounds*, 288 F.3d 277 (7th Cir. 2002).  Here, the non-reversion provision effectively ensures that not even a single penny of the $1.2 million dollars will revert back to Defendant.  Thus, any potential problems with the reversion of funds has been effectively eliminated. *See Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (criticizing reverters to defendants); *Fraley v. Facebook, Inc.*, Case No. C 11-1726 RS, 2012 U.S. Dist. LEXIS 116526, at *9 (N.D. Cal. Aug. 17, 2012) ("[R]eversionary provisions are not necessarily prohibited, [but] they are problematic.") (citing *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

[7]  Given the number of Claims to date it appears the the non-revisionary portion of the Settlement Fund will be used in full.

[8]  *First*, A claimant must state whether his or her credit or debit card was used at a Neiman Marcus store between July 16, 2013 and October 30, 2013.  (SA, Ex. A.)  Answering this question in the affirmative establishes that the claimant's card may have been used at a time and a place where malware capable of collecting payment card data was operating. *Second*, Claimants who answer the first question in

[Footnote continued on next page]

This Claim validation procedure is convenient. It is possible for claimants to submit a valid Claim using only information in their memory, such as the name and billing address of a potentially-affected payment card. All of the information requested is easily ascertainable from billing records that claimants may have in their files or be able to quickly obtain from the websites maintained by the issuers of their payment cards. Unlike in other data breach class action settlements, claimants need not collect or submit any documents to the settlement administrator in order to obtain a monetary benefit. Thus, the Claims Program will be is easy, simple and straightforward as possible and further substantiates Plaintiffs' request for final approval. *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 711 (7th Cir. 2015) (approving and noting favorably the fact that "[t]he claims process is easy").

### iv.        Payments to Class Members

Each Class Member who submits a valid and timely Claim will receive payment. The Settlement Payments Fund will first be used to pay any Service Awards to Plaintiffs ordered by the Court, and any Attorneys' Fees and Expenses awarded by the Court. Once these payments have been made, the Settlement Administrator will pay an amount of up to $100 to each valid claimant. In the event that the aggregate value of the valid claims (at $100 per claim) exceeds the amount remaining in the Settlement Payments Fund after Service Awards, and Attorneys' Fees and Expenses are paid, then the cash payment provided to each valid claimant will be

---

[Footnote continued from previous page]
the affirmative must provide at least one of two additional sets of information. They may provide either (i) the last four digits of the payment card used at a Neiman Marcus store between July 16, 2013 and October 30, 2013 and (ii) the dates and locations that that card was used at a Neiman Marcus store between these dates; *or* the full name and billing address associated with the payment card. This information is necessary to determine whether the payment card was actually used at a time and place that malware capable of collecting payment card data was operational. (*Id.*) Finaly, claimants must affirm that the information they provided is true and correct, and that the claimant is the cardholder of the card identified in the response to Question Two. (*Id.*)

reduced on a *pro rata* basis.  Given that the number of claims as of August 21, 2017 is 13,872, and assuming all or most of the claims to date are valid, this will likely be the case.[9]  Plaintiffs will supplement this brief prior to the final hearing to provide updated claims numbers and estimate payments to each claimant.

**v.      Administration Costs Above $400,000 Will Be Paid By Defendant**

Another significant accomplishment of the Settlement is the apportionment of administration costs and expenses.  Any administrative costs that exceed $400,000 are paid by Neiman Marcus and constitute an additional benefit of the Settlement beyond the $1.6 Million fund.  Administration costs routinely overrun initial projections.  *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 569 (N.D. Ill. 2011) (party paying an "additional $668,580.52 out of pocket to cover notice and claims administration costs").  Indeed, the danger of an unexpected increase in administration costs negatively impacting the Settlement Fund has been effectively removed and will only prove detrimental to Defendant, not the Class.  Further, Plaintiffs' approach towards ascertaining the burden of administration costs, not only reflects favorably upon Class Counsel's experience, but also assists the Court in removing a degree of unnecessary uncertainty.  *See Kaufman v. Am. Express Travel Related Servs.*, No. 07-cv-1707, 2016 U.S. Dist. LEXIS 26167, at \*36 n.15 (N.D. Ill. Mar. 2, 2016) (admonishing the parties and noting that "[t]he settling parties have failed to provide an accurate accounting of how the $6,753,269.50

