# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HILARY REMIJAS, MELISSA FRANK, DEBBIE FARNOUSH, and JOANNE KAO, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br><br>THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:14-cv-01735<br><br>Hon. Samuel Der-Yeghiayan |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................................1
II. BACKGROUND.............................................................................................................................3
   A. Brief Procedural History .........................................................................................................3
   B. Summary of the Settlement's Benefits ...................................................................................3
III. ARGUMENT...................................................................................................................................4
   A. Counsel Should Be Awarded Their Lodestar and Expenses...................................................4
   B. The Percentage-of-Fund Method also Supports the Requested Award..................................8
      1. The *Redman* Ratio Supports the Fee Request ..................................................................8
      2. The *Synthroid* Factors Support Plaintiffs' Fee Request ..................................................9
         a. The Risk of Nonpayment Was Significant................................................................10
         b. Agreement Between Plaintiffs and Their Counsel....................................................11
         c. The Quality of Class Counsel's Performance ...........................................................11
         d. The Amount of Work Necessary to Resolve This Litigation ....................................12
         e. The Stakes of This Litigation....................................................................................13
   C. Class Counsel's Expenses Are Reasonable ..........................................................................13
   D. The Requested Service Awards to Plaintiffs Are Appropriate.............................................14
IV. CONCLUSION..............................................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*Abbott v. Lockheed Martin Corp.*, No. 06–cv–701–MJR–DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ................................................................................................................ 14
*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014) .. 5
*City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) ....... 14
*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) .................................................................. 4, 5, 15
*Fleisher v. Phx. Life Ins. Co.*, Nos. 11-cv-8405, 14-cv-8714, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015) ................................................................................................... 12
*Florin v. Nationsbank of Ga.*, 34 F.3d 560 (7th Cir. 1994) ........................................................... 5
*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ........................................... 15
*In re Pub. Serv. Co. Sec. Litig.*, 125 F.R.D. 480 (S.D. Ind. 1988) ................................................ 12
*In re Sears, Roebuck & Co. Front–Loading Washer Prods. Liability Litig.*, No. 16-3554, 2017 WL 3470400 (7th Cir. Aug. 14, 2017) .................................................................... passim
*In re Sw. Voucher Litig.*, Case No. 11-cv-8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Aug. 26, 2013) .......................................................................................................................... 14
*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ........................................ 10, 11, 14, 15
*In re Synthroid Mktg. Litig.*, 325 F.3d 974 (7th Cir. 2003) ........................................................... 9
*In re Transunion Corp. Priv. Litig.*, 629 F.3d 741 (7th Cir. 2011) ............................................... 10
*In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 13, 2001) ............................................................................. 12
*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ................................................................ 2, 9
*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ...................... 5
*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) .................................................. 2, 8, 9
*Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir 2015) ................................. 4, 10
*Standard Iron Works v. Arcelormittal*, No. 08-cv-5214, 2014 U.S. Dist. LEXIS 162557 (N.D. Ill. Oct. 22, 2014) ............................................................................................................... 6
*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) ..................................... 10
*Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057 (D. Minn 2010) ................... 15

**RULES**

Fed. R. Civ. P. 23 .......................................................................................................................... 4

## I. INTRODUCTION

In accordance with Fed. R. Civ. P. 23(h) and this Court's June 21, 2017 Order Certifying a Settlement Class, Preliminarily Approving Class Action Settlement, and Directing Notice to the Settlement Class (Dkt. 154) (the "Preliminary Approval Order"), Plaintiffs,[1] on behalf of the Settlement Class,[2] move for an award of **$530,000 in fees and expenses**. This request represents a significant discount from the true figure of $850,523.56, which includes a combined lodestar across all Plaintiffs' firms of $811,393.70 in fees, and $39,129.86 in expenses, but is the maximum allowed under the terms of the Settlement Agreement. Class Counsel[3] also seek service awards in the amount of $2,500 for each of the three named Plaintiffs.

The requested awards would be paid out of the ***$1.6 million common fund*** (the "Settlement Fund")[4] achieved through Class Counsel's work. Class Counsel's agreement to accept less than the firms' lodestar increases the amount of money otherwise available to the Class. The negative multiplier that the requested award entails underscores its reasonableness. *See In re Sears, Roebuck & Co. Front–Loading Washer Prods. Liability Litig.*, No. 16-3554,

---

[1] Plaintiffs, who also are the proposed Settlement Class Representatives, are: Hilary Remijas, Melissa Frank, and Debbie Farnoush (collectively, "Plaintiffs" or "Settlement Class Representatives").

