UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HILARY REMIJAS, MELISSA FRANK, DEBBIE FARNOUSH, and JOANNE KAO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br><br>THE NEIMAN MARCUS GROUP, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:14-cv-01735<br><br>Hon. Samuel Der-Yeghiayan |

**DECLARATION OF JOHN YANCHUNIS IN SUPPORT OF MOTION FOR PRELIMNARY APPROVAL OF CLASS ACTION SETTLEMENT**

1

I, John A. Yanchunis, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I lead the National Consumer Class Action section of Morgan & Morgan's Complex Litigation Group. Morgan & Morgan is among the largest, if not the largest, exclusively plaintiffs law firms in the United States, employing approximately 300 lawyers and 1,500 support staff, who serve consumers in offices in Alabama, Georgia, Florida, Mississippi, Kentucky, Tennessee, Massachusetts, Pennsylvania and New York. Morgan & Morgan is comprised of outstanding trial lawyers who have recovered groundbreaking, multi-million dollar verdicts, as well as attorneys who have held significant roles in government and public service, including the former Governor of Florida, a former member of Congress, and a member of President William J. Clinton's Cabinet. Morgan and Morgan lawyers have played pivotal roles in shaping class-action jurisprudence across the country. While Morgan & Morgan's Complex Litigation Group draws its expertise from fifteen attorneys supported by skilled paralegals, retired FBI agents who work in the department as investigators, and state-of-the-art technology, the Group benefits from the vast experience, commitment, and resources of the entire firm. In particular, one of the Group's four former FBI agents—who was the agent in charge of the FBI's investigation of ENRON and who retired from senior management with the Bureau—leads the investigative team of the Group. These investigators, who have investigated cyber-crime during their respective careers in the FBI, are unique assets available to the prosecution efforts of the firm and will play an important role in the factual investigation of this case.

2. My practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., Southern District of Texas—has concentrated on complex litigation and spans over 34 years, including consumer class actions for two-thirds of that time. I have represented consumers in numerous privacy rights and data-breach cases, beginning with *In re DoubleClick Inc. Privacy Litigation*, No. 00-cv-0641-NRB (S.D.N.Y.), a seminal and formative

privacy class action that settled in 2002 and involved DoubleClick's use of cookies to track the private activities of internet users. I also served as co-lead counsel in the successful prosecution and settlement of perhaps the two the largest class action cases in the United States: *Fresco v. Automotive Directions, Inc.*, No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). These cases involved the advocacy for and protection of the important privacy rights of a class comprising over 225 million individuals throughout the United States and its territories. My role as co-lead counsel in these cases is particularly noteworthy because they targeted the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis), which were defended by the largest law firms in the country. These cases successfully protected the privacy rights of consumers.

3. I also served as co-lead counsel in the successful resolution of the following privacy, non-data-breach class actions: *Davis v. Bank of America*, No. 05-cv-80806 (S.D. Fla.) ($10 million common fund), *Kehoe v. Fidelity Federal Bank and Trust*, No. 03-cv-80593 (S.D. Fla.) ($50 million common fund), and *Pino v. Warranty Acceptance Corporation*, No. 05-cv-61576 (S.D. Fla.).

4. I have also achieved noteworthy results in the settlement of a series of data breach cases. For example, I served as co-lead counsel in the MDL case *In re The Home Depot, Inc. Customer Data Security Data Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.) (consumer class cases) which was settled for $ 19.5 million, and lead counsel in the following data-breach class cases: *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800 (S.D. Fla.); *Elyzabeth Ramirez v. ChenMed, LLC*, No. 14-12319-CA-04 (Fla. 11th Cir. Ct.); *Carsten v. University of Miami*, No. 1:14-cv-20497-KMW (S.D. Fla.); *John Doe v. Tampa General Hospital*, No. 14-CA-012657 (Fla. 13th Cir. Ct.) (preliminary approval entered, fairness hearing scheduled); *Linnins v. HAECO Americas, LLC, formerly known as TIMCO Aviation Services, Inc., and HAECO Americas Line Services, LLC*, 16-cv-486 (M.D.N.C.) (preliminary approval pending). The settlement of these

cases provided (or in the case of those settlements pending approval, will provide) substantial monetary and injunctive relief to class members. I currently serve on the Executive Committee overseeing the consumer class, the financial institution class, and the shareholder derivative litigation pending against Target Corporation—one of the largest data-breach cases to date—in *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.). As a member of the Overall Executive Committee, I also served on the Executive Committee of the consumer class case and assisted in its prosecution and the negotiation of a class settlement. The settlement in the Target consumer litigation, which received final court approval in 2015 (now on appeal, oral argument has been held), provides a $10 million non-reversionary fund for distribution to consumers and important equitable relief to protect consumers' privacy rights.

