UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HILLARY REMIJAS, et al., individually and on behalf of all others similarly situated, | ) ) ) | No. 1:14-cv-01735 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | (The Hon. Samuel Der-Yeghiayan) |
| THE NEIMAN MARCUS GROUP, LLC, | ) ) ) | |
| Defendant. | ) ) ) ) ) ) | |

**OBJECTOR GRETCHEN CAREY AND OBJECTOR DONALD PLUNKETT, JR.'S OBJECTION TO CLASS SETTLEMENT**

Objector Gretchen Carey and Donald L. Plunkett, Jr., by and through undersigned counsel, hereby object to the proposed class action settlement in this action for the foregoing reasons.

**I.    Background**

Gretchen Carey has used a credit card and/or debit card at Neiman Marcus store She believes she used her credit card and/or debit card during the Class Period. She sent an inquiry to the Settlement Administrator to see whether she was, in fact, in the class, but the Settlement Administrator told her she had to make a claim to find out. This is discussed in more detail below. She can be reached through her counsel at 1197 East Oak Street, Phoenix, AZ  85006, 602-795-0789, and her email address is carrg@aol.com.

Donald J. Plunkett, Jr., has used a credit card and/or debit card at a Neiman Marcus store. He, too, believes he made credit card and/or debit card purchases during the class period. He can be reached through her counsel at 1197 East Oak Street, Phoenix, AZ 85006, 602-795-0789, and her email address is donnieplunkett@gmail.com.

Ms. Carey and Mr. Plunkett are represented by Amy M. Wilkins, The Wilkins Law Firm, PLLC, located at 1197 E. Oak St., Phoenix, AZ 85006, 602-795-0789, email awilkins@wilkinslaw.net. Ms. Wilkins will appear at the Final Approval Hearing. There are no agreements relating to the objection or process of objecting other than the representation agreement. At this time, Ms. Wilkins does not intend to call witnesses at the Final Approval Hearing.

**II. Grounds for the Objection**

    **A. The Class Settlement Does Not Provide a Benefit to All Class Members in Exchange for Releasing Their Claims**

The Settlement Agreement is fatally flawed because it provides a release to defendant on behalf of class members who obtain exactly zero benefit.

On July 26, 2017, objector Gretchen Carey emailed the NM Settlement Administrator to find out if she was part of the class. She explained she had recently moved, so she did not receive a class notice. The class administrator replied and stated she had to fill out a claim form—in other words, opt in to the class—to "receive a benefit." Ms. Carey responded and said she was only trying, at this point, to determine whether she was in the class. The administrator did not tell her.

The claims administrator instead wrote:

> If you used a debit/credit card or a Neiman Marcus card at a Neiman Marcus store during the time frames below then you are eligible.
>
> If you received Unique ID you are eligible for a cash distribution If [sic] you did not you will qualify for another settlement benefit.
>
> The Class Period for this matter runs from 7/16/2013 – 1/10/2014. Encompassed in that time period is the Malware

2

period 7/16/2013 – 10/30/2013.

> All class members will receive a benefit under the class action however only those class members actually affected during the Malware Period are eligible for a cash distribution.

In other words, there is a distinction between those class members who used their cards during the "Malware Period" and those who did not.

Ms. Carey thought she might have used her card after 10/30/2013 but before 1/10/2014—in other words, outside the Malware Period. She asked what the benefit was for those class members. The claims administrator did not answer the question, but said, "If you are used a card before 1/10/2014 but after 10/30/13 then you are eligible for a benefit. This was already explained."

As it had not been explained, Ms. Carey tried again. She stated, "I have scoured the explanation of benefits and, other than cash, there is no benefit outlined in the settlement agreement. What is the benefit for those who are outside the eligible claimant window?" In other words, Ms. Carey wanted to know what she was receiving by being part of the class, as Neiman Marcus, obviously, is getting a release from her in exchange for this benefit. She further asked, again, whether she was supposed to have received an email letting her know she was in the class.