---

[9]      In the unlikely event that there are funds left in the Settlement Payments Fund after all Class Members who submitted a valid Claim have been paid, then the remaining funds will be distributed as follows:  *First*, such funds will be used to pay any administration expenses in excess of $400,000.  *Second*, if there are funds remaining in the Settlement Fund after payment of any such excess administration costs, the Settlement Administrator will estimate the cost of sending a check to each Class Member who could have submitted a valid Claim, but did not, for whom Neiman Marcus has a mailing address, and subtract that amount from the remaining funds.  After subtracting this cost, any remaining amounts will be distributed to such Class Members, on a pro rata basis, provided that each such distribution would exceed $5.00.  Third, if there are funds remaining in the Settlement Payments Fund after any such distribution, such remaining funds shall be donated to a charitable organization chosen jointly by the Parties.

settlement fund will be expended in terms of administration costs . . . [i]nstead the parties leave it to the court to do their work for them."). Here, the Settlement Agreement unquestionably provides a more definite outcome in terms of administration costs and shifts the burden of cost escalations squarely upon Defendant. (SA ¶ 50.)

### vi. Non-Monetary Relief

In addition to the monetary relief, since the initial lawsuit described above was filed, Neiman Marcus took measures to further enhance the security of its customers' data, which remain in effect as of the date of the Settlement Agreement and include the following:

*Chief Information Security Officer*. Neiman Marcus created and filled the position of Chief Information Security Officer (CISO), an executive position with responsibility to coordinate and be responsible for Neiman Marcus's program(s) to protect the security of customers' payment card data including account numbers, expiration dates, card verification values, and cardholder names;

*Information Security Organization*. Neiman Marcus created a new organizational unit responsible for information security and has hired employees to fill the organization, including a Director of Security Operations and a Director of Security, Risk Management and Compliance;

*Senior Leadership Reporting*. Neiman Marcus increased the frequency and depth of reporting to its executive team and members of its board of directors about its cybersecurity efforts and the cybersecurity threat landscape;

*Chip-Based Payment Card Infrastructure*. Neiman Marcus equipped all of its stores with devices that allow customers to pay for purchases using payment cards containing embedded computer chips;

*Employee Education*. Neiman Marcus expanded its program to educate and train its workforce on methods to protect the privacy and security of its customers' information;

*Log Analysis Tool*. Neiman Marcus invested in a new tool to automatically collect and analyze logs generated by Neiman Marcus systems for potential security threats; and

*Information Sharing*. Neiman Marcus joined several public-private partnerships that facilitate information sharing concerning cybersecurity and threat awareness.

(SA ¶ 49; Wolfson Decl. ¶ 16.)

### vii.       Service Awards to Class Representatives

Subject to Court approval, Plaintiffs requests service awards of $2,500 for each of the Settlement Class Representatives in recognition of their contributions, time spent, and risk incurred for the Class. (*See* Plaintiffs' Motion For Attorneys' Fees, Costs, And Class Representative Service Awards, filed Concurrently herwith, Section III.D. (discussing Plaintiffs' contribution);  SA ¶ 72.)

### viii.      Attorneys' Fees and Expenses

In the concurrently filed motion for an award of attorneys' fees and costs ("Fee Motion"), Class Counsel request a total of $530,000, which is a significant discount from Plaintiffs' Counsels' actual lodestar of $811,129.86, in addition to expenses of $39,129.86.  The $530,000 requested represents a "negative multiplier" of approximately .65 and represents 33.33% (or 44% as *Redman* ratio) of the Settlement Fund.  (*See* Fee Mot.)  As argued in the Fee Motion, the requested award is reasonable, using either the lodestar approach or the percentage-of-fund approach, under Seventh Circuit precedent.  (*Id.* at 1-2 (citing *In re Sears, Roebuck & Co. Front–Loading Washer Prods. Liability Litig.*, No. 16-3554, 2017 WL 3470400, at *2 (7th Cir. Aug. 14, 2017) (awarding class counsel full lodestar, although fees in that case exceeded settlement's benefits to the class); *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("The ratio that is relevant to [the percentage-of-fund analysis] . . . is the ratio of (1) the fee to (2) the fee plus what the class members received.")).)