[2] The "Settlement Class" is defined in the Preliminary Approval Order as:

> All residents of the United States who held a credit card or debit card account that was used in any NMG Store at any time from July 16, 2013 to January 10, 2014. Excluded from the Settlement Class are the judge presiding over this matter, any members of his judicial staff, the officers and directors of Neiman Marcus, and persons who timely and validly request exclusion from the Settlement Class.

[3] "Class Counsel" is defined as Tina Wolfson, Theodore W. Maya, and Robert Ahdoot of Ahdoot & Wolfson, PC, and John A. Yanchunis of Morgan & Morgan Complex Litigation Department. (Dkt. 154 ¶ 2.)

[4] Unless otherwise stated, capitalized terms are defined in the Settlement Agreement. (Dkt. 145-1.)

2017 WL 3470400, at *2 (7th Cir. Aug. 14, 2017) ("*Sears Front-Loading Washer*") (awarding class counsel full lodestar despite that fees exceeded settlement's benefits to the class).

The requested award is within the range of approval under Seventh Circuit precedent, using either the lodestar method or the percentage-of-the-fund method. The requested fee award is less than Class Counsel's actual lodestar, and amounts to 33.33% of the total Settlement Fund, or 44.17% of the $1.2 million remaining in the Settlement Fund after payment of Administration Charges. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received."); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("[A]ttorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel."). The fee request also is reasonable given the enormous risks and investment required to develop and prosecute a case of this nature, and the excellent result achieved for the Class here.

As detailed below and in the supporting declaration of Tina Wolfson ("Wolfson Decl."), multiple attorneys spent copious hours over more than three years to bring this case to its current posture, while the action was pending before this Court and in the Seventh Circuit. In fact, a *downward* multiplier of 0.65 must be applied to counsel's true fees and expenses to approximate the award requested here. The requested award is reasonable, particularly given the excellent result for the Settlement Class achieved here.

## II. BACKGROUND

A.      **Brief Procedural History**

Plaintiffs brought this class action on behalf of consumers whose personally identifiable information ("PII") was compromised in a data breach that affected stores owned by Defendant Neiman Marcus from March 2013 to January 10, 2014 (the "Data Breach"). The first such action was filed in January 2014, and Class Counsel self-organized, cooperated, and consolidated several various cases for the sake of economy and efficiency in the present action. Plaintiffs allege Defendant failed to secure the PII it collected and maintained, failed to provide timely and adequate notice to Settlement Class Members that their PII had been stolen, and failed to inform Settlement Class Members precisely what types of PII were compromised.

A detailed history of the litigation, of the appeal to the Seventh Circuit of the District Court's ruling on Defendant's motion to dismiss, and of the settlement negotiations that resulted in the Settlement Agreement before the Court, was included in Support of Plaintiffs' Motion for Preliminary Approval (Dkt. 145 at 3-6), and is included in the concurrently filed Wolfson Declaration. Plaintiffs incorporate that background material, but will not repeat it, here.

B.      **Summary of the Settlement's Benefits**

Likewise, Plaintiffs' Motion for Preliminary Approval, as well as the concurrently filed Motion for Final Approval, describe the Settlement's various and significant benefits to the Class, and Plaintiffs will assume familiarity with that material here. As of the date of this filing, 13,872 Class Members have submitted claims, and that number is likely to rise before the claim filing period closes on January 17, 2018. (Declaration of Brian Devery ("Devery Decl.") ¶ 15.) Because there are enough claims to exhaust the Settlement Fund (assuming all or most of the claims are valid), there will be no *cy pres* distribution. This will result in a

significant[5] monetary recovery, particularly in light of the fact that defendant got the action dismissed for lack of injury-in-fact sufficient to support Article III standing, until that decision was reversed by the Seventh Circuit on the basis that "[t]he injuries associated with resolving fraudulent charges and protecting oneself against future identity theft . . . are sufficient to satisfy the first requirement of Article III standing." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 696 (7th Cir 2015). The monetary relief offered by the Settlement is significant in relation to such injuries.