5. I was recently appointed lead counsel in *In Re: Yahoo! Customer Data Security Breach Litigation,* Case No. 16-MD-02752-LHK, pending in the Northern District of California. This breach affected over 1 billion users of Yahoo's email and other services. I am also lead or co-lead counsel in the following pending privacy and data-breach class litigation involving the loss of medical and financial information: *Bishop v. Shorter University*, No. ca-4:15-cv-0033-HLM (N.D. Ga.); *Peralta v. Adventist Health Systems, Sunbelt Healthcare Corp.*, No. 2015-ca-2916 (Fla. 9th Cir. Ct.); and *In re VTECH Data Breach Litigation*, 15-cv-10889 (N.D. Ill.) (involving the loss of adult and children's personal identification information), and lead counsel in a payment card data breach case of *Torres v. Wendy's International , LLC*, No. 6:16-cv-210 (M.D. Fla.)

6. I am a member of the Executive Committee in the MDL data breach case against the Office of Personnel Management, *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.C.)9 a case involving the loss of approximately 18 million present and former federal employees' information ) , and the Executive Committee in *Ortiz v. UCLA Health System*, No. BC589327 (Cal. Sup. Ct. Los Angeles Cnty.); and class counsel in

*Diaz v. Intuit, Inc.*, No. 5:15-cv-1778-EJD (C.D. Cal.), *McDowell v. CGI Group, Inc.*, No. 1:15-cv-01157-GK (D.D.C.) and *Walters v Kimpton Hotel & Restaurant Group, LLC*, No. 3:16-cv-05387 (N.D. Cal.). I am also class counsel in data-breach cases against retailers, including *Mary Jane Whalen v. Michael Stores Inc.*, No. 14-cv-07006 (S.D.N.Y.), and against the IRS in *Welborn et al. v. Internal Revenue Service et al.*, Case No. 15-cv-1352 (D.D.C.), which asserts a claim under the Privacy Act.

7. As a result of my extensive experience in privacy and data-breach litigation, I regularly lecture at seminars regarding privacy litigation. Many of these seminars are held for corporations that handle consumer data as a part of their business operations, insurance companies which provide data breach coverage to those companies, and for cyber security professionals. This year I spoke at the following seminars on privacy issues: Data Breach & Privacy Litigation Conference (Feb. 11, 2016, San Francisco, CA), NetDiligence Cyber Risk & Privacy Liability (June 7, 2016, Philadelphia, PA, and October 18-19, 2016, Santa Monica, CA.), and the Consumer Protection Law Committee of The Florida Bar (June 18, 2016, Orlando, FL.).

8. In 2015, I presented at Harris Martin's Data Breach Litigation Conference: The Coming of Age (March 25, 2015, San Diego, CA), the Practicing Law Institute's 20th Annual Consumer Financial Services Institute (April 6–7, 2015, New York, NY; and again on April 27–28, 2015, Chicago, IL), and the NetDiligence Cyber Risk & Privacy Liability Forum: State of Privacy Litigation (October 6, 2015, Santa Monica, CA). In 2014, I spoke at the American Conference Institute's 9th Cyber & Data Risk Insurance Conference (New York, NY).

9. In addition to the areas of privacy, in 2016, I presented at the Consumer Class Actions: Emerging Areas of Litigation, Practical Insights and Recent Developments (May 5, 2016, San Juan, P.R.) on the topics on handling class litigation in MDLs and also class action trials. In addition, I have presented or spoken at numerous seminars on class action topics over the years.

10. In light of this experience, I was selected by the National Law Journal as a Trailblazer in the Area of Cybersecurity & Data Privacy for 2016.

11. Alongside my experience in the area of privacy, I also served as lead, co-lead, and class counsel in numerous national class actions, including multi-district litigation, involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices.

12. As a result of my experience in insurance and complex litigation, beginning in 2005, I was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. I served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed and the related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

13. During my career, I have tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, I served as lead counsel for several insurance companies, regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992.

I was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of my clients.