The claims administrator wrote, "Mrs., the settlement process just begun this week. We are in the very beginning stages. I do not have access to what the other benefit might be at this moment…Your second question [whether she was supposed to have received notice] has already been answered." It was not.

Thus, this class settlement asks Class Members outside the malware period to release their claims for an unnamed "benefit"—one that cannot be articulated because "we are in the very beginning stages."

Ms. Carey and Mr. Plunkett object to the settlement because it is asking those class members who are not in the "malware period" to release their claims for an undisclosed benefit. It is unfair to class members to negotiate a release for which they

3

1 receive no benefit, and the Seventh Circuit has rejected such settlements. *See Mirfasihi v.*
2 *Fleet Mortg. Corp.*, 356 F.3d 781, 782 (7th Cir. 2004) (rejecting settlement when "one of
3 the classes, namely the pure information-sharing class, received absolutely nothing, while
4 surrendering all its members' claims"); *see also Crawford v. Equifax Payment Servs.,*
5 *Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (rejecting settlement because "the fact that one
6 class member receives $2,000 and the other 200,000+ nothing is quite enough to
7 demonstrate that the terms should not have been approved under Rule 23(e)"). Ms. Carey
8 and Mr. Plunkett object to a settlement in which they are asked to release their claims for
9 an unnamed benefit or, worse, no benefit at all.

### B. The Settlement Provides for Funds to Be Distributed to a Cy Pres Group Before Giving It Back to Injured Class Members and Those Outside of the Malware Class

12 As a second reason for objecting to the Settlement Agreement, Ms. Carey and Mr.
13 Plunkett object to the distribution to charity prior to distribution of benefits to the class.
14 The Settlement Agreement has a procedure for distributing funds to class
15 members. First, they are distributed to "Group One Eligible Claimants," who receive
16 $100 per claim. Second, they are distributed to any excess administrative costs. Third,
17 they are sent to any Eligible Claimant for whom Neiman Marcus has a mailing address;
18 these "Group Two Eligible Claimants" receive a check only if the amount exceeds $5.00.
19 If not, then the money goes to a non-profit group to be chosen by the parties. Settlement
20 Agreement ¶ 51.
21 The funds should be distributed to class members before they are provided to a
22 cy pres group. This is not an instance of the class fund exceeding the size of the class
23 claims. The agreement provides to distribute the entire class fund to class members in
24 proportion to their interests; therefore, there is no need to prevent the defendant from
25 receiving a reversionary interest. Here, however, if the benefit is less than five dollars,
26 then class members get nothing, and still have had their claims released. In *Mirfasihi*,
27 356 F.3d at 784, the Seventh Circuit looked askance at a settlement in which a cy pres
28 remedy was proposed as an alternative to giving a subclass nothing. "In the class action

4

1  context the reason for appealing to cy pres is to prevent the defendant from walking
2  away from the litigation scot-free because of the infeasibility of distributing the
3  proceeds of the settlement." *Id*. But in *Mirfashihi*, like here, there was no proof that the
4  "Group 2" class members' claims are so very small that they exceed the cost of postage.
5  Now class members are, once again, being asked to release their claims for exactly zero
6  benefit. And a cy pres remedy is not a benefit to the class. "There is no indirect benefit
7  to the class from the defendant's giving the money to someone else." *Id*. at 784.

8  Notably, in *Mirfasihi*, one portion of the class, that was receiving a benefit, was
9  receiving just ten dollars. The other part of the class, which was receiving nothing,
10 collectively had millions in claims against the defendant. The court was rightly skeptical
11 of a settlement that would extinguish millions of claims against it at no cost to the
12 defendant, when class counsel received a generous fee. *Id*. at 785. Yet the court further
13 did not approve of a cy pres remedy. The remedy, instead, is to distribute a benefit to
14 class members. The Settlement Agreement should be revised such that any remaining
15 amounts in the settlement fund reserved for paying class claims (as opposed to the
16 separate, administrative fund) must be distributed to class members.