### ix.       Release Provisions

If the Court grants final approval of the Settlement, Settlement Class Members will automatically be deemed to have released Defendant of all claims, known or unknown, that were asserted or could have been asserted in the litigation.  (*Id.* ¶¶ 68-71.)  The Released Claims

do not include any claims arising from or relating to any conduct by Neiman Marcus after the date the Settlement Agreement is executed. (*Id.* ¶ 69.)

> ### x.       Opt-Out Procedure and Opportunity to Object

Any Settlement Class Member may request to be excluded from the Settlement Class by sending a written request to the Settlement Administrator postmarked no later than the Opt-Out Deadline, as specified in the Long Form Notice. (*Id.* ¶ 63.)

Any Settlement Class Member who does not request to be excluded may object to the Settlement, Class Counsel's fee application, and/or the requests for Service Awards. (*Id.* ¶ 64.) To be considered, an objection must either be mailed to the Class Action Clerk or filed with the Court, and must be in writing, personally signed by the objector, and include the information prescribed by the Long Form Notice. (SA ¶ 64 & Ex. D.) The Opt-Out and Objection Deadlines fall on September 4, 2017.

## III.    THE SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Courts look approvingly upon settlements because they promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by [preserving] public resources." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997).

In assessing whether to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement" (*Isby*, 75 F.3d at 1198-99), and has identified six factors for analyzing whether a class action settlement should be given final approval including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction

of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc*., 773 F.3d 859, 863 (7th Cir. 2014).

The Supreme Court has cautioned, however, that a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Isby*, 75 F.3d at 1196-97 (declining objecting members' invitation to determine merits of legal issues that remain unresolved). Finally, the Seventh Circuit has urged district courts to be mindful that "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (emphasis original). Analysis of all these factors under the applicable law weighs heavily in favor of finally approving the Settlement.

### A. The Strength of the Case Measured Against the Settlement

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *In re AT & T Mobility Wireless*, *supra*, 270 F.R.D. at 346 (internal citations omitted). The Seventh Circuit is clear that "[a]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Id*. at 347. Comparing concrete settlement benefits with hypothetical litigation outcomes is an inexact science and "[a] high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002). Here, Plaintiffs believe in the merits of their case, but must

acknowledge the risks of continuing to litigate the action.[10]

First, fact-intensive inquiries are pervasive in this action. Plaintiffs' contention that Defendant failed to secure and safeguard their credit and debit card information (*e.g.*, First Amended Complaint ¶¶ 1, 84-85, 98, 107) involve consideration of many facts surrounding the Incident, including the manner in which the information was potentially compromised in the first instance, the length of time the information was potentially compromised, the types of information that were potentially compromised, and whether any of the information was improperly accessed or used as a result. As the Seventh Circuit recognized, proving causation in this case presents a significant hurdle. (Dkt. 66 at 10.) Similar difficulties exist for purposes of quantifying settlement class members' damages. Likewise, Plaintiffs' claims regarding Defendant's failure to provide timely and adequate notice to settlement class members after the Incident require a factual inquiry into Defendant's notification program.

In support of its defenses, Plaintiffs expect that Defendant would attempt to present certain materials as evidence and arguments that would seek to demonstrate that: (i) Defendant implemented robust security architecture to protect its systems and customer data, (ii) Plaintiffs' damages were not caused by the Incident or, at least, could have had other causes including other cybersecurity incidents; (iii) Assessments by allegedly independent third parties found that

---

[10]     In considering a settlement, a court is required to take the parties' views into account. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate; *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, MDL No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702 at *12 (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *see also In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