In addition to that monetary relief, the Settlement includes significant non-monetary benefits. This non-monetary relief includes Defendant's agreement to employ a Chief Information Security Office, create a new Information Security Organization, implement a chip-based payment card infrastructure, invest in a new log analysis tool, and engage in employee education, all of which should help avoid a similar breach in the future and protect Class Member's PII going forward. (Settlement Agreement ("SA") ¶ 49)

### III. ARGUMENT

A.  **Counsel Should Be Awarded Their Lodestar and Expenses**

"[T]he district judge has discretion to choose between the lodestar and percentage-of-fund approaches" to compute the appropriate fee award, but the Court need apply only one of these methods for computing fees. *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."); *see also* Fed. R. Civ. P. 23 ("In a certified class action, the court

---

[5] The Settlement provides for payments to claimants of up to $100, which amount is reduced *pro rata* because there are sufficient claims to deplete the Settlement Fund. (Settlement Agreement ("SA") ¶ 51(b).)

may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."); *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("[T]he choice of methods is discretionary.").

Indeed, in appropriate cases the Seventh Circuit has even approved lodestar-based awards of attorneys' fees that exceed the amount recovered by the class at issue. *See Sears Front-Loading Washer*, 2017 WL 3470400 at *2 . Of course, Class Counsel here seeks no such award, and even measured using the percentage-of-the-fund approach, the requested amount is within the range explicitly endorsed as approvable by the Seventh Circuit.

To calculate the lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). This base lodestar often is adjusted upward to reflect the contingent nature of the attorneys' undertaking based on the likelihood of success in obtaining a judgment or settlement measured at the time the attorneys began work on the case. *See Florin v. Nationsbank of Ga.*, 34 F.3d 560, 565 (7th Cir. 1994) ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services.'") (citations omitted); *Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998) ("The unenhanced lodestar usually accounts for the difficulty of prevailing on the merits, . . . [b]ut the unenhanced lodestar does not reflect . . . the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery.").

The lodestar and expenses incurred by Plaintiffs' counsel supporting the requested award can be summarized as follows:

| Firm | Hours | Lodestar | Expenses |
|---|---|---|---|
| Ahdoot & Wolfson, PC | 649.3 | $485,601.20 | $25,759.93 |
| Morgan & Morgan | 77.2 | $71,010.00 | $10,811.39 |
| Siprut PC | 297.9 | $186,100.00 | $1,039.24 |
| Law Offices of Wendy Stein | 176.1 | $44,025.00 | $0.00 |
| Heninger Garrison Davis, LLC | 65 | $23,125.00 | $1,520.00 |
| Subtotals: | 1265.5 | $811,393.70 | $39,129.86 |
| **Total Fees and Expenses:** | | | **$850,523.56** |

More detail regarding each firms' time and expenditures is included in the supporting Declarations of Tina Wolfson and of John Yanchunis. (Wolfson Decl. ¶¶ 21-34; Yanchunis Decl. ¶¶ 19-20.)

These services were reasonable and necessary to litigate this case effectively and to the reach the terms of the proposed Settlement as set forth in the Settlement Agreement. (Wolfson Decl. ¶ 42-43.) These attorneys invested time such that their requested compensation from this Settlement represents a *negative* multiplier of their actual lodestar. Given that Courts regularly approve much higher *positive* lodestar multipliers, the negative multiplier attendant to the requested award demonstrates its reasonableness. *See, e.g.*, *Sears Front-Loading Washer*, 2017 WL 3470400 at *2 ("[T]he average multiplier in this circuit when the court awards a multiplier has been 1.85."); *Standard Iron Works v. Arcelormittal*, No. 08-cv-5214, 2014 U.S. Dist. LEXIS 162557, at *10 (N.D. Ill. Oct. 22, 2014) (awarding multiplier of 1.97 as "well within the range of reasonable multipliers awarded in similar contingent cases").

It was only through the expenditure of the time and money summarized above that Class Counsel was able to secure the Settlement for the benefit of the Class. These attorneys devoted enormous time and money to the prosecution of this action, including:

- extensive, independent factual investigation, before and after the original independent complaints were filed, into the data breach, the exposure of Plaintiffs' PII, and Plaintiffs' damages including fraud and attempted fraud and identity theft;

- self-organizing and coordinating their combined legal talents for the benefit of the Class, bringing the various lawsuits then pending in multiple districts here;

- retaining and consulting with experts in data security and data breaches;

- preparation of and research for a consolidated, nationwide Class Action Complaint (Dkt. 27);

- opposing Defendant's first motion to dismiss (Dkts. 35-36, 39-41, 45);

- litigating a precedent-setting appeal before the Seventh Circuit, which resulted in reversal of the trial court's order granting Defendant's motion to dismiss (Dkts. 50-66);

- defending against a renewed motion to dismiss in this Court after the Seventh Circuit's remand, this time prevailing against Defendant's efforts to dismiss the case on the pleadings (Dkts. 75, 80-84);