14. Through my experience in numerous leadership positions in class cases, I have exhibited the ability to work cooperatively with others, including both co-counsel and opposing counsel. Accordingly, I am well regarded in the state of Florida as a lawyer, as reflected by my election to and service on the Florida Board of Governors (the governing body of The Florida Bar), a member of the Florida Bar Foundation, and by my appointment by the Supreme Court of Florida to serve as a member of the Board of Directors of the Florida Board of Bar Examiners. Although I completed my five-year appointment on the Board of Bar Examiners, I continue to serve as an Emeritus Member on character and fitness panels and as an arbiter in final hearings. I have also served on many committees of The Florida Bar, including leadership and chair positions. Most recently, I completed a term as the Chair of the Consumer Protection Committee of the Florida Bar. I have also represented The Florida Bar in a number of matters. As result of my experience in the area of class litigation and ethics, I have served as an expert for The Florida Bar on ethical issues arising in class action litigation.

15. I am currently a member in good standing of The Florida Bar, and of all the bars to which I have been admitted, including the United States Supreme Court, the United States Court of Appeals for the Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits, and the United States District Courts of the Southern District of Texas, Northern District of Texas, Eastern District of Wisconsin, Western District of Wisconsin, Western District of Tennessee, Middle District of Florida, Southern District of Florida, Eastern District of Michigan, and Northern District of Illinois.

16. My law firm and I were fully and unequivocally committed to this action and the time consuming task of prosecuting this litigation to conclusion, including in the mediation of the claims which led to the proposed class action settlement. It is my opinion that the results reached

in this case for the class is a fair, reasonable and adequate settlement, when balancing the risks involved in the certification of the class, and the ultimate trial and appeals which would follow if the case were tried.

17. Like the other Plaintiffs' firms involved in this action, we took on this representation on a purely contingent basis, and informed our clients from inception that the action would be litigated as a class action with no prediction regarding the outcome or the percentage fee that our firm might expect to recover from any common fund.

18. With the other Plaintiffs' counsel involved, I have consistently endeavored to prevent duplication of effort by the attorneys working on this matter, and believe that the hours expended litigating it were expended as efficiently as reasonably possible under such circumstances.

19. A detailed summary indicating the amount of time expended by the partners, associates, and professional support staff of my firm who were involved in this litigation is set forth below:

| Attorney | Rate | Time | Amount |
|---|---|---|---|
| JAY | 950 | 71.4 | $67,830 |
| MV | 750 | 1.9 | $1,425 |
| PB | 450 | 3.9 | $1,755 |
| **TOTAL** | | | **$71,010** |

20. In addition, our firm incurred $10,811.39 in expenses.

21. I believe that my firm's rates are fully commensurate with the hourly rates of other nationally prominent firms performing similar work for both plaintiffs and defendants. After considering all of these data points, I have determined that the rates set forth in my lodestar report are reasonable for each of the professionals who worked on this matter. Of course, should the Court have any questions about the rate for any of the professionals who worked on this matter, I am

available to answer them and provide examples where other Federal Courts have awarded fees to this firm.

22. Based upon my firm's investigation, research, information review, interviews, as well as my personal knowledge and experience, I believe that the Settlement is in the best interests of the Class and that the Settlement is fair, reasonable, and adequate. The benefits afforded by the Settlement reflect a reasoned compromise which not only takes into consideration the risks inherent in all complex, class litigation, but also the various issues in this case specifically, which had the potential to completely eliminate recovery available to the Class.

23. While I believe that the claims asserted in this action have merit and that the evidence developed to date supports those claims, I also recognize and acknowledge, based on my experience, the expense and length of time necessary to prosecute this case to judgment. I have also have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation.

24. I further believe that the request of $530,000 to cover Plaintiffs' counsel's fees and expenses is modest in relation to the actual costs incurred litigating this matter.

25. Plaintiffs and the Settlement Class members have waited years to receive compensation, if at all, and would have had to wait more years had the case proceeded through trial and appeal. The class would be exposed to the attendant risks of litigation, including the uncertainties and difficulties pertaining to a disputed class certification proceeding, a likely summary judgment motion, the length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the likelihood that resolution of the class claims, whenever and however determined, would be appealed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed August 21, 2017 in Tampa, Florida.

By: _____
John A. Yanchunis

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 21, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court in the United States District Court for the Northern District of Illinois by using the CM/ECF system, which served copies on all interested parties registered for electronic service.

*/s/ Tina Wolfson*
Tina Wolfson