### C. Class Members Do Not Know Whether They Fall Within the Malware Period So Are Forced to Opt In Before Knowing What They Receive

As set forth above in Part A, if a Class Member does not receive a notice, they do not know if they are part of the class, and if they are part of the class, whether or not they are within the malware period such that they receive a cash benefit. Ms. Carey, for example, moved between the time she used her card during the class period and the time class notices were sent; she may not have received one for that reason.

The settlement website states, in its "FAQs" page, that potential class members should email the claims administrator if they are not sure if they are in the class. It states:

> 6. What if I am still not sure whether I am part of the Settlement?
>
> If you are not sure whether you are included in the Settlement Class, you can call toll-free 1-844-412-4027 or send an email

5

to the Settlement Administrator at NMSettlement@AdministratorClassAction.com.

NM Settlement website, available at http://www.nmsettlement.com/faqs (date last visited September 4, 2017).

Ms. Carey did email the settlement administrator and inquired if she was a member. But as explained in Part II.A, the administrator could not provide her that information; she was told to fill out a claim form. Of course, if she filled out a claim form, she could not then exclude herself from the class to file her own claim or object to the settlement. It is unfair to the class to force them to opt-in to know whether they are even class members.

### D. The Settlement Improperly Fails to Factor Out Administrative Costs Before Determining the Percentage Related to Attorneys' Fees

The Settlement Agreement provides that Neiman Marcus is settling for $1.6 million, of which the first $400,000 will go to attorneys' fees. This means there is $1.2 million available to pay class members. *See* Settlement Agreement ¶¶ 46-48. The Settlement Agreement further contains a "clear sailing" clause that Neiman Marcus will not object to an attorney's fee request of up to $530,000. *Id*. ¶ 73.

It is unclear from the Settlement Agreement how the fairness of this request will be determined, and it must be scrutinized by the Court. "Clear-sailing clauses have not been held to be unlawful per se, but at least in a case such as this, involving a non-cash settlement award to the class, such a clause should be subjected to intense critical scrutiny by the district court." *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014).

Seventh Circuit case law requires that the percentage be calculated from the benefit to the class—which does not include administrative costs. For example, in *Redman*, the Seventh Circuit reversed a fee award based on the percentage of fees compared to the amount of defendant's expenditure, stating it should be a percentage calculated based on the amount of the class benefit:

6

> The judge accepted the settlors' contention that the defendant's entire expenditures should be aggregated in determining the size of the settlement; it was this aggregation that reduced the award of attorneys' fees to class counsel to a respectable-seeming 25 percent. ***But the roughly $2.2 million in administrative costs should not have been included in calculating the division of the spoils between class counsel and class members.*** Those costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members.

*Redman,* 768 F.3d at 630 (emphasis added).

Here, if the administrative costs of $400,000 are included, then an award of $530,000 to class counsel is approximately 33 percent of $1.6 million. But as stated in *Redman*, this is inappropriate. The correct percentage would be $530,000/$1,200,000, which is a fee award of ***44 percent.*** This percentage is nearly half of the class benefit.

### III. Conclusion

For the foregoing reasons, Ms. Carey and Mr. Plunkett object to the proposed settlement.

Respectfully submitted this 4th day of September, 2017.

**THE WILKINS LAW FIRM, PLLC**

By: /s/ Amy M. Wilkins
Amy M. Wilkins *(pro hac vice)*
1197 E. Oak St.
Phoenix, AZ 85006

*Attorneys for Objector Gretchen K. Carey and Donald L. Plunkett, Jr.*

By: /s/ Gretchen K. Carey
Gretchen K. Carey
Objector

By: /s/ Donald L. Plunkett, Jr.
Donald L. Plunkett, Jr.
Objector

**CERTIFICATE OF SERVICE**

I, Amy M. Wilkins, an attorney, hereby certify that on September 4, 2017, I served the above and foregoing Objection to Class Action Settlement, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Amy M. Wilkins
Amy M. Wilkins