Defendant was in compliance with applicable data security standards before, during, and after the Incident; (iv) there was no evidence that the payment card information collected by the Malware in the Cybersecurity Incident was actually exfiltrated; (v) transactions on Defendant's websites and at Defendant's restaurants were not compromised; and (vi) PIN data was not compromised. (Wolfson Decl. ¶15.) Defendant would also likely attempt to present evidence in an effort to establish that they sent written notice of the Incident to consumers with an offer of free credit monitoring for one year. (*Id.*)

Second, continued litigation would present risks in establishing liability and damages. If the Settlement is not approved, this action will proceed to intense litigation and possibly trial and appeal. Plaintiffs and Defendant vehemently disagree about the merits of Plaintiffs' claims. Although this Court denied Defendant's Motion to Dismiss based on Fed. Rule Civ. P. 12(b)(6), it did not rule on the merits. (Dkt. 85.) Regardless of each party's respective position, there is uncertainty about the ultimate outcome of this action.

Third, valuation of Plaintiffs' damages is difficult. Even without any discount for the significant risks of continued litigation, most if not all injuries suffered by settlement class members were relatively small, and establishing a nexus between those injuries and the Cybersecurity Incident may be problematic. Even if economic damages can be proven, the value of any monetary recovery to Plaintiffs erodes over time, and litigation expenses increase.

Fourth, Defendant would oppose class certification if the action were to proceed to that stage. Plaintiffs believe that class certification is appropriate in this action, but are cognizant of the risk that the Court may not certify a class at all, may not certify a class covering all claims asserted in the First Amended Complaint, or may limit the size of any class. This Court or the Seventh Circuit might ultimately conclude that individualized questions predominate over any common questions. Finally, even if Plaintiffs are successful in gaining certification of their

claims, the class certified may ultimately be smaller than the nationwide class to whom the Settlement will confer its benefits.

Finally, the tremendous amount of time and resources it will take to litigate the case to conclusion counsels in favor of accepting the Settlement now. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also In re AT&T Mobility Wireless*, *supra*, 270 F.R.D. at 347 ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (citations omitted). Under this Settlement, the Settlement Class will realize immediate benefits once the Settlement is approved and the Claims process is completed. As a factual matter, it is clear that the Incident occurred. But the legal questions, such as whether Defendants' conduct gives rise to liability and valuation of damages, remain disputed. And while Plaintiffs strongly believe that they could overcome these legal hurdles, they cannot responsibly ignore the risk that this Court or a reviewing court might not accept some or all of their arguments. As a result, the present value of the monetary component of the Settlement is significant compared to duration and uncertainty of litigation and valuation of damages—indicating the Settlement merits approval.

## B. The Complexity, Length, and Expense of Continued Litigation Favors Settlement

The likely complexity, length, and expense of continued litigation are relevant factors in assessing a proposed settlement. *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015), *appeal dismissed* (May 5, 2015), *appeal dismissed* (June 8, 2015), *appeal dismissed* (June 26, 2015). The Settlement makes a final decision on several disputed factual and legal issues unnecessary. While the parties have conducted informal discovery for

settlement purposes, in the event litigation proceeded, the parties would need to engage in further and significant discovery. Both parties would require experts. Costs of testifying experts regarding the economic harm caused to consumers, discovery, class certification, summary judgment motion practice, as well as other pre-trial and trial expenses, would be substantial. Continued litigation would likely involve, as indicated by the procedural history in this matter, motions to dismiss, motions for summary judgment, a motion for class certification, and one or more interlocutory appeals, all of which would delay final resolution. This factor also weighs in favor of preliminary approval.

### i. The Settlement Class's Reaction

To date there have been no objections to the Settlement and 12 requests for exclusion. (Devery Decl. ¶ 16.) Class Counsel will revisit this issue at the fairness hearing and after the objection / opt-out deadlines, to the extent necessary. In any event, the opt-out/objection rate is extremely low. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (granting final approval and finding that 0.01% of opposition was scant); *see also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015). Thus, this factor weighs strongly in favor of final approval.