- engaging in a long series of arms' length negotiations, including mediation and numerous post-mediation discussions between counsel and the mediator (Wolfson Decl. ¶¶ 13-16, 19-20);

- requesting and reviewing information from Defendant sufficient to allow Class Counsel to evaluate the value of the claims and the viability of potential defenses (*id.*);

- painstaking negotiation of the Settlement Agreement and its eight exhibits, the notice program, and the notice forms;

- researching and drafting the preliminary approval motion (Dkt. 145-48);

- overseeing dissemination of notice with the Settlement Administrator; and

- preparing the present motion as well as the concurrently filed Motion for Final Approval, along with the supporting declarations.

Notably, the work is not done: Class Counsel will undoubtedly continue to incur significant additional time and expense in seeing this Settlement through to its conclusion, including working with the Settlement Administrator, answering questions from Class Members, arguing final approval, analyzing and responding to any objections, and continuing to assist class members with any claims. (*See* Wolfson Decl. ¶ 42.)

The Court-appointed Class Counsel are nationally recognized for the successful prosecution of complex class action litigation. (*See* Wolfson Decl. ¶ 3 & Ex. A; Yanchunis Decl. ¶¶ 1-14.) As set forth above, Class Counsel worked expeditiously and efficiently, reflecting their knowledge and practical experience in litigating claims of this nature. Their expertise was the primary factor in bringing about the expeditious resolution of this litigation on extremely favorable terms for the Settlement Class. (*See* Wolfson Decl. ¶ 45; Yanchunis Decl. ¶¶ 16, 22.)

B.     The Percentage-of-Fund Method also Supports the Requested Award

    1.     The *Redman* Ratio Supports the Fee Request.

As mentioned above, the Court has discretion to award fees based on either the lodestar or the percentage-of-fund methods. Although a "district court should compare attorney fees to what is actually recovered by the class," the comparison is not necessarily controlling, and sometimes an award of attorney fees may even exceed the amount recovered by the class. *Sears Front-Loading Washer*, 2017 WL 3470400 at *2. Although Class Counsel ask to be awarded their fees and expenses based on their reasonable lodestar, which exceeds the requested award, a comparison of the requested fees and expenses to the Class's recovery underscores the reasonableness of the request.

In conducting the percentage-of-fund analysis, the "ratio that is relevant . . . is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630;

*Pearson*, 772 F.3d at 781 (quoting same). Administration expenses are deducted from the Settlement Fund when calculating the *Redman* ratio. *Id.* ("[A]dministrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class.") (quoting *Redman*, 768 F.3d at 630).

The Seventh Circuit has emphasized that, in awarding fees under the percentage-of-fund method, "a third or at most a half of the total amount of money going to class members and their counsel" is an appropriate aware. *Pearson*, 772 F.3d at 782. The award requested here amounts to approximately 44% of the Settlement Fund remaining after administrative costs are deducted, and thus satisfies this approach.

This is not a "megafund" settlement, amounting to tens or hundreds of millions of dollars, but the Seventh Circuit's "sliding scale" approach to the percentage-of-fund analysis in such cases is instructive here in that it recognizes that, the smaller the overall Class recovery, the higher the percentage of that fund are attorneys' fees likely to represent. *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 980 (7th Cir. 2003) ("*Synthroid II*") (awarding counsel "30% of the first $10 million and 25% of the next $10 million"). Indeed, in *Sears, Roebuck & Co. Front–Loading Washer Prods. Liability Litig.*, which involved a much smaller payout to the class than that anticipated here, the Seventh Circuit actually awarded counsel more than the class received. 2017 WL 3470400 at *1-2 (awarding $2.7 million to class counsel where class members would receive no more than $900,000 from settlement).

### 2. The *Synthroid* Factors Support Plaintiffs' Fee Request.

The Seventh Circuit instructs district courts to award fees to class counsel based on the "market rate," by "approximating the terms that would have been agreed to *ex ante*, had

9

negotiations occurred." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001) ("*Synthroid I*"); *see also, e.g.*, *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) ("When attorney's fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."). The "market rate for legal fees depends [1] in part on the risk of nonpayment a firm agrees to bear, [2] in part on the quality of its performance, [3] in part on the amount of work necessary to resolve the litigation, and [4] in part on the stakes of the case." *Synthroid I*, 264 F.3d at 721. "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* at 718.

  a. **The Risk of Nonpayment Was Significant**

At the outset of this litigation, Counsel agreed to represent their clients and the Class on a contingency basis knowing that there was a real possibility that these cases could be litigated for years with no recovery for the time, effort, and costs expended in furtherance of the matter. *See In re Transunion Corp. Priv. Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) (stating that "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee"); *see also* Wolfson Decl. ¶ 22; Yanchunis Decl. ¶ 17.