### ii. Class Counsel's Opinion

Courts are "'entitled to rely heavily on the opinion of competent counsel . . . .'" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982). Both Class Counsel strongly recommend final approval. (Wolfson Decl. ¶ ¶ 45-48; Declaration of John Yanchunis ("Yanchunis Decl."), filed concurrently herewith ¶ ¶ 22-25.)

### C. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

A proposed settlement is presumed to be fair and reasonable when it is the result of

arms' length negotiations. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, *supra*, 616 F.2d at 325; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (internal quotation omitted); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal quotation omitted). This presumption is applicable here.

As discussed above, the Settlement is the result of over 12 months of arm's length negotiations, including two days of mediation, and numerous other telephone conferences with the mediator and directly between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. The negotiations were mediated and facilitated by a retired judge with substantial judicial and mediation experience in class actions. Moreover, the settlement was reached only after Plaintiffs' Counsel analyzed information provided by Defendant in informal discovery, conducted interviews of putative class members, and performed other meticulous investigation. Given these facts, the Settlement is shown to be non-collusive.

> **D.      The Parties Engaged in Significant Motion Practice and Informal Discovery**

Class Counsel conducted a detailed investigation into the facts and law relating to the matters alleged. Among other facts, Plaintiffs learned that malicious software capable of collecting payment card data operated in Neiman Marcus stores between July 16, 2013 and October 30, 2013. In addition, Plaintiffs learned, *inter alia*, that (a) this malware never operated in some Neiman Marcus stores, (b) as to those stores where this malware did operate, it did not operate in each of the stores during each day between July 16, 2013 and October 30,

2013, and (c) often, this malware only operated during part of the time that each store was open for business, and the times when this malware operated varied from day to day within each individual store and among the stores where this malware operated.  (SA ¶ 4.)  These facts refined Plaintiffs' understanding of the Incident, and Plaintiffs no longer contend, as the amended complaint alleges, that the Cybersecurity Incident began in March 2013 and continued until January 10, 2014.  The parties have also briefed the legal issues at hand extensively, as described above.

## IV.  THE COURT APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

The parties effectuated the Class Notice in a reasonable manner that was calculated to reach as many Settlement Class Members as possible who would be bound by the Settlement.  In this case, in addition to publication notice, direct notice by e-mail and physical mail was sent to Settlement Class Members by the court-appointed Claims Administrator.  (Devery Decl. ¶¶ 7-10.)

Notice was also provided through a media campaign designed to reach as many Settlement Class Members as possible.  (Devery Decl. ¶¶ 11-14.)  The administrator published notice in *People* magazine.  (*Id.* ¶ 11.)  Further, banner ads resulted in 4,208,095 million impressions.  (*Id.* ¶ 12.) In addition to the successful direct and publication notice, the administrator established an interactive voice response available through a toll free number and the Settlement Website.  (*Id.* ¶¶ 13-14.)

The Notice Plan approved by the Court provided the best notice practicable to apprise the Settlement Class of the pendency of this action.  The notice afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order.

## V. THE CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL REQUIREMENTS OF RULE 23

The Court should certify the settlement class because Rules 23(a) and 23(b)(3) are satisfied. "Settlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 622 (1997). The Supreme Court "has expressly approved the use of the settlement class device." *Id.* at 618 ("[T]he 'settlement only' class has become a stock device."). Settlement Class Representatives seek conditional certification of the class under Rule 23(b)(3), their appointment as Settlement Class Representatives solely for purposes of the settlement, and appointment of their counsel as Class Counsel. A class may be certified if it satisfies all of the requirements of Rule 23(a) and one of the three subparagraphs of Rule 23(b), *see McDaniel v. Univ. Fid. Corp.*, Case No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) (applying Rule 23 at preliminary approval stage), but without regard to whether the class would be manageable for trial. *See Amchem*, *supra*, 521 U.S. at 620.

This case meets the four prerequisites of Rule 23(a) necessary for class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the case satisfies the requirements of Rule 23(b)(3): common issues predominate and a class action is the superior method of resolving them.