At one point, this action was dismissed. Though the prospects for a successful outcome at that time were not good, Class Counsel fought on, and ultimately prevailed before the Seventh Circuit, breathing new life into the case. Even then, the Seventh Circuit recognized that "the plaintiffs may eventually not be able to provide an adequate factual basis for" their claimed damages. *Remijas*, 794 F.3d at 694. Assuming Plaintiffs were able to overcome such obstacles

and survive summary judgment briefing, before they even had a chance to win at trial they would have had to obtain class certification, in the face of arguments from Defendant to the effect that different members of the Class suffered different, or different degrees of, harm. (Wolfson Decl. ¶ 1.)

### b. Agreement Between Plaintiffs and Their Counsel.

A court should consider an actual agreement between the parties when assessing a fee request. *See Synthroid I*, 264 F.3d at 718. The client representation agreements between Plaintiffs and their counsel provide for legal services to be provided on a contingent basis to be determined by the Court without generally specifying a specific percentage for payment of attorneys' fees. (Wolfson Decl. ¶ 31.) Accordingly this factor supports Class Counsel's fee request.

### c. The Quality of Class Counsel's Performance.

A high level of skill and relevant experience was required to prosecute these matters. (*See generally id.*) Class Counsel faced fierce opposition from Defendant who fought vigorously throughout this litigation, before this Court and in the Seventh Circuit. Despite the palpable risks and obstacles facing them, Class Counsel were able to negotiate this meaningful Settlement. (*id.*)

Class Counsel respectfully submit that they conducted themselves in this action in a professional, diligent, and efficient manner. Moreover, in litigating this case, Class Counsel focused on the prosecution of this case forgoing other potentially more lucrative cases. (*See id.* ¶ 22; Yanchunis Decl. ¶¶ 17-18.) In this case, the lead attorneys as Class Counsel allocated tasks internally and within the attorneys with filed cases to prevent over-lawyering and inefficiency. (Wolfson Decl. ¶ 35; Yanchunis Decl. ¶ 18.) Lead Counsel performed the bulk of the work in

11

this case, all fully familiar with the factual and legal issues presented by this litigation and highly experienced in consumer protection litigation. This division of labor permitted the work to be done efficiently, resulting in an economy of service and avoiding duplication of effort. (Wolfson Decl. ¶ 35; Yanchunis Decl. ¶¶ 17-18.)

"The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *Fleisher v. Phx. Life Ins. Co.*, Nos. 11-cv-8405, 14-cv-8714, 2015 U.S. Dist. LEXIS 121574, at *71 (S.D.N.Y. Sep. 9, 2015); *see also In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *62 (D.D.C. July 13, 2001) ("The experience, skill and professionalism of counsel and the performance and quality of opposing counsel all weigh in favor of the requested fee."); *In re Pub. Serv. Co. Sec. Litig.*, 125 F.R.D. 480, 483 (S.D. Ind. 1988) (finding class counsel "achieved a fair result for the plaintiffs in light of the complexities of the litigation and the quality of the defense"). Defendant was well represented by one of the country's most prestigious and diligent law firms, Sidley Austin. The ability of Class Counsel to obtain favorable results in the face of formidable legal opposition further evidences the superior quality of their work and of the proposed Settlement.

    **d.**  **The Amount of Work Necessary to Resolve This Litigation.**

As demonstrated by the negative multiplier on Plaintiffs' counsel's lodestar that the current request represents, counsel have spent some 1095 hours advancing this matter. (*See* Wolfson Decl. ¶¶ 25-32; Yanchunis Decl. ¶ 19.) Without question, Class Counsel will spend significant hours and incur additional expenses before the case concludes—indeed, should a professional objector appeal, Class Counsel could be back before the Seventh Circuit—and continue to represent the class members in fulfilling the Settlement Agreement. Accordingly, this factor also favors approval of the requested award of attorneys' fees and expenses.