### A. This Action Satisfies the Requirements of Rule 23(a)

Fed. R. Civ. P. 23(a) sets forth the four prerequisites to class certifications: (i) the class is so numerous that joinder of all members is impracticable ("numerosity"); (ii) the claims raise common questions of law or fact ("commonality"); (iii) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (iv) the representative parties can fairly and adequately protect the interests of the class ("adequacy"). The Settlement Class

proposed here satisfies each of these prerequisites.

### i. The Class Is Numerous

Rule 23(a)(1) provides that a class must be "so numerous that joinder of all members is impracticable." "When class size reaches substantial proportions . . . , the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (*citing* 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992)). The proposed Settlement Class Members are sufficiently numerous under Rule 23(a)(1) because joinder of such Settlement Class Members, who are geographically dispersed, would be impracticable. Here, the nationwide class includes individuals who held approximately 2,187,773 different payment card accounts. Courts in the Seventh Circuit have found that classes with significantly less members than the proposed settlement class satisfy the numerosity requirement. *See, e.g.*, *In re AT&T Mobility Wireless, supra,* 270 F.R.D. at 341 (citing *Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969) (forty class members satisfy numerosity requirement)); *Chandler v. S.W. Jeep–Eagle, Inc.,* 162 F.R.D. 302, 307–08 (N.D.Ill.1995) (finding fifty class members satisfy numerosity requirement)). As a result, the proposed Settlement Class is so numerous that joinder would be impracticable.

### ii. The Action Presents Common Questions

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."[11] Commonality focuses on the relationship of common facts and legal issues among class members. 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002).

---

[11]     *See Hanlon v. Chrysler Corp,* 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id. at* 2551. This means that the class members' claims "must depend on a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The commonality requirement is easily met here. "Courts have consistently found a 'common nucleus of operative fact[s]' when the defendants are alleged to have directed 'standardized conduct toward [the putative class] members.'" *Chandler, supra,* 162 F.R.D. at 308 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)); *accord Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Here, commonality is satisfied because a determination of whether Defendant put reasonable information technology security in place prior to the Incident, and complied with its statutory duties following the Incident, will resolve issues "central to the validity" of each Class Member's claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). For purposes of Rule 23(a)(2), even a single common question will do. *Id.* at 2556.

### iii.    Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the Settlement Class Representatives' claims be typical of other proposed Settlement Class Members' claims. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario, supra*, 963 F.2d at 1018 (quoting *De La Fuente v. Stokely-VanCamp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)). While "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted); *see also Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (finding typicality satisfied where plaintiffs, like the class, "believed that they were getting something more than they ultimately received"). Typicality is satisfied here because Plaintiffs and the proposed Settlement Class Members have the same claims arising from the same alleged course of

conduct — that Defendant allegedly failed to implement reasonable information technology security and then allegedly failed to respond to the Cybersecurity Incident that followed, adequately and in compliance with state law.  Accordingly, the Settlement Class Representatives' claims are typical of the claims of the other proposed Settlement Class Members.

### iv. Plaintiffs and Their Counsel Have Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class."   Adequacy is satisfied where the class representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class.  Moreover, "it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (*quoting Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

Here, the interests of Settlement Class Representatives and the proposed Settlement Class Members are fully aligned.  Settlement Class Representatives seek the same remedy as all proposed Settlement Class Members: relief to address claims arising from the Cybersecurity Incident, through which certain Payment Card Information of proposed Settlement Class Members may have been compromised.  Further, proposed Class Counsel have extensive experience litigating and settling class actions, including class actions based on data breaches, false advertising, breach of contract, and unlawful business practices claims.  They have demonstrated expertise in handling all aspects of complex litigation and class actions, and are

well qualified to represent the Class. (Wolfson Decl. ¶ 3 & Ex. A; *see generally*, Yanchunis Decl.) Plaintiffs and proposed Class Counsel remain fully committed to advancing the interests of, and obtaining relief for, the proposed Settlement Class Members, as evidenced by the terms of the Settlement Agreement. *See Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (addressing Rule 23(a)(4)'s adequacy requirement and the importance of Class Counsel's advocacy with respect to a proposed settlement).