### e. The Stakes of This Litigation.

In light of the Seventh Circuit's opinion on appeal in this case—secured through Class Counsel's diligent and zealous advocacy in the face of what at the time looked like a trend among courts (particularly in this District) toward dismissing such cases for lack of Article III standing—this case became precedent-setting. The law relating to liability for such data breaches is still developing but, at the time these actions were filed, this represented an even newer type of litigation. As demonstrated by the history of this case and its journey to the Seventh Circuit, this litigation was risky and entailed high stakes. Despite the risks, Class Counsel obtained demonstrable benefits from the proposed Settlement.

The timeliness of class relief is also particularly important where, as here, Plaintiffs and the Settlement Class members already have waited years to receive compensation, if any, and would have had to wait more years had the case proceeded through trial and appeal. The class would be exposed to the attendant risks of litigation, including the uncertainties and difficulties pertaining to a disputed class certification proceeding, a likely summary judgment motion, the length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the likelihood that resolution of the class claims, whenever and however determined, would be appealed. (Wolfson Decl. ¶ 48.) Thus, the practical-minded approach of Class Counsel to achieve earlier benefits for the Settlement Class should also support the attorneys' fee award requested here.

## C. Class Counsel's Expenses Are Reasonable.

Class Counsel incurred high expenses litigating this matter, with no assurance that the investment would pay off. The majority of the $39,130.56 in expenses consists of the mediator's fees, travel costs (frequently between California and Chicago), and expert witness

13

fees, in addition to less expensive items such as research and filing fees. (*See e.g.* Wolfson Decl. ¶ 28-29.) These expenses were necessary in order to litigate the case effectively and reach the present Settlement. (*Id.*) "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." *Abbott v. Lockheed Martin Corp.*, No. 06–cv–701–MJR–DGW, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 910 (S.D. Ill. 2012) ("[T]he costs sought here are of the type that are routinely reimbursed by paying clients, such as experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs.").

**D.     The Requested Service Awards to Plaintiffs Are Appropriate.**

Finally, Plaintiffs seek an award for their services to the Class. Whether such an award "is proper, and if so, in what amount," turns on "'relevant factors include[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *In re Sw. Voucher Litig.*, Case No. 11-cv-8176, 2013 U.S. Dist. LEXIS 120735, at *31 (N.D. Ill. Aug. 26, 2013). Class Counsel respectfully submit the service awards in the nominal amount of $2,500 to each Plaintiff are appropriate here. Each of the Plaintiffs was instrumental in assisting Class Counsel with the initial investigation of their claims and the extent of damages attributable to Defendant's conduct.

Because a plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid* I, 264 F.3d at 722–23. "Small incentive awards, which serve as premiums to any claims-based recovery from

the Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn 2010). In deciding whether an incentive award is reasonable, factors relevant to the court's inquiry include the actions the plaintiff has taken to protect the interests of the class, the amount of time and effort the plaintiff expended in pursuing the litigation, and the degree to which the class has benefitted from those actions. *Cook*, 142 F.3d at 1016.

These factors easily justify the proposed service awards here. In the first place, an award of some kind is needed to induce individuals to come forward and prosecute the claims. *See Synthroid I*, 264 F.3d at 722-23. Plaintiffs reviewed case documents, stayed in regular contact with Class Counsel, and responded to all inquiries they were called to answer. (Wolfson Decl. ¶ 20.) Given Plaintiffs' efforts, a $2,500 service award, which is in line with or less than other such awards in this District, is appropriate. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 239 (N.D. Ill. 2016) (noting that courts in this district "have recently and routinely granted $5,000 incentive awards to named plaintiffs").

## IV. CONCLUSION

For all of the reasons stated above, Class Counsel respectfully request that the Court enter an order awarding Class Counsel $530,000 for fees and expenses, where their combined lodestar amounts to $811,393.70, they incurred expenses in the amount of $39,129.86, for a total of $850,523.56. In addition, Plaintiffs ask that they each be awarded a service award of $2,500 ($7,500 total).

Dated: August 21, 2017 Respectfully submitted,

*/s/ Tina Wolfson*
Tina Wolfson
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, CA 90069
Tel: 310-474-9111; Fax: 310-474-8585

*Class Counsel*

John A. Yanchunis
*jyanchunis@forthepeople.com*
**MORGAN & MORGAN**
**COMPLEX LITIGATION DEPARTMENT**
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813-275-5272; Fax: 813-226-5402

*Class Counsel*

Joseph J. Siprut
*jsiprut@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
Tel: 312-236-0000; Fax: 312-878-1342

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that on August 21, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court in the United States District Court for the Northern District of Illinois by using the CM/ECF system, which served copies on all interested parties registered for electronic service.

                                                          */s/ Tina Wolfson*
                                                          Tina Wolfson