Plaintiffs' Counsel and Defendant engaged in extended negotiations regarding the Claims validation process, and throughout the negotiations, Plaintiffs' counsel sought to simplify the process and lower the burden that claimants must meet. That the parties ultimately agreed to the simple Claims validation process described above is further evidence that Plaintiffs and their counsel will fairly and adequately represent absent proposed Settlement Class Members.

## B.    This Action Satisfies the Requirements of 23(b)(3)

In addition to meeting the requirements of Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). Here, Fed. R. Civ. P. 23(b)(3) is satisfied because: (i) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (ii) the class action mechanism is superior to any other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### i.    Common Questions of Law and Fact Predominate

Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (emphasis in original). Plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'"

*Id.* (quoting Fed. R. Civ. P. 23(b)(3)); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th

Cir. 2010) *reversed on other grounds by Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)

(The predominance requirement may be satisfied when "the central questions in the litigation are

the same for all class members").   Class action status is appropriate where common questions

represent a significant aspect of a case and they can be resolved in a single action.  *See* 7A Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528

(2d ed. 1986).  Common questions, however, need not be dispositive of the entire action, because

"predominate" does not mean "determinative."  *Id.* at 528-29.  The presence of "some factual

variation among the class grievances will not defeat a class action."  *Rosario, supra*, 963 F.2d at

1017; *see also Chandler, supra*, 162 F.R.D. at 308 (N.D. Ill. 1995) ("It is well-established . . . that

the presence of some individualized issues does not overshadow the common nucleus of operative

fact presented when the defendant has engaged in standardized conduct toward the class.")

Here, the claims are based upon uniform conduct regarding a single Cybersecurity

Incident that affected all proposed settlement class members in similar fashion, and for the same

amount of time.  Because these core issues involve uniform conduct common to all proposed

Settlement Class Members, the Rule 23(b)(3) predominance requirement is satisfied.

### ii.    A Class Action Is Superior

A class action is superior to other available methods for the fair and efficient adjudication

of this controversy.  To determine the issue of "superiority," Rule 23(b)(3) enumerates the

following factors: "(A) [T]he interest of members of the class in individually controlling the

prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the

controversy already commenced by . . . members of the class; (C) the desirability . . . of

concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to

be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3).

23

Each of these factors supports certifying the proposed settlement class. There is little interest or incentive for proposed Settlement Class Members to individually control the prosecution of separate actions. While the total amount of economic harm caused by this Cybersecurity Incident is significant, the Settlement Class Members' individual claims are too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985). Although the injuries resulting from Defendant's alleged failure to secure and safeguard the Payment Card Information of the Settlement Class are real, the cost of individually litigating such cases against Defendant would easily exceed the value of any relief that could be obtained by any one consumer. This fact strongly warrants a finding that a class action is a superior method of adjudication.[12] In sum, the proposed Settlement Class's claims satisfy Rule 23(b)(3)'s requirements, and should be certified.

## VI.    CONCLUSION

For all of the foregoing reasons, Class Counsel requests that the Court enter an order granting final approval of the Settlement.

Dated:  August 21, 2017                                    Respectfully submitted,

/s/ *Tina Wolfson*
Tina Wolfson
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Ave.
West Hollywood, CA 90069
Tel: 310-474-9111; Fax: 310-474-8585

---

[12]    Possible alternatives to the class action device include: joinder, intervention, consolidation, a test case, and an administrative proceeding. H. Newberg & A. Conte, Newberg on Class Actions, § 4.27 (4th ed. Supp. 2010). None of those alternatives is superior to class action treatment in this matter because the Settlement Class consists of approximately two million consumers across the country.

*Class Counsel*

John A. Yanchunis
*jyanchunis@forthepeople.com*
**MORGAN & MORGAN**
**COMPLEX LITIGATION DEPARTMENT**
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813-275-5272; Fax: 813-226-5402

*Class Counsel*

Joseph J. Siprut
*jsiprut@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
Tel: 312-236-0000; Fax: 312-878-1342

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 21, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court in the United States District Court for the Northern District of Illinois by using the CM/ECF system, which served copies on all interested parties registered for electronic service.

*/s/ Tina Wolfson*
Tina Wolfson